# EXHIBIT B

1962 Memo



CITY OF SANTA MONICA

INTER-DEPARTMENT MEMO

DATE:     January 23, 1962
TO:       City Council
FROM:     City Attorney
SUBJECT:  Abandonment of Airport

### QUESTION

CAN THE CITY, UNILATERALLY, ON MOTION OF THE CITY COUNCIL, ABANDON THE USE OF THE SANTA MONICA MUNICIPAL AIRPORT AS AN AIRPORT?

### ANSWER

NO.

### DISCUSSION

I. Preliminary Matters

At the public hearing in the Santa Monica Civic Auditorium on January 10, 1962, I orally expressed an opinion in accordance with the foregoing. Because of the discussion engendered by said opinion and the remarks of the City Council at that time, I felt that I had been instructed to prepare a formal opinion in writing.

Because of the number of documents involved, it is impractical to refer to all of them or attach copies. Suffice it to say that where pertinent, there will be specific references and quotation from the documents on file. For a very good index to most of the documents and a composite picture of the Airport development, you are referred to Map No. 2163, on file in the office of the City Engineer. This map contains 12 sheets, and noted thereon are the bulk of the documents dealing with the Airport.

-1-

1/23/62
To: City Council
From: City Attorney
Re: Abandonment of Airport

## II. The 1926 Bond Issue

In 1926, pursuant to Ordinance No. 339 (Commissioners' Series), the City Council determined that the public interest and necessity required the acquisition, construction, and completion of a tract of land commonly known as "Clover Field" for public park purposes, and that the cost thereof was such as to require the issuance of general obligation bonds therefor; that subsequently, an election was held on the 14th of April, 1926, and bonds for the purchase of Clover Field were at that time voted. Thereafter, pursuant to Ordinance No. 351 (CS), said bonds were ordered sold and the property acquired and improved for park purposes. In due course, all of the property and other properties subsequently acquired became what is now known as the Santa Monica Municipal Airport.

Some question has arisen in the minds of various citizens as to the propriety of the use of properties purchased with bond monies--for park purposes--for an airport. Section 50471 of the Government Code reads as follows:

> "Section 50471. Park purposes; use of park land
>
> The Legislature specifically declares that the purposes of this article (airports) are park purposes, and any land acquired for park purposes may be used for the purposes of this article." (Portion in parentheses added)

This section was derived from the Statutes of 1927, Chapter 267, page 486, Section 1, which reads as follows:

> "SECTION 1. Any city and county, or county, or city operating under a freeholders' charter, or otherwise, or any town, or any municipal corporation, in the State of California, is hereby authorized and empowered to acquire by purchase, condemnation, donation, lease or otherwise real or personal property, or to use any real property owned by it, or which it may hereafter acquire, within or without its corporate limits for a site upon which an airport or airports may be maintained and upon which any such city and county or county or city or town or municipal corporation may erect and maintain or permit the erection and maintenance of hangars, mooring masts, flying fields, and all places for flying, take-off and landing of aircraft

-2-

1/23/62
To:   City Council
From:  City Attorney
Re:   Abandonment of Airport

> and the storage of the same when not in active use, together with signal lights, radio equipment, service shops, conveniences, appliances, works, structures and other air navigation facilities, now known or hereafter invented, of such number and character and in such places as may be necessary or convenient, and to levy taxes for the purpose of raising funds to acquire lands for the purposes mentioned in this act and to pay the principal and interest of any bonds issued pursuant hereto.
>
> <u>Any lands previously acquired by any such city and county, or county or city operating under a freeholders' charter or otherwise, or any town or any municipal corporation in the State of California for park purposes, may be used for any of the purposes in this section specified; it being hereby specifically declared that the purpose specified in this section shall constitute park purposes.</u>"  (Emphasis added)

Section 50474 of the Government Code authorizes the City to enter into contracts or otherwise cooperate with the Federal Government or other public or private agencies in connection with the erection or **maintenance** of airports.  This section is also derived from the **Statutes of 1927**, Chapter 267, page 487, Section 4, the pertinent provisions of which are as follows:

> "SECTION 4.  In connection with the erection or maintenance of any such airport . . . any such city . . . shall have the power and jurisdiction . . . to enter into contracts or otherwise co-operate with the federal government or other public or private agencies, and otherwise exercise such powers as may be required or convenient in the promotion of aeronautics and the furtherance of commerce and navigation by air."

It is clear that the use of the funds for airport purposes is adequately provided for in the statutory law of this State.

The various **contracts** entered into by the City with private operators also are provided for and are permissible for the development of an **airport** (Government Code Section 50478; <u>Pipes v. Hilderbrand</u>, 110 CA 2d 645).

In addition, the disposition and use of park **lands** are a **municipal affair** (<u>Mallon v. City of Long Beach</u>, 44 C. 2d 199; <u>Hiller v. City of Los Angeles</u>, 197 ACA 742; <u>Wiley v. City of Berkeley</u>, 136 CA 2d 10).

-3-

1/23/62
To: City Council
From: City Attorney
Re: Abandonment of Airport

III. The Present Situation

In 1941 and 1942, the Federal Government expended some $795,959 under the DLAND (Development of Land Areas for National Defense) program (this figure obtained from FAA). Subsequently, other funds in an amount unknown were expended by the military services after the City had leased the Airport to the Government, pursuant to Resolution No. 3193 (CS). In December of 1944, pursuant to Resolution No. 3536 (CS), entitled, "Resolution Constituting Agreement with the United States Relative to Operation and Maintenance of the Santa Monica Municipal Airport," the City agreed, among other things, to operate the Airport as such for the use and benefit of the public during the life of the contemplated improvements, which, in this instance, were primarily concerned with the extension and surfacing of the runway. Thereafter, the Government, in August of 1948, transferred the Airport back to the City by an "Instrument of Transfer" known as Deed No. 4 (City Council Series), which instrument was approved by Resolution No. 183 (CCS). It is to this "Instrument of Transfer" that we must look to determine the present status of the Airport. By said instrument, the United States surrendered its leasehold interest in the Airport and assigned to the City certain easements, structures, improvements, and chattels. In return, the City of Santa Monica agreed as follows (This is a direct quote from Deed No. 4 (CCS), commencing in the middle of page 4 thereof. Wherever the expression "PARTY OF THE FIRST PART" appears, the reference is to the United States, and wherever the expression "PARTY OF THE SECOND PART" appears, the reference is to the City of Santa Monica.):

> "That by the acceptance of this instrument or any rights hereunder, the said PARTY OF THE SECOND PART, for itself, its successors, and assigns, agrees that the aforesaid surrender of leasehold interest, transfer of structures, improvements and chattels, and assignment, shall be subject to the following restrictions, set forth in subparagraphs (1) and (2) of this paragraph, which shall run with the land, imposed pursuant to the authority of Article 4, Section 3, Clause 2 of the Constitution of the United States of America, the Surplus Property Act of 1944, as amended, Reorganization Plan One of 1947 and applicable rules, regulations and orders:
>
> (1) That, except as provided in subparagraph (6) of the next succeeding unnumbered paragraph, the land, buildings, structures, improvements and equipment in which this instrument transfers any interest shall be used for public airport purposes for the use and benefit

-4-

1/23/62
To:   City Council
From: City Attorney
Re:   Abandonment of Airport

    of the public, on reasonable terms and without unjust discrimination and without grant or exercise of any exclusive right for use of the airport within the meaning of the terms "exclusive right" as used in subparagraph (4) of the next succeeding paragraph. As used in this instrument, the term "airport" shall be deemed to include at least all such land, buildings, structures, improvements and equipment.

    (2) That, except as provided in subparagraph (6) of the next succeeding paragraph, the entire landing area, as defined in WAA Regulation 16, dated June 26, 1946, and all structures, improvements, facilities and equipment in which this instrument transfers any interest shall be maintained for the use and benefit of the public at all times in good and serviceable condition, provided, however, that such maintenance shall be required as to structures, improvements, facilities and equipment only during the remainder of their estimated life, as determined by the Civil Aeronautics Administrator or his successor. In the event materials are required to rehabilitate or repair certain of the aforementioned structures, improvements, facilities or equipment, they may be procured by demolition of other structures, improvements, facilities or equipment transferred hereby and located on the above described premises which have outlived their use as airport property in the opinion of the Civil Aeronautics Administrator or his successor.

    That by the acceptance of this instrument, or any rights hereunder, the PARTY OF THE SECOND PART, for itself, its successors and assigns, also assumes the obligations of, covenants to abide by and agrees to, and this surrender, transfer, and assignment is made subject to, the following reservations and restrictions set forth in subparagraphs (1) to (7) of this paragraph, which shall run with the land, imposed pursuant to the authority of Article 4, Section 3, Clause 2 of the Constitution of the United States of America, the Surplus Property Act of 1944, as amended, Reorganization Plan One of 1947 and applicable rules, regulations and orders.

    (1) That insofar as it is within its powers, the PARTY OF THE SECOND PART shall adequately clear and protect the aerial approaches to the airport by removing, lowering, relocating, marking or lighting or otherwise mitigating existing airport hazards and by

-5-

1/23/62
To: City Council
From: City Attorney
Re: Abandonment of Airport

preventing the establishment or creation of future airport hazards.

(2) That the United States of America (hereinafter sometimes referred to as the "Government") through any of its employees or agents shall at all times have the right to make nonexclusive use of the landing area of the airport at which any of the property transferred by this instrument is located or used, without charge: Provided, however, that such use may be limited as may be determined at any time by the Civil Aeronautics Administrator or his successor to be necessary to prevent undue interference with use by other authorized aircraft: Provided, further, that the Government shall be obligated to pay for damages caused by such use, or if its use of the landing area is substantial, to contribute a reasonable share of the cost of maintaining and operating the landing area, commensurate with the use made by it.

(3) That during any national emergency declared by the President of the United States of America or the Congress thereof, the Government shall have the right to make exclusive or nonexclusive use and have exclusive or nonexclusive control and possession, without charge, of the airport at which any of the property transferred by this instrument is located or used, or of such portion thereof as it may desire, provided, however, that the Government shall be responsible for the entire cost of maintaining such part of the airport as it may use exclusively, or over which it may have exclusive possession or control, during the period of such use, possession or control, and shall be obligated to contribute a reasonable share, commensurate with the use made by it, of the cost of maintenance of such property as it may use nonexclusively or over which it may have nonexclusive control and possession; Provided, further, that the Government shall pay a fair rental for its use, control, or possession, exclusively or nonexclusively of any improvements to the airport made without United States aid.

(4) That no exclusive right for the use of the airport at which the property transferred by this instrument is located shall be vested (directly or indirectly) in any person or persons to the exclusion of others in the same class, the term "exclusive right" being defined to mean

(1) any exclusive right to use the airport for

-6-

1/23/62
To: City Council
From: City Attorney
Re: Abandonment of Airport

    conducting any particular aeronautical activity requiring operation of aircraft;

    (2) any exclusive right to engage in the sale or supplying of aircraft, aircraft accessories, equipment, or supplies (excluding the sale of gasoline and oil), or aircraft services necessary for the operation of aircraft (including the maintenance and repair of aircraft, aircraft engines, propellers, and appliances).

    (5) That, except as provided in subparagraph (6) of this paragraph, the property transferred hereby may be successively transferred only with the proviso that any such subsequent transferee assumes all the obligations imposed upon the PARTY OF THE SECOND PART by the provisions of this instrument.

    (6) That no property transferred by this instrument shall be used, leased, sold, salvaged, or disposed of by the PARTY OF THE SECOND PART for other than airport purposes without the written consent of the Civil Aeronautics Administrator, which shall be granted only if said Administrator determines that the property can be used, leased, sold, salvaged or disposed of for other than airport purposes without materially and adversely affecting the development, improvement, operation or maintenance of the airport at which such property is located; Provided, that no structures disposed of hereunder shall be used as an industrial plant, factory, or similar facility within the meaning of Section 23 of the Surplus Property Act of 1944, as amended, unless the PARTY OF THE SECOND PART shall pay to the United States such sum as the War Assets Administrator or his successor in function shall determine to be a fair consideration for the removal of the restriction imposed by this proviso.

    (7) The PARTY OF THE SECOND PART does hereby release the Government, and will take whatever action may be required by the War Assets Administrator to assure the complete release of the Government from any and all liability the Government may be under for restoration or other damages under any lease or other agreement covering the use by the Government of the airport, or part thereof, owned, controlled or operated by the PARTY OF THE SECOND PART, upon which, adjacent to which, or in connection with which, any property transferred by this instrument was located or used; Provided, that no such release shall be construed as depriving the PARTY OF THE SECOND PART of

-7-

1/23/62
To: City Council
From: City Attorney
Re: Abandonment of Airport

any right it may otherwise have to receive reimbursement under Section 17 of the Federal Airport Act for the necessary rehabilitation or repair of public airports heretofore or hereafter substantially damaged by any Federal agency.

By acceptance of this instrument, or any right hereunder, the PARTY OF THE SECOND PART further agrees with the PARTY OF THE FIRST PART as follows:

(1) That in the event that any of the aforesaid terms, conditions, reservations or restrictions is not met, observed, or complied with by the PARTY OF THE SECOND PART or any subsequent transferee, whether caused by the legal inability of said PARTY OF THE SECOND PART or subsequent transferee to perform any of the obligations herein set out, or otherwise, the title, right of possession and all other rights transferred by this instrument to the PARTY OF THE SECOND PART, or any portion thereof, shall at the option of the PARTY OF THE FIRST PART revert to the PARTY OF THE FIRST PART sixty (60) days following the date upon which demand to this effect is made in writing by the Civil Aeronautics Administrator or his successor in function, unless within said sixty (60) days such default or violation shall have been cured and all such terms, conditions, reservations and restrictions shall have been met, observed or complied with, in which event said reversion shall not occur and title, right of possession, and all other rights transferred hereby, except such, if any, as shall have previously reverted, shall remain vested in the PARTY OF THE SECOND PART, its transferees, successors and assigns.

(2) That if the construction as covenants of any of the foregoing reservations and restrictions recited herein as covenants or the application of the same as covenants in any particular instance is held invalid, the particular reservations or restrictions in question shall be construed instead merely as conditions upon the breach of which the Government may exercise its option to cause the title, right of possession and all other rights transferred to the PARTY OF THE SECOND PART, or any portion thereof, to revert to it, and the application of such reservations or restrictions as covenants in any other instance and the construction of the remainder of such reservations and restrictions as covenants shall not be affected thereby.

TO HAVE AND TO HOLD the property transferred

-8-



1/23/62
To:   City Council
From: City Attorney
Re:   Abandonment of Airport

hereby, unto [illegible] to the aforesaid reservations, restrictions and conditions, unto the said PARTY OF THE SECOND PART, its successors and assigns forever."

In addition, since 1948, the City has received $115,417.81 (verified by Controller) of Federal funds from the Federal Aid to Airport program. Included in any agreement whereby such funds are made available (the most recent being in 1960), the City agrees, among other things, to the following (quoted from Project Application, Part III, paragraphs 2 and 6):

"2. The Sponsor will operate the Airport as such for the use and benefit of the public. In furtherance of this covenant (but without limiting its general applicability and effect), the Sponsor specifically agrees that it will keep the Airport open to all types, kinds, and classes of aeronautical use without discrimination between such types, kinds, and classes: Provided, That the Sponsor may establish such fair, equal, and nondiscriminatory conditions to be met by all users of the Airport as may be necessary for the safe and efficient operation of the Airport: And Provided Further, That the Sponsor may prohibit any given type, kind, or class of aeronautical use of the Airport if such action will best serve the aeronautical needs of the area served by the Airport." (Sponsor is City)

"6. The Sponsor will suitably operate and maintain the Airport and all facilities thereon or connected therewith which are necessary for airport purposes other than facilities owned or controlled by the United States, and will not permit any activity thereon which would interfere with its use for aeronautical purposes: Provided, That nothing contained herein shall be construed to require that the Airport be operated and maintained for aeronautical uses during temporary periods when snow, flood, or other climatic conditions interfere substantially with such operation and maintenance. Essential facilities, including night lighting systems, when installed, will be operated in such a manner as to assure their availability to all users of the Airport."

### CONCLUSION

DEED NO. 4 (CCS) ("INSTRUMENT OF TRANSFER") AND THE TERMS OF THE PROJECT APPLICATION ABOVE ALLUDED TO COMPEL THE CONCLUSION THAT THE CITY MUST OPERATE THE AIRPORT AS AN AIRPORT, AND THAT THE CITY CANNOT

-9-

1/23/62
To: City Council
From: City Attorney
Re: Abandonment of Airport

>    LEGALLY UNILATERALLY, ON ITS OWN MOTION, ABANDON
>    THE USE OF THE SANTA MONICA MUNICIPAL AIRPORT AS
>    AN AIRPORT.

                              Respectfully submitted,

                              ROBERT G. COCKINS
                              City Attorney

RGC:bev

cc: Members of the Airport Commission
    City Manager
    Airport Director
    City Controller
    Purchasing Agent
    City Clerk

-10-