# EXHIBIT K

**Title Report**
**12/01/2001**

76

# CHICAGO TITLE INSURANCE COMPANY

*Give to western Region copy.*

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE LIMITS OF LIABILITY AND OTHER PROVISIONS OF THE CONDITIONS AND STIPULATIONS HERETO ANNEXED AND MADE A PART OF THIS GUARANTEE, AND SUBJECT TO THE FURTHER EXCLUSION AND LIMITATION THAT NO GUARANTEE IS GIVEN NOR LIABILITY ASSUMED WITH RESPECT TO THE IDENTITY OF ANY PARTY NAMED OR REFERRED TO IN SCHEDULE A OR WITH RESPECT TO THE VALIDITY, LEGAL EFFECT OR PRIORITY OF ANY MATTER SHOWN THEREIN,

## CHICAGO TITLE INSURANCE COMPANY

a corporation, herein called the Company

**GUARANTEES**

the Assured named in Schedule A against actual monetary loss or damage not exceeding the liability amount stated in Schedule A which the Assured shall sustain by reason of any incorrectness in the assurances set forth in Schedule A.

## CHICAGO TITLE INSURANCE COMPANY

Issued by:

CHICAGO TITLE COMPANY
700 S. FLOWER ST. #900
LOS ANGELES, CA   90017
(213) 488-4300

By: _____

Authorized Signature

CLTA  GUARANTEE  FACE  PAGE

Guarantee No. 11040215  X77

GFP-9/93-lrc

# SCHEDULE A

## Chain of Title Guarantee

/our Ref.
SANTA MONICA AIRPORT

---

Order No. 11040215     X77          Liability: $5,000.00                    Fee: $500.00

1.   Name of Assured:
     HOGAN & HARTSON

2.   Date of Guarantee:
     December 1, 2001       at   7:30 A.M.

The assurances referred to on the face page hereof are:

That, according to those public records which, under the recording laws, impart constructive notice of matters relating to the interest, if any, which was
ACQUIRED BY THE CITY OF SANTA MONICA, A MUNICIPAL CORPORATION

pursuant to a  MESNE DEEDS OF RECORD
in and to the land described as follows:
                         SEE ATTACHED DESCRIPTION

Only the following matters appear in such records subsequent to JANUARY 1, 1941          :
                         SEE ATTACHED EXHIBIT A

This Guarantee does not cover:

1.   Taxes, assessments, and matters related thereto.

COT – 10/22/94 AA

# DESCRIPTION

Page   1                                                    Order No:   011040215 - X77

THAT CERTAIN PROPERTY IN THE CITY OF SANTA MONICA, COUNTY OF LOS ANGELES,
STATE OF CALIFORNIA, COMMONLY KNOWN AS THE SANTA MONICA MUNICIPAL AIRPORT.
FOR THE PURPOSES OF THIS GUARANTEE ONLY A PORTION OF THE LEGAL DESCRIPTION
COVERED BY THIS REPORT IS IDENTIFIED AS FOLLOWS:

LOTS 165 THROUGH 170, INCLUSIVE, OF TRACT NO. 10529, IN THE CITY OF SANTA
MONICA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN
BOOK 160 PAGES 21 THROUGH 25 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER
OF SAID COUNTY, WITHIN THE BOUNDARIES OF SAID SANTA MONICA AIRPORT.

**PLEASE NOTE, THIS LEGAL DESCRIPTION IS FOR THE PURPOSE OF ISSUING THIS
GUARANTEE ONLY AND SHOULD NOT BE USED FOR ANY OTHER PURPOSE WHATSOEVER.**

GDESC --09/08/95bk

# SCHEDULE OF EXCLUSIONS FROM COVERAGE OF THIS GUARANTEE

1. Except to the extent that specific assurances are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:

(a) Defects, liens, encumbrances, adverse claims or other matters against the title, whether or not shown by the public records.

(b) (1) Taxes or assessments of any taxing authority that levies taxes or assessments on real property; or, (2) Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not the matters excluded under (1) or (2) are shown by the records of the taxing authority or by the public records.

(c) (1) Unpatented mining claims; (2) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (3) water rights, claims or title to water, whether or not the matters excluded under (1), (2) or (3) are shown by the public records.

2. Notwithstanding any specific assurances which are provided in Schedule A of this Guarantee, the Company assumes no liability for loss or damage by reason of the following:

(a) Defects, liens, encumbrances, adverse claims or other matters affecting the title to any property beyond the lines of the land expressly described in the description set forth in Schedule (A), (C) or in Part 2 of this Guarantee, or title to streets, roads, avenues, lanes, ways or waterways to which such land abuts, or the right to maintain therein vaults, tunnels, ramps or any structure or improvements; or any rights or easements therein, unless such property, rights or easements are expressly and specifically set forth in said description.

(b) Defects, liens, encumbrances, adverse claims or other matters, whether or not shown by the public records; (1) which are created, suffered, assumed or agreed to by one or more of the Assureds; (2) which result in no loss to the Assured; or (3) which do not result in the invalidity or potential invalidity of any judicial or non-judicial proceeding which is within the scope and purpose of the assurances provided.

(c) The identity of any party shown or referred to in Schedule A.

(d) The validity, legal effect or priority of any mater shown or referred to in this Guarantee.

# GUARANTEE CONDITIONS AND STIPULATIONS

1. Definition of Terms.

The following terms when used in the Guarantee mean:

(a) the "Assured": the party or parties named as the Assured in this Guarantee, or on a supplemental writing executed by the Company.

(b) "land": the land described or referred to in Schedule (A)(C) or in Part 2, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule (A)(C) or in Part 2, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways.

(c) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(d) "public records": records established under state statutes at Date of Guarantee for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.

(e) "date": the effective date.

2. Notice of Claim to be Given by Assured Claimant.

An Assured shall notify the Company promptly in writing in case knowledge shall come to an Assured hereunder of any

Your Ref: SANTA MONICA AIRPORT
Order No:        11040215   X77

# GUARANTEE CONDITIONS AND STIPULATIONS
## (continued)

claim of title or interest which is adverse to the title to the estate or interest, as stated herein, and which might cause loss or damage for which the Company may be liable by virtue of this Guarantee. If prompt notice shall not be given to the Company, then all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any Assured under this Guarantee unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

3. No Duty to Defend or Prosecute.

The Company shall have no duty to defend or prosecute any action or proceeding to which the Assured is a party, notwithstanding the nature of any allegation in such action or proceeding.

4. Company's Option to Defend or Prosecute Actions; Duty of Assured Claimant to Cooperate.

Even though the Company has no duty to defend or prosecute as set forth in Paragraph 3 above:

(a) The Company shall have the right, at its sole option and cost, to institute and prosecute any action or proceeding, interpose a defense, as limited in (b), or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assured, or to prevent or reduce loss or damage to the Assured. The Company may take any appropriate action under the terms of this Guarantee, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this Guarantee. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(b) If the Company elects to exercise its options as stated in Paragraph 4(a) the Company shall have the right to select counsel of its choice (subject to the right of such Assured to object for reasonable cause) to represent the Assured and shall not be liable for and will not pay the fees of any other counsel, nor will the Company pay any fees, costs or expenses incurred an Assured in the defense of those causes of action which allege matters not covered by this Guarantee.

(c) Whenever the Company shall have brought an action or interposed a defense as permitted by the provisions of this Guarantee, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from an adverse judgment or order.

(d) In all cases where this Guarantee permits the Company to prosecute or provide for the defense of any action or proceeding, an Assured shall secure to the Company the right to so prosecute or provide for the defense of any action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of such Assured for this purpose. Whenever requested by the Company, an Assured, at the Company's expense, shall give the Company all reasonable aid in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest as stated herein, or to establish the lien rights of the Assured. If the Company is prejudiced by the failure of the Assured to furnish the required cooperation, the Company's obligations to the Assured under the Guarantee shall terminate.

5. Proof of Loss or Damage.

In addition to and after the notices required under Section 2 of these Conditions and Stipulations have been provided to the Company, a proof of loss or damage signed and sworn to by the Assured shall be furnished to the Company within ninety (90) days after the Assured shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the matters covered by this Guarantee which constitute the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of the Assured to provide the required proof of loss or damage, the Company's obligation to such assured under the Guarantee shall terminate. In addition, the Assured may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Guarantee, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Assured shall grant its permission, 'riting, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, espondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All . .ormation designated as confidential by the Assured provided to the Company pursuant to this Section shall not be

# GUARANTEE CONDITIONS AND STIPULATIONS
## (continued)

disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Assured to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information from third parties as required in the above paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this Guarantee to the Assured for that claim.

6. Options to Pay or Otherwise Settle Claims:

Termination of Liability.

In case of a claim under this Guarantee, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Liability or to Purchase the Indebtedness.

The Company shall have the option to pay or settle or compromise for or in the name of the Assured any claim which could result in loss to the Assured within the coverage of this Guarantee, or to pay the full amount of this Guarantee or, if this Guarantee is issued for the benefit of a holder of a mortgage or a lienholder, the Company shall have the option to purchase the indebtedness secured by said mortgage or said lien for the amount owing thereon, together with any costs, reasonable attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of purchase.

Such purchase, payment or tender of payment of the full amount of the Guarantee shall terminate all liability of the Company hereunder. In the event after notice of claim has been given to the Company by the Assured the Company offers to purchase said indebtedness, the owner of such indebtedness shall transfer and assign said indebtedness, together with any collateral security, to the Company upon payment of the purchase price.

Upon the exercise by the Company of the option provided for in Paragraph (a) the Company's obligation to the ιssured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosecution of any litigation for which the Company has exercised its options under Paragraph 4, and the Guarantee shall be surrendered to the Company for cancellation.

(b) To Pay or Otherwise Settle With Parties Other Than the Assured or With the Assured Claimant.

To pay or otherwise settle with other parties for or in the name of an Assured claimant any claim assured against under this Guarantee, together with any costs, attorneys' fees and expenses incurred by the Assured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of the option provided for in Paragraph (b) the Company's obligation to the Assured under this Guarantee for the claimed loss or damage, other than to make the payment required in that paragraph, shall terminate, including any obligation to continue the defense or prosection of any litigation for which the Company has exercised its options under Paragraph 4.

7. Determination and Extent of Liability.

This Guarantee is a contract of Indemnity against actual monetary loss or damage sustained or incurred by the Assured claimant who has suffered loss or damage by reason of reliance upon the assurances set forth in this Guarantee and only to the extent herein described, and subject to the Exclusions From Coverage of This Guarantee.

The liability of the Company under this Guarantee to the Assured shall not exceed the least of:

(a) the amount of liability stated in Schedule A or in Part 2;

(b) the amount of the unpaid principal indebtedness secured by the mortgage of an Assured mortgagee, as limited or provided under Section 6 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and 'pulations, at the time the loss or damage assured against by this Guarantee occurs, together with interest thereon; or

(c) the difference between the value of the estate or interest covered hereby as stated herein and the value of the estate

GCAS3 --03/11/96bk

# GUARANTEE CONDITIONS AND STIPULATIONS
## (continued)

or interest subject to any defect, lien or encumbrance assured against by this Guarantee.

8. Limitation of Liability.

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures any other matter assured against by this Guarantee in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title, as stated herein.

(c) The Company shall not be liable for loss or damage to any Assured for liability voluntarily assumed by the Assured in settling any claim or suit without the prior written consent of the Company.

9. Reduction of Liability or Termination of Liability.

All payments under this Guarantee, except payments made for costs, attorneys' fees and expenses pursuant to Paragraph 4 shall reduce the amount of liability pro tanto.

10. Payment of Loss.

(a) No payment shall be made without producing this Guarantee for endorsement of the payment unless the Guarantee has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and ,pulations, the loss or damage shall be payable within thirty (30) days thereafter.

11. Subrogation Upon Payment or Settlement.

Whenever the Company shall have settled and paid a claim under this Guarantee, all right of subrogation shall vest in the Company unaffected by any act of the Assured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the Assured would have had against any person or property in respect to the claim had this Guarantee not been issued. If requested by the Company, the Assured shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The Assured shall permit the Company to sue, compromise or settle in the name of the Assured and to use the name of the Assured in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the Assured the Company shall be subrogated to all rights and remedies of the Assured after the Assured shall have recovered its principal, interest, and costs of collection.

12. Arbitration.

Unless prohibited by applicable law, either the Company or the Assured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Assured arising out of or relating to this Guarantee, any service of the Company in connection with its issuance or the breach of a Guarantee provision or other obligation. All arbitrable matters when the Amount of Liability is $1,000,000 or less shall be arbitrated at the option of either the Company or the Assured. All arbitrable matters when the amount of liability is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the Assured. The Rules in effect at Date of Guarantee shall be binding upon the parties. The award may include

GCAS4 –04/22/96bk

## GUARANTEE CONDITIONS AND STIPULATIONS
### (continued)

attorneys' fees only if the laws of the state in which the land is located permits a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

13. Liability Limited to This Guarantee; Guarantee Entire Contract.

(a) This Guarantee together with all endorsements, if any, attached hereto by the Company is the entire Guarantee and contract between the Assured and the Company. In interpreting any provision of this Guarantee, this Guarantee shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, or any action asserting such claim, shall be restricted to this Guarantee.

(c) No amendment of or endorsement to this Guarantee can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

14. Notices, Where Sent.

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this Guarantee and shall be addressed to the Company at Claims Department, 171 N. Clark Street, Chicago, IL 60601-3294

GCAS5 --03/11/96bk

# EXHIBIT A

Order No. 11040215 - X77

A       THIS GUARANTEE HAS BEEN LIMITED AT THE REQUEST OF THE ASSURED TO ALL
        DOCUMENTS EVIDENCING THE ACQUISITION, TAKING, DEEDING OR QUITCLAIMING OF
        ANY INTEREST OF THE UNITED STATES OF AMERICA IN AND TO THE PROPERTY
        DESCRIBED HEREIN.

B       1. A DECLARATION OF TAKING

        CASE NO.        : 4134-OIC
        PLAINTIFF       : UNITED STATES OF AMERICA
        DEFENDENTS      : GRACE B. SEVERY, ET AL
        RECORDED        : MAY 1, 1945 AS INSTRUMENT NO. 1517 IN BOOK 21894 PAGE
        197, OFFICIAL RECORDS

D       2. A DECLARATION OF TAKING

        CASE NO.        : 4929-H
        PLAINTIFF       : UNITED STATES OF AMERICA
        DEFENDENTS      : THE CITY OF SANTA MONICA, A MUNICIPAL CORPORATION, ET AL
        RECORDED        : DECEMBER 12, 1945 IN BOOK 22499 PAGE 306, OFFICIAL
        RECORDS

E       3. A(AN) QUITCLAIM DEED

        DATED:              AUGUST 10, 1948
        GRANTOR:            UNITED SATES OF AMERICA
        GRANTEE:            THE CITY OF SANTA MONICA, A BODY CORPORATE AND POLITIC

        RECORDED:           AUGUST 23, 1948 AS INSTRUMENT NO. 1746


F       THE ABOVE RECORDED INSTRUMENT IS ENTITLED "INSTRUMENT OF TRANSFER".

G       4. A(AN) QUITCLAIM DEED

        DATED:              APRIL 8, 1949
        GRANTOR:            THE UNITED STATES OF AMERICA
        GRANTEE:            THE CITY OF SANTA MONICA, A MUNICIPAL CORPORATION
        RECORDED:           MAY 9, 1949 AS INSTRUMENT NO. 2046


H       5. A LEASE AFFECTING THE PREMISES HEREIN DESCRIBED, EXECUTED BY AND BETWEEN
        THE PARTIES HEREIN NAMED, WITH CERTAIN TERMS, COVENANTS, CONDITIONS AND
        PROVISIONS SET FORTH THEREIN.

        LESSOR:             CITY OF SANTA MONICA
        LESSEE:             THE UNITED STATES OF AMERICA
        RECORDED:           APRIL 12, 1965 AS INSTRUMENT NO. 4497

EUGENE D. WILLIAMS,
Special Assistant to the
Attorney General, 908 Federal Building,
Los Angeles 12, California.
Telephone: Madison 7341.
Attorney for Plaintiff.

IN THE DISTRICT COURT OF THE UNITED STATES, IN AND FOR THE SOUTHERN DISTRICT OF CALIFORNIA, CENTRAL DIVISION.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | Plaintiff, | No. 413-O'C Civil. |
| vs. | | DECREE ON |
| 39.5 ACRES OF LAND, MORE OR LESS, IN THE CITY OF SANTA MONICA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA; GRACE R. SEVERY, et al., | Defendants. | DECLARATION OF TAKING NO. 1 |

COMES NOW the plaintiff, United States of America, by EUGENE D. WILLIAMS, Special Assistant to the Attorney General, Lands Division, Department of Justice, and moves the Court to enter a Decree on Declaration of Taking No. 1 filed in the above entitled cause on April 4th, 1945, and upon consideration thereof and of the Complaint in Condemnation on file herein, the said Declaration of Taking No. 1, and the statutes in such cases made and provided, the Court finds and decrees as follows:

First: That the United States of America is entitled to acquire property by Eminent Domain for the purposes as set out and prayed for in said Complaint;

Second: That a Complaint in Condemnation was filed at the request of Henry L. Stimson, Secretary of War of the United States of America, the authority empowered by law to acquire the property described in said Complaint, and also under the authority of the Attorney General of the United States;

Third: That said Complaint in Condemnation and Declaration of Taking No. 1 state the authority under which, and the public use for which, said property is taken; that the Secretary of War is the person duly authorized and empowered by law to acquire property such as is described in the Complaint for the public use as provided for in the Acts of Congress hereinafter set forth, and that the Attorney General of the United States is the person authorized by law to direct the institution of such condemnation proceedings;

Fourth: That a proper description of the lands sought to be taken, sufficient for identification thereof, is set out in said Declaration of Taking No. 1;

Fifth: That a statement of each estate or interest in said lands taken for said public use is set out in said Declaration of Taking No. 1;

Sixth: That a plat or plan showing the lands taken is annexed to and incorporated in said Declaration of Taking No. 1;

Seventh: That a statement is contained in said Declaration of Taking No. 1 and set forth in Schedule "A" annexed thereto of a sum of money estimated by said acquiring authority to be just compensation for said lands, in the amount of One Hundred Seventy Thousand and Fifty and No/100 Dollars($170,050.00), and that said sum was deposited in the registry of this court for the use of the persons entitled thereto upon and at the time of the filing of the said Declaration of Taking No. 1;

Eighth: That there is a statement in said Declaration of Taking No. 1 that the estimated ultimate award of compensation for the taking of said property, in the opinion of the Secretary of War of the United States, will be within any limits prescribed by law to be paid as the price therefor;

And the Court having fully considered said Complaint in Condemnation, the Declaration of Taking No. 1 filed herein, and the statutes in such cases made and provided, is of the opinion that the United States of America is entitled to take the property hereinafter described and to have the estate or interest hereinafter set forth vested in it pursuant to and in accordance with the Act of Congress approved February 26, 1931 (46 Stat. 1421, 40 U.S.C., Sec. 258a), and acts supplementary thereto and amendatory thereof, and under the further authority of the Act of Congress approved August 1, 1888 (25 Stat. 357, U.S.C.Title 40, Sec.257,)and the Act of Congress approved August 18, 1890 (26 Stat. 316), as amended by the acts of Congress approved July 2, 1917 (40 Stat. 241), April 11, 1918 (40 Stat. 518; 50 U.S.C., Sec.171), and March 27,1942 (Public Law 507-77th Congress), which acts authorize the acquisition of land for military or other war purposes, funds having been appropriated by the Act of Congress approved June 28, 1944 (Public Law 374-78th Congress).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the full fee simple title to the lands hereinafter described, subject, however, to existing easements for public roads and highways, for public utilities, for railroads and for pipe lines, be and is hereby vested in the United States of America, and said lands are deemed to be condemned and taken, and are condemned and taken, for the use of the United States of America, and the right to just compensation for the same is vested in the persons entitled thereto and shall be ascertained and awarded in this proceeding and establishment by judgment thereunder, pursuant to law.

That a parcel description of the lands so taken and condemned, together with the name or names of the apparent and presumptive owner or owners of each said parcel, is as follows:

The following parcels are situate in Tract No. 8379, in the City of Santa Monica, County of Los Angeles, State of California, as per map recorded in Book 113, Pages 54 to 56, inclusive, of Maps, in the office of the County Recorder of said County:

| Tract No. | Description | Apparent and Presumptive Owner |
|---|---|---|
| 14 | Lot 71 | Burton Barnes and Rose Barnes |
| 16 | Lot 73 | Rudolph W. Stels and Louise O. Stels |
| 41 | Lot 49 | Marvin L. Morse and Mildred L. Morse |
| 78 | Lot 35 | Veterans' Welfare Board of the State of California and N. P. Newberry |
| 80 | Lot 37 | Guy W. McDougall and Margaret McDougall |

| Tract No. | Description | Apparent and Presumptive Owner |
|---|---|---|
| 82 | Lot 39 | Mary Jane Ferguson |
| 88 | Lot 27 | Mary Baxter |
| 89 | Lot 7" | Frederick V. Millmite and Constance Irene Millmite |
| 97 | Lot 49 | John A. Bagg and Pearl Bagg |
| 125 | The southerly 60 feet (measured at right angles) of Lots 13 and 14 | John S. Kolb, Ruth M. Kolb, George R. Wallace, and Annie S. Wallace |

The following tracts or parcels are situate in Tract No. 8742, in the City of Santa Monica, County Los Angeles, State of California, as per map recorded in Book 104, Pages 27 to 29, inclusive, of Maps, in the office of the County Recorder of said County.

| Tract No. | Description | Apparent and Presumptive Owner |
|---|---|---|
| 22 | Lot 97, together with that portion of the Northwest half of Marine Street which adjoins said lot on the Southeast, and that portion of the Southeast half of Marine Place North which adjoins said lot on the Northwest | Philip D. McHugh and Ruth M. McHugh |
| 56 | Lot 109, together with that portion of the Southeast half of Marine Street which adjoins said lot on the Northwest, and that portion of the Northwest half of Navy Place North which adjoins said lot on the Southeast | Jane M. Coksfair |
| 62 | Lot 102, together with that portion of the Southeast half of Marine Street which adjoins said lot on the Northwest, and that portion of the Northwest half of Navy Place North which adjoins said lot on the Southeast | Justus O. Pinkerton and Olive C. Pinkerton |
| 63 | Lot 101, together with that portion of the Southeast half of Marine Street which adjoins said lot on the Northwest, and that portion of the Northwest half of Navy Place North which adjoins said lot on the Southeast | Marie Hess |

| Tract No. | Description | Apparent and Presumptive Owner |
|---|---|---|
| 65 | Lot 119, together with that portion of the Northwest half of Navy Street which adjoins said lot on the Southeast, and that portion of the Southeast half of Navy Place North which adjoins said lot on the Northwest | John L. Caporal and Viola A. Caporal |
| 108 | Lot 121, together with that portion of the Southeast half of Navy Street which adjoins said lot on the Northwest, and that portion of the Northwest half of Dewey Place North which adjoins said lot on the Southeast | Frank P. Fletcher and Josephine K. Fletcher and V.R.Cosman and Winifred L. Cosman |
| 111 | Lot 130, together with that portion of Dewey Street which adjoins said lot on the Southeast, and that portion of the Southeast half of Dewey Place North which adjoins said lot on the Northwest Lots 131, 132, 133, 134, 135, 136, 137 and 138, together with that portion of Dewey Street as shown on said map which adjoins said lots on the Southeast, and that portion of Southeast half of Dewey Place North which adjoins said lots on the Northwest | Heirs or Devisees of George Ousmer, Deceased |
| 132 | That portion of the Rancho Laballona, in the City of Santa Monica, County of Los Angeles, State of California, described as follows: Beginning at the most Westerly corner of Lot 214 of Tract No.9903, as per map recorded in Book 138, pages 25 to 28, inclusive, of Maps, in the office of the County Recorder of said County; thence South 35° 14'40" East along the Southeasterly line of said Lot 214, 139.61 feet to the most Southerly corner thereof;thence along the line of the alley, Dewey Street, Twenty-fifth Street and Navy Street, all as shown on said map; the following courses, distances and curves; South 54°08'09" West 25.01 feet; South 35°14'40" East 157.85 feet; South 57°25'10" West 318.74 feet; Westerly along a curve concave to the North, having a radius of 30 feet, a distance of 45.73 feet; North 35°14'40" West 177.88 feet; North along a curve concave to the East having a radius of 75 feet, a distance of 117.93 feet and North 54°51' East 274.88' feet to the point of beginning. | Grace B. Savery |

Tract No.           Decree (Continued)
132
(Cont'd.)           TOGETHER WITH that parcel of land described as follows:

Beginning at the most Southerly corner of Lot 208 of Tract No.9903,
as per map recorded in Book 138, Pages 25 to 28, inclusive, of Maps,
in the office of the County Recorder of said County; thence North
35°14'40" West along the Southeasterly line of said Lot, 139.61 feet
to the most Easterly corner thereof; thence South 9°26'42" East along
the Easterly line of the alley; as shown on the map of said Tract No.
9903, 6.99 feet to an angle point therein; thence South 35°14'40" East
along the Northeasterly line of said alley, 134.17 feet to the Northeast-
erly line of Pessy Street, as shown on said map; thence North 57°25'30"
East along said Northwesterly line 5 feet to the point of beginning.

It appearing to the Court that the plaintiff is entitled to the immediate possession and
occupancy of the said lands hereinabove described by virtue of the orders of this Court made and dated
December 29, 1944, and February 12, 1945,

IT IS HEREBY ORDERED, ADJUDGED A D DECREED that possession of the said lands hereinabove
described be delivered to the United States forthwith, and that plaintiff is entitled to the immediate and
exclusive possession of said lands, and of the whole thereof.

Nothing herein is to be considered as a determination by the Court that the estimate of the
War Department of the United States, or the amount deposited, is just compensation for the taking by the
plaintiff of the herein described property.

This cause is held open for such other and further orders, judgments, and decrees as may be
necessary in the premises.

DATED: This 4 day of April, 1945, at 10²⁰ o'clock, A.M.

                                        (J. F. T. O'CONNOR)
                                        United States District Judge.

Presented by:
    EUGENE D. WILLIAMS,
    Special Assistant to the
    Attorney General,
    By Eugene D. Williams
        Attorney for Plaintiff.
Judgment entered  APR 4-1945  Docketed APR 4-1945  Book Cp 31 Page 702
                            Edmund L. Smith, Clerk
                            Francis E. Cross, Deputy.

    FILED APR 4-1945  EDMUND L. SMITH, Clerk By Francis E. Cross, Deputy Clerk.

    APR 11 1945
    A TRUE COPY,
    ATTEST, ETC.

    (SEAL)              Ed und L. Smith, Clerk U.S.District Court,
                        Southern District of California
                        By I.L.Macbeth, Deputy

#1517 COPY OF ORIGINAL RECORDED AT REQUEST OF Lands Division   MAY 1 1945, 10:38 AM.,
        COPYIST #50 COMPARED, MABE B.BEATTY,COUNTY RECORDER,BY  O D~ L~~~~~ 275 DEPUTY
$4.80-31. B.                   - - - - - - -

U.S.I.R.S.#3.30 Cancelled          GRANT DEED

    Olga L. McDaniel, a married woman In consideration of Ten Dollars to her in hand paid,the receipt
of which is hereby acknowledged, does hereby GRANT to Raymond H. Lynch and Tary Olive Lynch, husband and
wife as joint tenants all that real property situated in the County of Los Angeles State of California, de-
scribed as follows:

    PARCEL No. 1:  That portion of Lot 3 of Tract No. 10422, in the City of and County of Los Angeles,
State of California, as per map recorded in Book 157, Pages 38 et seq., of Maps, Records of said County
described as follows:          Beginning at the most Westerly corner of Parcel 1 of the land
described in deed to Douglas M. Craig, recorded in Book 14015, Page 45, Official Records of said County,
said corner being a point on the center line of that strip of land designated as "Rancho Strip No. 2", in
Certificate executed by said California Bank, recorded in Book 13910, Page 205, of Official Records of said
County; thence along the northerly line of said Douglas M. Craig property the following courses and dis-
tances.  North 72 deg. East 15.00 feet; North 76 deg. 03'40" East 388.46 feet; North 55 deg. 30' East 30.00
feet to the most Northerly corner of said last mentioned property, said point being the beginning of a curve
concave Easterly, having a radius of 300.00 feet, the radial line of which bears North 35 deg. 30' East
from said last mentioned point; thence Northerly along said last mentioned curve 204.33 feet; thence North
4 deg. 31' 30" East 201.84 feet to a tangent curve concave to the West, having a radius of 400.00 feet;
thence Northerly along said curve 175.09 feet; thence North 20 deg. 33'20" West 124.05 feet; thence South
69 deg. 26'40" West 30.00 feet; thence North 76 deg. 19'55" West 472.65 feet; thence South 80 deg. West
15.00 feet to a point in the center line of said "Rancho Strip No. 2"; thence along said center line the
following courses and distances, South 10 deg. 00' East 452.07 feet to a tangent curve concave Easterly,
having a radius of 600.00 feet; Southerly along said curve 83.78 feet; south 18 deg. 00' East 182.24 feet
to the point of beginning.

    Reserving unto the grantor, its successors or assigns, a right of way, for street purposes,
together with the right to dedicate the same to the public use, over the Easterly 30.00 feet, measured at
right angles or radially, of the hereinabove described parcel, and over that portion thereof included with-
in the boundaries of said "Rancho Strip No. 2", as described in Certificate recorded in Book 13910, Page
205, Official Records of said County.

... for any others that along the North line of said Lot 24 to the place of beginning.  Excepting those portions of said land described in the deed to Adolph Bloom and wife, recorded in Book 4400, page 124, Official Records of said County, and described in said deed as follows: The East 45 feet of Lots 23 and 24, Block 6 of Whittier as per map recorded in Book 21 Pages 95 and 96 of Miscellaneous Records, Excepting therefrom the South 29.93 feet of said Lot 23.

Promissory note dated March 25, 1944, in the principal sum of $3650.00, executed by Ruby Louise Berry and secured by Deed of Trust on real property described as follows: Lot 12, Block 6 of Harvey's Addition No. 2 to Whittier, City of Whittier, County of Los Angeles, State of California, as per map recorded in Book 31, Page 26 of Miscellaneous Records of said County; Principal balance on May 4, 1945 was $3211.93.

Promissory Note dated June 20, 1944, in the principal sum of $3,000.00, executed by Norman W.Purdy and Ethel H.Purdy and secured by Deed of Trust on real property described as follows: That portion of Lot 74, Tract 10444, County of Los Angeles, State of California, recorded in Book 150 Pages 43 to 45 of Maps, lying Southeasterly of a straight line between a point on the Westerly line of said Lot 74 distant Southerly thereon 50 feet from the Northeasterly corner of said Lot 74 and a point on the Westerly line of said Lot 74, distant Southerly thereon 16.965 feet from the Northwest corner of said Lot 74; Principal balance on May 4, 1945 was $2801.91.

Promissory note dated October 1, 1942, in the principal sum of $1461.64, executed by Samuel F.Straley and Nittie G.Straley and secured by Deed of Trust on real property described as follows: Lot 5, Tract 5901 in the City of Whittier, County of Los Angeles, State of California, as per Map recorded in Book 65 Page 91 of Maps, records of said County; Principal balance on May 4, 1945 was $1238.12.

Stock of the Southern California Edison Company,Ltd., a California Corp., as follows: Cert. LD/O 95912 for 1 share Common Capital Stock; Cert LD/O A314 for 4 shares Common Capital Stock; Cert. LD/O 4315 for 1 share Common Capital Stock.

That the Register of Land Titles of Los Angeles County is hereby authorised and directed to cancel Certificate Numbers Ey-26605, /TH-52672, H-208,EP-46523, GT-64046, EN-49406 and issue new certificates in accordance with this order.

State of California, County of Los Angeles)ss      No. 245599

I, J.F.MORONEY, County Clerk and ex-officio Clerk of the Superior Court within and for the county and state aforesaid, do hereby certify the foregoing to be a correct copy of the original DECREE ESTABLISHING FACT OF DEATH, IN THE MATTER OF THE ESTATE OF MAGGIE C.KNUPP, also known as MAGGIE CATHERINE KNUPP, and MAGGIE KNUPP, Deceased on file and/or of record in my office, and that I have carefully compared the same with the original.

In Witness Whereof, I have hereunto set my hand and affixed the seal of the Superior Court this 24th day of Oct. 1945.

(Seal)                                          J.F.MORONEY, County Clerk,
                                                By J.N.Pratt, Deputy

#2648 Recorded at request of Attorney Dec. 11, 1945, 3:26 P.M.

Copyist #19 Compared. Name R.Beatty, County Recorder,By   a. Chusch  (#81)  Deputy
$3.10-24 F

_____

EUGENE D. WILLIAMS Special Assistant to the Attorney General of the UNITED STATES 808 Federal Building Los Angeles 12, California Madison 7411, Ext. 221 Attorney for Plaintiff

IN THE DISTRICT COURT OF THE UNITED STATES SOUTHERN DISTRICT OF CALIFORNIA CENTRAL DIVISION

UNITED STATES OF AMERICA, Plaintiff          )
                                             )
          vs                                 )
                                             )
5.324 ACRES OF LAND, MORE OR LESS, SITUATE IN THE COUNTY OF LOS ANGELES,      No.4929-H  Civil
STATE OF CALIFORNIA: THE CITY OF SANTA MONICA, a Municipal Corporation; etc.;  DECREE ON DECLARATION OF
et al Defendants                             )  TAKING

There having been filed in the above entitled Court, a Declaration of Taking vesting in the United States of America, a fee simple title to the lands hereinafter described, and therein set forth, and there having been concurrently therewith deposited by the Plaintiff in the Registry of this Court, a sum estimated by Plaintiff to be just compensation therefor,

Now upon consideration thereof and of the Complaint in Condemnation filed herein and the statutes in such case made and provided, the Court finds and decrees as follows: FIRST: That the United States of America is entitled to acquire property by Eminent Domain for the purposes therein set out and prayed for in said Complaint; SECOND: That a Complaint in Condemnation was filed at the request of Robert P. Patterson, Secretary of War of the United States of America, the authority empowered by law to acquire the property described in said Complaint, and also under the authority of the Attorney General of the United States; THIRD: That said Complaint in Condemnation and Declaration of Taking state the authority under which, and the public use for which, said property is taken; that the Secretary of War is the person duly authorised and empowered by law to acquire property such as is described in the Complaint, for the public use as provided for in the acts of Congress hereinafter set forth, and that the Attorney General of the United States is the person authorised by law to direct the institution of such condemnation proceedings;

FOURTH: That a proper description of the lands sought to be taken, sufficient for identification thereof, is set out in said Declaration of Taking;

FIFTH: That a statement of each estate or interest in said lands taken for said public use is

to and incorporated in said Declaration of Taking; SEVENTH: That a statement is contained in said Declaration of Taking and set forth in Schedule "A" annexed thereto of a sum of money estimated by said acquiring authority to be just compensation for said lands, in the amount of One Dollar ($1.00) and that said sum was deposited in the Registry of this Court for the use of the persons entitled thereto upon and at the time of the filing of the said Declaration of Taking;

EIGHTH: That there is a statement in said Declaration of Taking that the estimated ultimate award of compensation for the taking of said property, in the opinion of the Secretary of War of the United States, will be within any limits prescribed by law to be paid as the price therefor;      (Seal)

And the Court having fully considered said Complaint in Condemnation, the Declaration of Taking filed herein, and the statutes in such cases made and provided, is of the opinion that the United States of America is entitled to take the property hereinafter described and to have the estate or interest hereinafter set forth vested in it pursuant to and in accordance with the Act of Congress approved August 1, 1888 (25 Stat. 357, U.S.C., Title 40, Sec. 257), and under the further authority of the Act of Congress approved February 26, 1931 (46 Stat. 1421 40 U.S.C. Section 258a), and under the further authority of the Act of Congress approved August 18, 1890 (26 Stat. 316) as amended by the Acts of Congress approved July 2, 1917 (40 Stat. 241), April 11, 1918 (40 Stat. 518; 50 U.S.C., Sec. 171) and March 27, 1942 (Public Law 507-77th Congress), as amended by the Act of Congress approved December 20, 1944 (Public Law 509 78th Congress), funds having been appropriated by the Act of Congress approved June 28, 1944, (Public Law 374-78th Congress).

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED, that the full fee simple title to the lands hereinafter described, be and is hereby vested in the United States of America, and said lands are deemed to be condemned and taken, and are condemned and taken, for the use of the United States of America, and the right to just compensation for the same is vested in the persons entitled thereto and shall be ascertained and awarded in this proceeding and established by judgment thereunder, pursuant to law.      (Seal)

FIRST:      That the lands sought to be taken and condemned herein are situated in the City of Santa Monica, County of Los Angeles, State of California, and are described as follows:

TRACT NO. 126   Those portions of Pier Avenue, Marine Street, Navy Street, Dewey Street and Twenty-fifth Street, in the City of Santa Monica, County of Los Angeles, State of California, as shown on the map of Tract No. 8379, as per map recorded in Book 113, Pages 54 to 56, inclusive of Maps, in the office of the County Recorder of said County, described as follows:

That portion of the Southeasterly half of Pier Avenue which adjoins Lots 71 to 76, inclusive, of said Tract No. 8379, on the Northwest; That portion of Marine Street lying between the Southeasterly line of Twenty-fifth Street, and the Southeasterly prolongation of the Southwesterly line of Lot 57 of said Tract No. 8379; That portion of Navy Street lying between the Southeasterly line of Twenty-fifth street and the Southeasterly prolongation of the Southwesterly line of Lot 29 of said Tract No. 8379; That portion of Dewey Street lying between the Southeasterly line of Twenty-fifth Street and the Southeasterly prolongation of the Southwesterly line of Lot 1 of said Tract No. 8379; That portion of the West half of Twenty-fifth Street (30 feet wide) lying between the center line of Pier Avenue prolonged and the Southeasterly line of Dewey Street prolonged. Also those portions of the alleys lying Southeasterly of Pier Avenue and Northwesterly of Dewey Street and Southwesterly of Twenty-fifth Street, in the City of Santa Monica, County of Los Angeles, State of California, as shown on the map of Tract No. 8379, as per map recorded in Book 113, Pages 54 to 56, inclusive of Maps, in the office of the County Recorder of said County, described as follows: That portion of the alley (Marine Place North), lying between the Southwesterly line of Twenty-fifth Street and the Southeasterly prolongation of the Southwesterly line of Lot 76 of said Tract No. 8379; That portion of the alley (Navy Place North) lying between the Southwesterly line of Twenty-fifth Street and the Southeasterly prolongation of the Southwesterly line of Lot 56 of said Tract No. 8379. That portion of the alley (Dewey Place North), lying between the Southwesterly line of Twenty-fifth Street and the Southeasterly prolongation of the Southwesterly line of Lot 28 of said Tract No. 8379, containing 4.39 acres, more or less.      (Seal)

TRACT No. 132-4   Those portions of Navy Street, Twenty-fifth Street, Dewey Street and of that certain alley running Northwesterly from Dewey Street, all as shown on the map of Tract No.9903, in the City of Santa Monica, County of Los Angeles, State of California, as per map recorded in Book 138 Pages 25 to 28 inclusive of Maps, in the office of the County Recorder of said County; included within the following described boundary lines: Beginning at the more Westerly corner of Lot 214 of said Tract No. 9903; thence North 35° 09' West at right angles with the Southeasterly line of said Navy Street, 30 feet to the center line of said Navy Street; thence South 54° 51' West 364.88 feet to the most Easterly corner of Lot 239 of said Tract No. 9903; thence Southerly along the Easterly line of said Lot 229, on a curve concave Easterly and having a radius of 125 feet and continuing along said curve, 53.06 feet to the center line of Twenty-fifth Street, as shown on said map; thence along said center line of Twenty-fifth Street, South 35° 14' 40" East 312.91 feet to the Southeasterly line of Dewey Street, 40 feet wide, shown on said map; thence along said Southeasterly line of Dewey Street, North 77° 25' 10" East 400.97 feet to a   line bearing South 32° 34' 50" East from the most Southerly corner of Lot 228 of said Tract No. 9903; thence North 32° 34' 50" West 40 feet to said most Southerly corner of Lot 228; thence along the prolongation of the Southeasterly line of said Lot 228, South 57° 25' 10" West 5 feet to the Northeasterly line of the alley lying Southwesterly of said Lot 228, as shown on said map; thence along the boundary line of said alley, North 35° 14' 40" West 134.17 feet and North 9° 45' 20" East 4.39 feet      (Seal)

to the most Westerly corner of said Lot 228; thence Northwesterly along a straight line, 20 feet, more or less, to the most Southerly corner of said Lot 21A of Tract No. 9903; thence along the line of the

(Seal) alley, Downy Street, Twenty-fifth Street and Hoyt Street, all as shown on said map, the following courses, distances and curves; South 34° 08' 09" West 25.01 feet; South 35° 14' 40" East 197.85 feet; South 37°25' 10" West 318.74 feet; Westerly along a curve concave to the North and having a radius of 30 feet, a distance of 45.73 feet; North 35° 14' 40" West 177.86 feet; North along a curve concave to the East and

(Seal) having a radius of 75 feet, a distance of 117.93 feet, and North 54° 51' East 296.88 feet to point of beginning, containing 0.934 acres, more or less.

And it appearing to the Court that the Plaintiff is now in possession of the said tracts of land, and each of them, IT IS FURTHER ORDERED, ADJUDGED AND DECREED: That the possession of said lands now held and enjoyed by the United States of America be, and the same hereby are ratified, confirmed, and continued. Nothing herein is to be considered as a determination by the Court that the estimate of the War Department of the United States, or the amount deposited, is just compensation for the taking by Plaintiff of the herein described property. This cause is held open for such other and further orders, judgments, and decrees as may be necessary in the premises. Dated: This 23rd day of November, 1945, at 2:40 o'clock P.M.

H.A.HOLLZER, United States District Judge

Presented by: EUGENE D. WILLIAMS, Special Assistant to the Attorney General GEORGE F. HURLEY, Special Attorney Lands Division Department of Justice, By EUGENE D. WILLIAMS, Attorneys for Plaintiff

Filed Nov. 23 1945 EDMUND L. SMITH, Clerk, By P.D.Hooser, Deputy Clerk

Judgment entered Nov 23 1945  Docketed Nov 23 1945  Book 35 Page 674 Edmund L.Smith, Clerk, By P.D.Hooser, Deputy

Dec. 10, 1945 A true copy attest etc.

(Seal)

Edmund L.Smith, Clerk U.S.District Court, Southern<br>District of California, By I.L.Macbeth,Deputy

#2540 Recorded at request of Department of Justice Dec. 12, 1945, 3:37 P.M.

Copyist #19 Compared. Mame B.Beatty, County Recorder,By _B.W. de Laune (314)_     Deputy
$3.20-26 B

---

## DEED OF RECONVEYANCE

Series 7000-42 afa

Know all men by these presents: Whereas, Bank of America National Trust and Savings Association, the Beneficiary and holder of the Deed of Trust made, executed and delivered on June 1, 1940, by WILLIAM P.YEAGER and ANNA M. YEAGER, his wife, as joint tenants, to CORPORATION OF AMERICA, a California corporation, as Trustee for BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, a national banking association, as Beneficiary, which Deed of Trust was recorded on July 25. 1940, in the office of the County Recorder of County of Los Angeles, State of California, in Book 17677 of Official Records, at Page 36, et seq., has requested the trustee that the said Deed of Trust is a part of the premises therein described, and the trustee has been requested to reconvey. ... Now, therefore, the CORPORATION OF AMERICA, a corporation, as said Trustee, does hereby grant, remise, release and reconvey to the person or persons legally entitled thereto, all the estate and interest derived to it, by or through said Deed of Trust, in the lands therein described, together with the appurtenances; special reference being hereby made to said Deed of Trust and the record thereof, for a particular description of said lands.

In Witness Whereof, said CORPORATION OF AMERICA, as such Trustee, has caused these presents to be executed by an officer,to-wit: W.G.Cupps of the BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION and ex-officio agent of said CORPORATION OF AMERICA, by virtue of a resolution of the Board of Directors of said Corporation heretofore recorded in the aforesaid County.

Dated: December 1, 1945

(++)

CORPORATION OF AMERICA, a Corporation, Trustee<br>By W.G.Cupps, Its Agent<br>Assistant Vice-President.

State of California, County of Los Angeles)ss   On this 1st day of December, 1945, before me, the undersigned, a Notary Public in and for said Los Angeles County, personally appeared W.G.Cupps, an officer to-wit: Assistant Vice-President of the BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION and ex-officio agent of CORPORATION OF AMERICA, a corporation, known to me to be the person who executed the within instrument on behalf of CORPORATION OF AMERICA, a corporation, therein named, and acknowledged to me that said CORPORATION OF AMERICA, a corporation, executed the same, as such Trustee.

Witness my hand and official seal.

(Seal)                                       Bertha Knight, Notary Public

in and for said Los Angeles County and State. My commission expires February 5, 1947

#1773 Recorded at request of Grantee Dec. 12, 1945, 10:53 A.M.

Copyist #19 Compared. Mame B.Beatty, County Recorder,By _B.W. de Laune (314)_ Deputy
$1.00-5 M

---

**1746**

INSTRUMENT OF TRANSFER

U.S.A. and
CITY OF SANTA MONICA

When recorded kindly return to

THE CITY CLERK,
City Hall,
Sant. Monica, Calif.

**1746**

DOCUMENT No. _____
RECORDED AT REQUEST OF

AUG 23 1948

A.M.

OFFICIAL RECORDS
County of Los Angeles, California

Fee $ _____    Folio _____

MAME B. BEATTY, County Recorder

_____ Deputy

COUNTY RECORDER
MAME B. BEATTY

AUG 23  10  to  AM  1948

LOS ANGELES COUNTY

FREE

M

## INSTRUMENT OF TRANSFER

KNOW ALL MEN BY THESE PRESENTS:

That, the UNITED STATES OF AMERICA, acting by and through
the WAR ASSETS ADMINISTRATION under and pursuant to Reorganization
Plan One of 1947 (12 F.R. 4534), and the powers and authority con-
tained in the provisions of the Surplus Property Act of 1944, as
amended, and applicable rules, regulations, and orders, PARTY OF
THE FIRST PART, in consideration of the assumption by the CITY OF
SANTA MONICA, a body corporate and politic under the laws of the
State of California, PARTY OF THE SECOND PART, of all the obliga-
tions and its taking subject to certain reservations, restrictions,
and conditions and its covenant to abide by and agreement to certain
other reservations, restrictions, and conditions, all as set out
hereinafter, has remised, released and forever quitclaimed, and by these
presents does remise, release, and forever quitclaim to said City of
Santa Monica, its successors and assigns, under and subject to the
reservations, restrictions, and conditions, exceptions, and reservation
of rights hereinafter set out, all its right, title, interest, and claim
in and to the following described real, personal, or mixed property
situated in the County of Los Angeles, State of California, to wit:

(1) Tract #1 - A temporary easement granted by Raymond
E. Wright and Lula Nancy Marter Wright, husband and wife to the
United States of America, by easement deed dated 21 October 1942,
for right-of-way to locate, relocate, construct, reconstruct, main-
tain, repair, operate, renew, enlarge, remove and replace, increase
and/or change the number and/or size of conduits, pipes, pipe lines,
accessories and appurtenances for the conveyance and disposal of
sewage and/or effluent under, over, along and upon that certain land
situated in the County of Los Angeles, State of California, described
as follows:

A strip of land 10 feet in width, situate in the City of
Los Angeles, County of Los Angeles, State of California, being under
and across a portion of Lot 94, Tract No. 12460, as per map recorded
in Book 235, Pages 20 and 21 of Maps, Records of Los Angeles County,
lying 5 feet on each side of the following described center line.

Beginning at the intersection of the Southeasterly line of
said Lot 94 with the center line of Wasatch Avenue, (50 feet in width),
said point being North 32° 34' 40" West, a distance 153.81 feet from
the intersection of the center line of Wasatch Avenue and the center
line of Woodgreen Street (60 feet in width); thence North 32° 34' 40"
West along the Northwesterly prolongation of the center line of
Wasatch Avenue a distance of 44.00 feet to a point in the Northwesterly
line of said Lot 94, containing 440 square feet, more or less.

(2) Tract #2 - A temporary easement granted by the Southern
California Water Company, a corporation organized and existing under
and by virtue of the laws of the State of California, to the United
States of America, by easement deed dated 22 October 1942, for right-
of-way to locate, relocate, construct, reconstruct, maintain, repair,
operate, renew, enlarge, remove and replace, increase and/or change
the number and/or size of conduits, pipes, pipe lines, accessories
and appurtenances for the conveyance and disposal of sewage and/or
effluent under, over, along and upon that certain land situated in
the County of Los Angeles, State of California, described as follows:

A strip of land 10 feet in width, situate in the City of
Los Angeles, County of Los Angeles, State of California being under
and across a portion of the Subdivision of the Lands of Samuel Cripe
in the Rancho La Ballona as per map recorded in Book 1, Page 64,



ORIGINAL

Licensed Surveyors Maps, Records of said County lying 5 feet on each
side of the following described center line: Beginning at the inter-
section of the Northwesterly line of Lot 94, Tract No. 12450, as per
map recorded in Book 235, Pages 20 and 21 of Maps, Records of Los
Angeles County, with the Northwesterly prolongation of the center
line of Wasatch Avenue, (50 feet in width) said point being N 32°
34' 40" West, a distance of 182.81 feet from the intersection of the
center line of Wasatch Avenue and the center line of Woodgreen
Street, (60 feet in width); thence North 32° 34' 40" West along
the Northwesterly prolongation of the center line of Wasatch Avenue,
a distance of 16 feet to the Northwesterly line of said Subdivision
of the Lands of Samuel Cripe in the Rancho La Ballena, containing
160 square feet, more or less.

(3)  Tract #3 - A temporary easement granted by the Bank
of America National Trust & Savings Association, a national banking
association, owners, and Gore Bros. Inc., a corporation organised
and existing under and by virtue of the laws of the State of Cali-
fornia, Vendee, under a land purchase contract, to the United States
of America, by easement deed dated 21 October 1942, for right-of-way
to locate, relocate, construct, reconstruct, maintain, repair,
operate, renew, enlarge, remove and replace, increase and/or change
the number and/or size of conduits, pipes, pipe lines, accessories
and appurtenances for the conveyance and disposal of sewage and/or
effluent under, over, along and upon that certain land situated in
the County of Los Angeles, State of California, described as follows:

A strip of land 10 feet in width situate in the City of
Los Angeles, County of Los Angeles, State of California, being under
and across a portion of the 10.70 Acres of Fractional Jose De La Luz
Machado 61.97334 Acres in the Rancho La Ballena, (District Court
Case Number 2722) as per map recorded in Book 3, Pages 204 to 209
inclusive, Miscellaneous Records of Los Angeles County, lying 5 feet
on each side of the following described center line: Beginning at
the intersection of the Southeasterly line of said Fractional Jose
De Luz Machado 61.97334 Acres with the Northwesterly prolongation of
the center line of Wasatch Avenue (Wasatch Avenue shown on Tract No.
12450, as per map recorded in Book 235, Pages 21 and 20 of Maps,
Records of said County) said point being North 32° 34' 40" West along
the Northwesterly prolongation of the center line of Wasatch Avenue,
a distance of 198.81 feet from the intersection of the center line
of Wasatch Avenue (50 feet in width) and the center line of Woodgreen
Street (60 feet in width); thence North 32° 34' 40" West 11.19 feet;
thence North 65° 08' 43" West 442.15 feet to a point in the North-
westerly line of said Fractional Jose De Luz Machado 61.97334 Acres,
containing 4533 square feet, more or less.

(4)  Tract #4 - A temporary easement granted by Gore Bros.
Inc., a corporation organized and existing under and by virtue of
the laws of the State of California, to the United States of America,
by easement deed dated 20 October 1942, for right-of-way to locate,
relocate, construct, reconstruct, maintain, repair, operate, renew,
enlarge, remove and replace, increase and/or change the number and/or
size of conduits, pipes, pipe lines, accessories and appurtenances
for the conveyance and disposal of sewage and/or effluent under,
over, along and upon that certain land situated in the County of Los
Angeles, State of California, described as follows:

A strip of land 10 feet in width, situate in the City of
Los Angeles, County of Los Angeles, State of California, being under
and across a portion of Fractional Jose De La Luz Machado 61.97334
Acres in the Rancho La Ballena (District Court Case No. 2722) as per
map recorded in Book 3, Pages 204 to 209 inclusive, Miscellaneous
Records of Los Angeles County, lying 5 feet on each side of the
following described center line: Commencing at the intersection of

-2-

the center line of Wasatch Avenue (50 feet in width) and Woodgreen Street (60 feet in width), shown on Tract No. 12460, as per map recorded in Book 235, Pages 20 and 21 of Maps, Records of Los Angeles County; thence North 32° 34' 40" West along the center line and prolongation of the center line of said Wasatch Avenue, a distance of 210.00 feet; thence North 65° 08' 43" West 442.15 feet to the TRUE POINT OF BEGINNING. Thence North 65° 08' 43" West 425.10 feet; thence North 33° 33' 55" West 25.59 feet to the point of termination in the Southeasterly line of Woodbine Avenue (27 feet wide) shown on Tract No. 12367 as per map recorded in Book 249, Page 13 of Maps, Records of Los Angeles County; said point of termination being North 57° 11' 50" East 25.50 feet from the most Southerly corner of said Tract No. 12367.

(5)   Tract #5 - A temporary right-of-way for construction, operation, maintenance, renewal, and removal of a sewer line along, across, beneath and over the following described property, to wit:

The Southwesterly ten (10) feet of Lot 62 of Tract 12367, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 249, Pages 12 and 13 of Maps, records in the Office of the County Recorder of said County and State, granted by a lease entered into by and between the Bank of America National Trust and Savings Association, a National Banking Association, and the United States of America, on 1 September 1942, as modified by Supplemental Agreements: #1, dated 10 January 1944, #2, dated 31 July 1944, #3, dated 4 August 1946, and #4, dated 30 December 1946, which was duly transferred and assigned to the Capital Company, a California Corporation, on 7 September, 1945.

(6)   That certain sewer pipe line constructed pursuant to and all rights acquired by, that certain Resolution of 9 October 1942, in the Minutes of the Board of Public Works, City of Los Angeles, Page 205, Book No. 325, granting permission to the Federal Government to install a sanitary sewer in Stewart Avenue between Rose Avenue and Woodbine Streets.

(7)   Those certain chattels enumerated in Schedule "A" attached hereto and made a part hereof as though fully set forth hereat.

EXCEPTING, HOWEVER, from this conveyance all right, title, and interest in and to all property in the nature of equipment, furnishing, and other personal property located on the land leased from the City of Santa Monica as hereinafter set out, which can be removed from the land wit cut material injury to the land or structures located thereon, other than those chattels enumerated in Schedule "A" attached hereto and made a part hereof as though fully set forth hereat, and reserving to the PARTY OF THE FIRST PART for itself and its lessees, licensees, permitees, agents, and assigns the right to use the property excepted hereby in such a manner as will not materially and adversely affect the development, improvement, operation or maintenance of the airport and the right of removal from said premises of such property, all within a reasonable period of time after the date hereof, which shall not be construed to mean any period more than one (1) year after the date of this instrument, together with a right of ingress to and egress from said premises for such purposes.

The NOW, the PARTY OF THE FIRST PART, for the consideration hereinabove expressed, does hereby surrender, subject to the terms and conditions of this instrument, to the PARTY OF THE SECOND PART, the Party of the first interest in and to the premises known as "Clover Field", a municipal airport "Clover Field", set forth and described in that certain municipal ordinance, dated 8 December, 1941, as

modified by Supplemental Agreements: #1, dated July 23, 1945, and #2, dated July 15, 1946; and in Lease No. W-3460-Eng-549, dated December 1, 1941, as modified by Supplemental Agreements: #1, dated December 20, 1944, and #2, dated July 15, 1946, both from the City of Santa Monica to the United States of America, and including 168.87 acres, more or less of land situated in the County of Los Angeles, State of California.

THE PARTY OF THE SECOND PART does hereby release the PARTY OF THE FIRST PART from any and all claims which exist or may arise under the provisions of the aforesaid lease, except claims which may be submitted under Section 17 of the Federal Airport Act.

Said property transferred hereby was duly declared surplus and was assigned to the War Assets Administration for disposal, acting pursuant to the provisions of the above-mentioned Act, as amended, Reorganization Plan One of 1947 and applicable rules, regulations and orders.

THAT THE PARTY OF THE FIRST PART has released and quit-claimed, and by this instrument does release and quitclaim to the PARTY OF THE SECOND PART all of the structures and improvements on the leased land, including underground and overhead utility systems, which were added thereto by PARTY OF THE FIRST PART.

That by the acceptance of this instrument or any rights hereunder, the said PARTY OF THE SECOND PART, for itself, its successors, and assigns, agrees that the aforesaid surrender of leasehold interest, transfer of structures, improvements and chattels, and assignment, shall be subject to the following restrictions, set forth in subparagraphs (1) and (2) of this paragraph, which shall run with the land, imposed pursuant to the authority of Article 4, Section 3, Clause 2 of the Constitution of the United States of America, the Surplus Property Act of 1944, as amended, Reorganization Plan One of 1947 and applicable rules, regulations and orders:

(1) That, except as provided in subparagraph (6) of the next succeeding unnumbered paragraph, the land, buildings, structures, improvements and equipment in which this instrument transfers any interest shall be used for public airport purposes for the use and benefit of the public, on reasonable terms and without unjust discrimination and without grant or exercise of any exclusive right for use of the airport within the meaning of the terms "exclusive right" as used in subparagraph (4) of the next succeeding paragraph. As used in this instrument, the term "airport" shall be deemed to include at least all such land, buildings, structures, improvements and equipment.

(2) That, except as provided in subparagraph (6) of the next succeeding paragraph, the entire landing area, as defined in WAA Regulation 16, dated June 26, 1946, and all structures, improvements, facilities and equipment in which this instrument transfers any interest shall be maintained for the use and benefit of the public at all times in good and serviceable condition, provided, however, that such maintenance shall be required as to structures, improvements, facilities and equipment only during the remainder of their estimated life, as determined by the Civil Aeronautics Administrator or his successor. In the event materials are required to rehabilitate or repair certain of the aforementioned structures, improvements, facilities or equipment, they may be procured by demolition of other structures or improvements, facilities or equipment transferred hereby and located on the described premises which have outlived their usefulness and which in the opinion of the Civil Aeronautics Administrator or his successor.

That by the acceptance of this instrument, or any rights hereunder, the PARTY OF THE SECOND PART, for itself, its successors and assigns, also assumes the obligations of, covenants to abide by and agrees to, and this surrender, transfer, and assignment is made subject to, the following reservations and restrictions set forth in subparagraphs (1) to (7) of this paragraph, which shall run with the land, imposed pursuant to the authority of Article 4, Section 3, Clause 2 of the Constitution of the United States of America, the Surplus Property Act of 1944, as amended, Reorganization Plan One of 1947 and applicable rules, regulations and orders.

(1) That insofar as it is within its powers, the PARTY OF THE SECOND PART shall adequately clear and protect the aerial approaches to the airport by removing, lowering, relocating, marking or lighting or otherwise mitigating existing airport hazards and by preventing the establishment or creation of future airport hazards.

(2) That the United States of America (hereinafter sometimes referred to as the "Government") through any of its employees or agents shall at all times have the right to make nonexclusive use of the landing area of the airport at which any of the property transferred by this instrument is located or used, without charge: Provided, however, that such use may be limited as may be determined at any time by the Civil Aeronautics Administrator or his successor to be necessary to prevent undue interference with use by other authorized aircraft: Provided, further, that the Government shall be obligated to pay for damages caused by such use, or if its use of the landing area is substantial, to contribute a reasonable share of the cost of maintaining and operating the landing area, commensurate with the use made by it.

(3) That during any national emergency declared by the President of the United States of America or the Congress thereof, the Government shall have the right to make exclusive or nonexclusive use and have exclusive or nonexclusive control and possession, without charge, of the airport at which any of the property transferred by this instrument is located or used, or of such portion thereof as it may desire, provided, however, that the Government shall be responsible for the entire cost of maintaining such part of the airport as it may use exclusively, or over which it may have exclusive possession or control, during the period of such use, possession, or control, and shall be obligated to contribute a reasonable share, commensurate with the use made by it, of the cost of maintenance of such property as it may use nonexclusively or over which it may have nonexclusive control and possession; Provided, further, that the Government shall pay a fair rental for its use, control, or possession, exclusively or nonexclusively of any improvements to the airport made without United States aid.

(4) That no exclusive right for the use of the airport at which the property transferred by this instrument is located shall be vested (directly or indirectly) in any person or persons to the exclusion of others in the same class, the term "exclusive right" being defined as such

(a) any exclusive right to use the airport for conducting any particular aeronautical activity requiring operation of aircraft;

(b) any exclusive right to engage in the sale or supplying of aircraft accessories, equipment, or supplies (including the sale of gasoline and oil), or any service necessary for the operation of aircraft (including the maintenance and repair of aircraft, aircraft engines, propellers, and appli-

(5)    That, except as provided in subparagraph (6) of this paragraph, the property transferred hereby may be, successively transferred only with the proviso that any such subsequent transferee assumes all the obligations imposed upon the PARTY OF THE SECOND PART by the provisions of this instrument.

(6)    That no property transferred by this instrument shall be used, leased, sold, salvaged, or disposed of by the PARTY OF THE SECOND PART for other than airport purposes without the written consent of the Civil Aeronautics Administrator, which shall be granted only if said Administrator determines that the property can be used, leased, sold, salvaged or disposed of for other than airport purposes without materially and adversely affecting the development, improvement, operation or maintenance of the airport at which such property is located; Provided, that no structures disposed of hereunder shall be used as an industrial plant, factory, or similar facility within the meaning of Section 25 of the Surplus Property Act of 1944, as amended, unless the PARTY OF THE SECOND PART shall pay to the United States such sum as the War Assets Administrator or his successor in function shall determine to be a fair consideration for the removal of the restriction imposed by this proviso.

(7)    The PARTY OF THE SECOND PART does hereby release the Government, and will take whatever action may be required by the War Assets Administrator to assure the complete release of the Government from any and all liability the Government may be under for restoration or other damages under any lease or other agreement covering the use by the Government of the airport, or part thereof, owned, controlled or operated by the PARTY OF THE SECOND PART, upon which, adjacent to which, or in connection with which, any property transferred by this instrument was located or used; Provided, that no such release shall be construed as depriving the PARTY OF THE SECOND PART of any right it may otherwise have to receive reimbursement under Section 17 of the Federal Airport Act for the necessary rehabilitation or repair of public airports heretofore or hereafter substantially damaged by any Federal agency.

By acceptance of this instrument, or any right hereunder, the PARTY OF THE SECOND PART further agrees with the PARTY OF THE FIRST PART as follows:

(1)    That in the event that any of the aforesaid terms, conditions, reservations or restrictions is not met, observed, or complied with by the PARTY OF THE SECOND PART or any subsequent transferee, whether caused by the legal inability of said PARTY OF THE SECOND PART or subsequent transferee to perform any of the obligations herein set out, or otherwise, the title, right of possession and all other rights transferred by this instrument to the PARTY OF THE SECOND PART, or any portion thereof, shall at the option of the PARTY OF THE FIRST PART revert to the PARTY OF THE FIRST PART sixty (60) days following the date upon which demand to this effect is made in writing by the Civil Aeronautics Administrator or his successor in function, unless within said sixty (60) days such default or violation shall have been cured and all such terms, conditions, reservations and restrictions shall have been met, observed or complied with, in which event said reversion shall not occur and title, right of possession, and all other rights transferred hereby, except such, if any, as shall have previously reverted, shall remain vested in the PARTY OF THE SECOND PART, its transferees, successors and assigns.

That all the construction n as covenants of any of the foregoing terms, reservations, restrictions recited herein as covenants or conditions ...................... covenants in any particular instance shall ................ with the particular reservations or restrictions ................... construed .... and merely as conditions upon

-2-

the breach of which the Government may exercise its option to cause the title, right of possession and all other rights transferred to the PARTY OF THE SECOND PART, or any portion thereof, to revert to it, and the application of such reservations or restrictions as covenants in any other instance and the construction of the remainder of such reservations and restrictions as covenants shall not be affected thereby.

TO HAVE AND TO HOLD the property transferred hereby, under and subject to the aforesaid reservations, restrictions and conditions, unto the said PARTY OF THE SECOND PART, its successors and assigns forever.

IN WITNESS WHEREOF, the UNITED STATES OF AMERICA, acting by and through the War Assets Administration, has caused these presents to be executed in its name and on its behalf by W.A. Rover, District Director, War Assets Administration, and the CITY OF SANTA MONICA, acting by and through its City Council, has caused these presents to be executed in its name and on its behalf by R. M. DORTON, City Manager and attested by _____ K. O. GRUBB _____, its City Clerk, and its seal to be hereunto affixed, all as of the ____ 10th ____ day of __ August __, 1948.

UNITED STATES OF AMERICA
Acting by and through
WAR ASSETS ADMINISTRATION

WITNESSES:

By _____
District Director
Los Angeles District Office

WITNESSES:

ATTEST:

_____
City Clerk

CITY OF SANTA MONICA
STATE OF CALIFORNIA

By _____
CITY MANAGER

Exh. K
87

| SWPA NO.&P=L | ITEM | UNITS | QUANTITY |
|---|---|---|---|
| 2661568-1-1 | Ice Chest | ea. | 4 |
| "    1-2 | | ea. | 1 |
| "    1-3 | Ice Box | ea. | 1 |
| 2661565-1-1 | Steel Drums | ea. | 2 |
| "    1-2 | " " | ea. | 2 |
| "    1-3 | " " | ea. | 1 |
| "    1-4 | " " | ea. | 1 |
| "    1-5 | " " | ea. | 3 |
| "    1-6 | " " | ea. | 7 |
| "    1-7 | " " | ea. | 3 |
| "    1-8 | " " | ea. | 1 |
| 2661567-1-1 | Fire Extinguisher | ea. | 4 |
| "    1-2 | " " | ea. | 10 |
| "    1-3 | " " | ea. | 4 |
| "    1-4 | " " | ea. | 12 |
| 2661569-1-1 | Fire Camouflage | ea. | 10 |
| 2661570-1-1 | Hose Fibre Fire w/nozzle | ea. | 2 |
| "    1-2 | " " | ea. | 4 |
| "    1-3 | " " " | ea. | 2 |
| 2661566-1-1 | Oak Barrel | ea. | 1 |
| 2661571-1-1 | Ping Pong Table | ea. | 1 |
| 8009-5711 | | | |
| WAA-21  #5 | Truck fire, pumper | | |
| 2657337-3-4 | | | |
| WAA-21  #6 | Tractor, International, Mod.TDR 18 Bulldozer | | |
| 2667337-4-4 | | | |
| WAA-21  #3 | Tractor, Fordson | | |
| 2657342-3-3 | | | |
| WAA-21  #4 | Grader, Motorized, J.D. Adams Mod. 201 | | |
| 2657342-2-1 | | | |
| WAA-21 #10 | Crane, Tractor, Hughes-Keenan, Model MC2R | | |
| 8009-11123-1-1 | | | |
| RP-1 | Truck, Fire & Rescue, International | | |

STATE OF CALIFORNIA     } ss
COUNTY OF LOS ANGELES   }

On this 19th day of _August_, 1948, before me _Helen P. Peralta_, a Notary Public in and for the County of Los Angeles, State of California, personally appeared Walter A. Rover, known to me to be the District Director, Los Angeles District Office, War Assets Administration, and known to me to be the person who executed the within instrument on behalf of the War Assets Administration which executed said instrument on behalf of the United States of America and acknowledged to me that he subscribed to the said instrument the name of the United States of America and the name of the War Assets Administration on behalf of the United States of America, and further that the United States of America executed said instrument.

         WITNESS my hand and official seal.

                     _Helen P. Peralta_
                     Notary Public in and for said
                     County and State

                     My Commission expires
                     My Commission Expires Apr. 23, 1949

(4-12-48)

# CERTIFICATE

I, the undersigned ___L. S. WRIGHT, Secretary___

___The General Board___ , War Assets Administration, in my

official capacity as such ___Secretary___

and duly authorized in the DELEGATION OF AUTHORITY INCIDENT TO THE CARE,

HANDLING AND CONVEYANCING dated ___Apr. 9, 1948___ , to make the following

certification, do hereby certify:

1. That ___Walter A. Rover___ is the

___District Director, Los Angeles District Office___

War Assets Administration; duly appointed, authorized and acting in such

capacity at the time of the execution of the attached instrument.

2. That the attached DELEGATION OF AUTHORITY INCIDENT TO THE

CARE, HANDLING AND CONVEYANCING is a true and correct copy of the original

of said DELEGATION OF AUTHORITY, dated ___Apr. 9, 1948___ .

Given under my hand this ___10th___ day of ___August___, 1948

Secretary
(Title)
The General Board
(Office)
War Assets Administration

JESS LARSON
Administrator

(NOTICE)

DELEGATION OF AUTHORITY NO. 145

DELEGATION OF AUTHORITY INCIDENT TO THE CARE, HANDLING, AND CONVEYANCING OF
SURPLUS REAL PROPERTY AND PERSONAL PROPERTY ASSIGNED FOR DISPOSAL THEREWITH

The Deputy Administrator, Office of Real Property Disposal, and each Associate Deputy Administrator, Office of Real Property Disposal, War Assets Administration; the Regional Director, the Deputy Regional Director for Real Property Disposal, the Associate Deputy Regional Director for Real Property Disposal, and the Assistant Deputy Regional Director for Real Property Disposal, in each and every War Assets Administration Regional Office; the District Director and Deputy District Director for Real Property Disposal, in each and every War Assets Administration District Office, and any person or persons designated to act, and acting, in any of the foregoing capacities, are hereby authorized, individually (1) to execute, acknowledge and deliver any deed, lease, permit, contract, receipt, bill of sale, or other instruments in writing in connection with the care, handling and disposal of surplus real property, or personal property assigned for disposition with real property, located within the United States, its territories and possessions, (2) to accept any notes, bonds, mortgages, deeds of trust or other security instruments taken as consideration in whole or in part for the disposition of such surplus real or personal property, and to do all acts necessary or proper to release and discharge any such instrument or any lien created by such instrument or otherwise created, and (3) to do or perform any other act necessary to effect the transfer of title to any such surplus real or personal property located as above provided; all pursuant to the provisions of the Surplus Property Act of 1944, as amended, (58 Stat. 765; 50 U.S.C. App. Supp. 1611); Public Law 181, 79th Cong. (59 Stat. 533; 50 U.S.C. App. Supp. 1614a, 1614b); Reorganization Plan 1 of 1947 (12 F.R.4534); Public Law 289, 80th Cong. (61 Stat. 678); and War Assets Administration Regulation No. 1 (12 F. R. 6661), as amended.

The Regional Director in each and every War Assets Administration Regional Office is hereby authorized to redelegate to such person or persons as he may designate the authority delegated to him by this instrument.

L. S. Wright, the Secretary of The General Board and Robert Whittet, Associate Deputy Administrator, Office of Real Property Disposal, War Assets Administration, are hereby authorized, individually, to certify true copies of this Delegation and provide such further certification as may be necessary to effectuate the intent of this Delegation in form for recording in any jurisdiction, as may be required.

This Delegation shall be effective as of the opening of business on April 9, 1948.

This authority is in addition to delegations of authority previously granted under dates of May 17, 1946; May 23, 1946; July 30, 1946; September 16, 1946; October 31, 1946; November 23, 1946; January 15, 1947; June 6, 1947; and December 1, 1947; but shall not in any manner supersede provisions of said delegations so as not conflict with the provisions of this Delegation.

JESS LARSON
Administrator

A RESOLUTION OF THE CITY COUNCIL OF THE
CITY OF SANTA MONICA ACCEPTING AN INSTRU-
MENT OF TRANSFER FROM THE UNITED STATES
OF AMERICA.

THE CITY COUNCIL OF THE CITY OF SANTA MONICA DOES RESOLVE AS
FOLLOWS:

SECTION 1.  That that certain instrument of transfer from
the United States of America, acting by and through the War Assets
Administration, whereby said United States of America does surrender
to the City of Santa Monica the former's lease-hold interest in
and to the premises known as Cloverfield Santa Monica Municipal Air-
port and certain easements and temporary rights of way appurtenant
thereto, be and the same hereby is accepted.

SECTION 2.  That the City Manager hereby is authorized
to execute said instrument of transfer on behalf of the city and
the City Clerk shall attest his signature thereto.

SECTION 3.  That the City Clerk shall certify to the adop-
tion of this resolution and thenceforth and thereafter the same
shall be in full force and effect.

ADOPTED and APPROVED this 10th day of _August_, 1948.

ATTEST:

_____                    _____
City Clerk                                              Mayor pro Tem

I hereby certify that the foregoing resolution was duly
adopted by the City Council of the City of Santa Monica at a
_regular_ meeting thereof held on the 10th day of August,
1948, by the following vote of the Council:

AYES:     Councilmen: Barnard, Charais, Wackworth, Neilson.
                                    Talmage, Schimmer
NOES:     Councilmen: None
ABSENT:   Councilmen: Gates

_____
City Clerk

Approved as to form this
10   day of ...........

_____

(W-Cal-71)

## QUITCLAIM DEED

THIS INDENTURE, made this __8th__ day of __April__, 1949, between the UNITED STATES OF AMERICA, acting by and through the War Assets Administration, under and pursuant to Reorganization Plan One of 1947 (12 Fed. Reg. 4534) and the powers and authority contained in the provisions of the Surplus Property Act of 1944, as amended, and applicable rules, regulations and orders thereunder, Grantor, and the CITY OF SANTA MONICA, a municipal corporation existing under the laws of the State of California, Grantee,

WITNESSETH:  That the said Grantor, for and in consideration of One Dollar ($1.00) and other good and valuable consideration, does hereby remise, release and quitclaim unto the said Grantee, its successors and assigns, under and subject to the reservations, restrictions and conditions, and rights hereinafter set out, all of its right, title, interest, claim and demand in and to the following described property located at the Santa Monica Municipal Airport, County of Los Angeles, State of California, to wit:

Lots 5, 9, 12, Southerly 60 feet (measured at right angles) of 13 and 14, 16, 17, 18, 21, 26, 29, 34, 35, 37, 39, 43, 55, 62, 69, 71, 72, 73, 94, 95, 96, 97, 98, 99, 100, 101, 102 and 103, all in Tract No. 8379, as shown on map recorded in Book 113, pages 54 to 56 of Maps, in the office of the Recorder of Los Angeles County, California.

Lot 97 together with the Northwesterly one-half of Marine Street, which adjoins said Lot on the Southeast and the Southeasterly one-half of Marine Place North, which adjoins said Lot on the Northwest; Lots 101, 102, 105, 109 together with the Southeasterly one-half of Marine Street which adjoins said Lots on the Northwest and the Northwesterly one-half of Navy Place North which adjoins said Lots on the Southeast; Lots 113, 119, together with the Northwesterly one-half of Navy Street which adjoins said Lots on the Southeast, and the Southeasterly one-half of Navy Place North which adjoins said Lots on the Northwest; Lot 121 together with the Southeasterly one-half of Navy Street which adjoins said Lot on the Northwest and the Northwesterly one-half of Dewey Place North which adjoins said Lot on the Southeast; Lots 130, 131, 132, 133, 134, 135, 136, 137, 138, and 139 together with that portion of Dewey Street which adjoins said Lots on the Southeast, and the Southeasterly one-half of Dewey Place North which adjoins said Lots on the Northwest, all in Tract No. 8542, as shown on map recorded in Book 104, pages 27 to 29 of Maps, in the office of the Recorder of Los Angeles County, California

Lot 207 together with the Northwesterly one-half of Navy Street which adjoins said Lot on the Southeast, and the Southeasterly one-half of Navy Place North which adjoins said Lot on the Northwest; Lot 203 together with that portion of the Northwesterly one-half of Navy Street which adjoins said Lot on the Southeast and the Southeasterly portion of Navy Place North, which adjoins said Lot on the Northwest, all in Tract No. 9903, as shown on map recorded in Book 136, pages 25 to 28 of Maps, in the office of the Recorder of Los Angeles County, California.

Also that portion of the Rancho LaBallona, in the City of Santa Monica, County of Los Angeles, State of California, described as follows:

BEGINNING at the most Westerly corner of Lot 114 of Tract No. 9903, as per map recorded

ORIGINAL

in Book 138, pages 25 to 28, inclusive, of Maps, in the office of the County Recorder of said County; thence South 35° 14' 40" East 299.22 feet along the Southwesterly line of said Lot 214 and the Southeasterly prolongation through Dewey Place North and continuing along the Southwesterly line of Lot 228 of said Tract to a point in the Northwesterly line of Dewey Street; thence along the line of Dewey Street, 25th Street and Navy Street, all as shown on said map; the following courses, distances and curves; South 57° 25' 10" West 343.75 feet; Westerly along a curve concave to the North, having a radius of 30 feet, a distance of 45.73 feet; North 35° 14' 40" West 177.88 feet; North along a curve concave to the East having a radius of 75 feet, a distance of 117.93 feet and North 54° 51' East 296.88 feet to the point of beginning.

Excepting therefrom all that portion of that certain alley shown on said Map of Tract No. 9903 which lies within the above-described land.

ALSO a parcel of land situated in the City of Santa Monica, County of Los Angeles, State of California, being a portion of Ashland Street, Twenty-fifth Street, Pier Avenue and the Alley Southeasterly of Ashland Street as shown on a map of Tract No. 8379, recorded in Book 113, pages 54 to 56, inclusive, of Maps, in the office of the Recorder of said County, described as a whole as follows:

That portion of the Southeasterly half of said Ashland Street adjoining Lots 99 to 104, inclusive, of said Tract No. 8379.

ALSO that portion of the Southwesterly half of said Twenty-fifth Street adjoining Lots 98 and 99 of said Tract No. 8379.

ALSO that portion of the Northwesterly half of said Pier Avenue adjoining Lots 93 to 98, inclusive, of said Tract No. 8379.

ALSO that portion of the Alley Southeasterly of said Ashland Street adjoining Lots 93 to 104, inclusive, of said Tract No. 8379.

ALSO those portions of Pier Avenue, Marine Street, Navy Street, Dewey Street and Twenty-fifth Street, in the City of Santa Monica, County of Los Angeles, State of California, as shown on the map of Tract No. 8379, as on map recorded in Book 113, pages 54 to 56, inclusive, of Maps, in the office of the County Recorder of said County, described as follows:

That portion of the Southeasterly half of Pier Avenue which adjoins Lots 71 to 76, inclusive, of said Tract No. 8379, on the North-west;

That portion of Marine Street lying between the Southwesterly line of Twenty-fifth Street, and the Southeasterly prolongation of the Northwesterly line of Lot 37 of said Tract 8379;

- 2 -

That portion of Navy Street lying between
the Southwesterly line of Twenty-fifth Street
and the Southeasterly prolongation of the South-
westerly line of Lot 29 of said Tract No. 8379;

That portion of Dewey Street lying between
the Southwesterly line of Twenty-fifth Street
and the Southeasterly prolongation of the South-
westerly line of Lot 1 of said Tract No. 8379;

That portion of Twenty-fifth Street (30 feet
wide) lying between the center line of Pier
Avenue prolonged and the Southeasterly line of
Dewey Street prolonged.

ALSO those portions of the alleys lying
Southeasterly of Pier Avenue and Northwesterly
of Dewey Street and Southwesterly of Twenty-
fifth Street, in the City of Santa Monica, County
of Los Angeles, State of California, as shown on
the map of Tract No. 8379, as per map recorded
in Book 113, pages 54 to 56, inclusive, of Maps,
in the office of the County Recorder of said
County, described as follows:

That portion of the alley (Marine Place
North), lying between the Southwesterly line of
Twenty-fifth Street and the Southeasterly pro-
longation of the Southwesterly line of Lot 76
of said Tract No. 8379;

That portion of the alley (Navy Place North)
lying between the Southwesterly line of Twenty-
fifth Street and the Southeasterly prolongation
of the Southwesterly line of Lot 56 of said Tract
No. 8379.

That portion of the alley (Dewey Place North),
lying between the Southwesterly line of Twenty-
fifth Street and the Southeasterly prolongation of
the Southwesterly line of Lot 28 of said Tract No.
8379.

ALSO those portions of Navy Street, Twenty-fifth
Street, Dewey Street and of that certain alley running
northwesterly from Dewey Street, all as shown on the
map of Tract No. 9903, in the City of Santa Monica,
County of Los Angeles, State of California, as per map
recorded in Book 138, pages 25 to 28, inclusive, of
Maps, in the office of the County Recorder of said
County, included within the following described bound-
ary lines:

BEGINNING at the most Westerly corner of
Lot 210 of said Tract No. 9903; thence North
35° 09' West at right angles with the South-
easterly line of said Navy Street, 30 feet to
the center line of said Navy Street; thence
South 54° 51' West 364.88 feet to the most
easterly corner of Lot 229 of said Tract No.
9903; thence Southerly along the Easterly line
of said Lot 229, on a curve concave Easterly
and having a radius of 125 feet and continuing
along said curve, 93.06 feet to the center line
of Twenty-fifth Street, as shown on said map;
thence on said center line of Twenty-fifth
Street, South 35° 14' 40" East 312.91 feet to

- 5 -

the Southeasterly line of Dewey Street, 40 feet wide, as shown on said map; thence along said Southeasterly line of Dewey Street, North 57° 25' 10" East 400.57 feet to a line bearing South 32° 34' 50" East from the most Southerly corner of Lot 228 of said Tract No. 9903; thence North 32° 34' 50" West 40 feet to said most Southerly corner of Lot 228; thence along the prolongation of the Southeasterly line of said Lot 228, South 57° 25' 10" West 5 feet to the Northeasterly line of the alley lying Southwesterly of said Lot 228, as shown on said map; thence along the boundary line of said alley, North 35° 14' 40" West 134.17 feet and North 9° 26' 42" East 6.99 feet to the most Westerly corner of said Lot 228; thence Northwesterly along a straight line, 20 feet, more or less, to the most Southerly corner of said Lot 214 of Tract No. 9903; thence along the line of the alley, Dewey Street, Twenty-fifth Street and Navy Street, all as shown on said map, the following courses, distance and curves; South 56° 08' 09" West 25.01 feet; South 35° 14' 40" East 157.85 feet; South 57° 25' 10" West 318.74 feet; Westerly along a curve concave to the North and having a radius of 30 feet, a distance of 45.73 feet; North 35° 14' 40" West 177.88 feet; North along a curve concave to the East and having a radius of 75 feet, a distance of 117.93 feet, and North 54° 51' East 296.88 feet to point of beginning.

The property described in this instrument contains 18.629 acres, more or less.

TOGETHER WITH all and singular the tenements, hereditaments, and appurtenances thereunto belonging, or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest, property possession, claim and demand whatsoever, in law as well as in equity, of the said Grantor, of, in or to the foregoing described premises, and every part and parcel thereof, with the appurtenances.

EXCEPTING, HOWEVER, from this conveyance and reserving to the Grantor, in accordance with Executive Order 9908, approved on December 5, 1947 (12 F. R. 8223), all uranium, thorium, and all other materials determined pursuant to Section 5 (b) (1) of the Atomic Energy Act of 1946 (60 Stat. 761), to be peculiarly essential to the production of fissionable material, contained, in whatever concentration, in deposits in the lands covered by this instrument for the use of the United States, together with the right of the United States through its authorized agents or representatives at any time to enter upon the land and prospect for, mine, and remove the same, making just compensation for any damage or injury occasioned thereby. However, such land may be used, and any rights otherwise acquired by this disposition may be exercised, as if no reservation of such materials had been made; except that, when such use results in the extraction of any such material from the land in quantities which can not be transferred or delivered without a license under the Atomic Energy Act of 1946, as it now exists or may hereafter be amended, such material shall be the property of the United States Atomic Energy Commission, and the Commission may require delivery of such material to it by any possessor thereof after such material has been removed or mined from the area in which it was contained. If the Commission requires the delivery of such material to it, it shall pay to the person mining or extracting the same, or to such other person as the Commission determines entitled thereto, such sums, including profits, as the Commission deems fair and reasonable for the discovery, mining, development, production, extraction, and

other services performed with respect to such material prior to such delivery, but such payment shall not include any amount on account of the value of such material before removal from its place of deposit in nature.  If the Commission does not require delivery of such material to it, the reservation hereby made shall be of no further force or effect.

It is the understanding of the parties hereto that the said Grantor will not be released from its obligation to adjust accounts and pay any refunds due to the Grantee which have resulted, or may result, from the acquisition of the property herein conveyed by the said Grantor.

Said property transferred hereby was duly declared surplus and was assigned to the War Assets Administration for disposal, acting pursuant to the provisions of the above-mentioned Act, as amended, Reorganization Plan One of 1947 (12 Fed. Reg. 4534), and applicable rules, regulations and orders.

TO HAVE AND TO HOLD the said premises, with the appurtenances, unto the said Grantee, its successors and assigns, forever.

IN WITNESS WHEREOF, the Grantor has caused these presents to be executed the day and year first above written.

                              UNITED STATES OF AMERICA
                              Acting by and Through
                              War Assets Administration

                              By  *Robert B Bradford*
                              ROBERT B. BRADFORD
WITNESSES:                    Regional Director
                              War Assets Administration
*[signature]*                 Region 10
*Nora O. Bean*                San Francisco, California

                              Approved as to form this
                              26 day of *April*   19 49
STATE OF CALIFORNIA      )    *[signature]*
                         ) ss. CITY ATTORNEY
CITY AND COUNTY OF SAN FRANCISCO )

On this 8th day of *April*, 1949, before me, *Maude C Phelps*, a Notary Public in and for the City and County of San Francisco, State of California, personally appeared ROBERT B. BRADFORD, known to me to be the Regional Director, War Assets Administration, Region 10, San Francisco, California, and known to me to be the person who executed the within instrument on behalf of said War Assets Administration, which executed said instrument on behalf of the United States of America, and acknowledged to me that he subscribed to the said instrument the name of the United States of America and the name of the War Assets Administration on behalf of the United States of America, and further that the United States of America executed said instrument.

WITNESS my hand and Official Seal.

                              *Maude C Phelps*
                              Notary Public
                              in and for the City and County of
                              San Francisco, State of California

- 5 -

Exh. K
97

FEDERAL AVIATION AGENCY

*5885 West Imperial Highway*
*L.A. Calif. 90045*

## LEASE

Lease No.:   FA65WE-1153
ATCT
Santa Monica, California

FEE $ 8.40-9 V

4497        between

CITY OF SANTA MONICA,
a Municipal Corporation

and

THE UNITED STATES OF AMERICA

1. This LEASE, made and entered into this 3/2d day of ~~March~~

in the year one thousand nine hundred and sixty-five

by and between   City of Santa Monica

whose address is   3260 Airport Avenue
Santa Monica, California

RECORDED IN OFFICIAL RECORDS
OF LOS ANGELES COUNTY, CALIF.

30 Min. Past  3 P.M.   APR 12 1965

RAY E. LEE, County Recorder

for      it and its      ~~heirs, executors, administrators,~~ successors, and

assigns, hereinafter called the lessor, and the UNITED STATES OF AMERICA, hereinafter called the Government:

WITNESSETH: The parties hereto for the consideration hereinafter mentioned covenant and agree as follows:

2. The lessor hereby leases to the Government the following described property, hereinafter called the premises, viz:

Parcel B, ATCT Site:

A plot of land 100 x 150 feet located on portions of Lots 165 and 168 of Tract No. 10529 in the City of Santa Monica, County of Los Angeles, State of California, as recorded in Book No. 160, pages 21 to 25 inclusive of Maps, in the office of County Recorder and more precisely as follows:

(Continued on following page 1a)

Page 1                                Form FAA-413 (3-60)

Lease FA65WE-1153
ATCT
Santa Monica, Calif.

7. (Continued from Page 1)

From the 2" I.P., RE 4676 marking the most easterly corner of
Tract No. 12972, M.B. 250, pages 32 and 33 in the County
Recorder's office, proceed S 35° 10' 23" E, 251.47 feet along
the southeasterly prolongation of the northeasterly line of
said Tract No. 12972 to a point on a line 400 feet northwesterly
of and parallel with centerline of runway, Santa Monica Municipal
Airport as established in City Engineers Field Book 397, pages 58
and 60, and Field Book 341, page 38; thence along the previously
mentioned parallel line S 44° 19' 52" W, 129.77 feet to the true
point of beginning of this description;

Thence N 45° 40' 08" W, 100.00 feet;
Thence S 44° 19' 52" W, 150.00 feet;
Thence S 45° 40' 08" E, 100.00 feet;
Thence N 44° 19' 52" E, 150.00 feet to the true point of
beginning, containing 15,000 square feet (0.34 acres).

All bearings are true and based on the bearing N 44° 19' 52" E of the
runway as shown on the Municipal Airport Lease Map, Number 2214 on
file in the City Engineer's Office.

APPROVED AS TO ........
3/17 1965
ASSISTANT CITY ENGINEER

LESSOR

LESSEE Philip F. Miles
Contracting Officer

1a

Exh. K

Together with a right-of-way for ingress and egress to and from the premises; a right-of-way or rights-of-way for establishing and maintaining a pole line or pole lines for extending electric power, and telecommunications facilities to the premises; and rights-of-way for subsurface power, communication and water lines to the premises; all rights-of-way to be over the said lands and adjoining lands of the lessor and, unless hereindescribed by metes and bounds, to be by routes reasonably determined to be the most convenient to the Government;

And the right of grading, conditioning, installing drainage facilities, and seeding the soil of the premises, and the removal of all obstructions from the premises which may constitute a hindrance to the establishment and maintenance of air navigation and telecommunications facilities.

And the right to make alterations, attach fixtures, and erect additions, structures, or signs, in or upon the premises hereby leased, which fixtures, additions, or structures so placed in or upon or attached to the said premises shall be and remain the property of the Government and may be removed upon the termination of this lease or within 90 days thereafter by or on behalf of the Government, or its grantees or purchasers of said fixtures, additions, structures, or signs, **and further, upon termination or expiration of this lease the Government shall not be obligated to restore the premises.**

3. To HAVE AND TO HOLD the said premises with their appurtenances for the term beginning

        April 1, 1965           and ending with June 30, 19 65.

4. The Government shall pay the lessor, for the premises, rent at the following rate for the term set forth in Article No. 3 above:

        ONE DOLLAR AND NO/100   ($1.00)

Payment shall be made at the end of each **Government fiscal year**

        **in arrears**           without the submission of invoices or vouchers.

5. This lease may, at the option of the Government, be renewed from year to year at an annual rental of $ **1.00 (ONE AND NO/100 DOLLARS)** and otherwise upon the terms and conditions herein specified. The Government's option shall be deemed exercised and the lease renewed each year for one year unless the Government gives 30 days' notice that it will not exercise its option, before this lease or any renewal thereof expires; *PROVIDED*, that no renewal thereof shall extend the period of occupancy of the premises beyond the 30th day of June xx **2015**; *AND PROVIDED FURTHER*, that adequate appropriations are available from year to year for the payment of rentals.

6. No Member of Congress or Resident Commissioner shall be admitted to any share or part of this lease or to any benefit to arise therefrom. Nothing, however, herein contained shall be construed to extend to any incorporated company, if the lease be for the general benefit of such corporation or company.

7. This lease is subject to the additional provisions which are set forth on the attachment, initialed by the parties hereto, and made a part hereof, identified as follows:

        Rider to Accompany Lease FA65WE-1153

                Page 2                Form FAA-413 (3-60)

IN WITNESS WHEREOF, the parties hereto have hereunto subscribed their names as of the date first above written.

As the holder of a mortgage, dated

. . . . . . . . . . . . . . . . . . , recorded in

Liber . . . . . . . . . . . . , pages . . . . . . . . . .

. . . . , against the above-described premises, the undersigned hereby consents to the foregoing lease and agrees that if, while the lease is in force, the mortgage is foreclosed, the foreclosure shall not void the lease.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
*Mortgagor.*

CITY OF SANTA MONICA
A Municipal Corporation

BY: . . . . . . . . . . . . . . . . . . . . . . . . . .
TITLE: . . . . *City Manager* . . . . . . . . *Lessor.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Lessor.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Lessor.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Lessor.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . *Lessor.*

THE UNITED STATES OF AMERICA,

APR 6  1965    BY . . . . . . . . . . . . . . . . . . . . . PHILIP L. Miles
*Chief, Airports Division*

(If the lessor is a corporation, appropriate certificate shall be executed by the secretary or assistant secretary in the space provided below. Also, if acknowledgment by notary is required, such may be inserted in the space provided below.)

I, . . . . . . . . R.O. GRUBB . . . . . . . . . . . . . . . . . , certify that I am the

. . City Clerk . . . . . . Secretary of the/corporation named as lessor in the attached

lease; that . . . . . . . . . . . . PERRY SCOTT . . . . . . . . . . . . . . , who signed said lease

on behalf of the lessor, was then . . . . City Manager . . . . . . of said corporation; that said lease was duly signed for and in behalf of said corporation by authority of its governing body, and is within the scope of its corporate powers.

3/25/65 . . . . . . . . . . . . . . . . . . . . . . . . [CORPORATE SEAL]

U.S. GOVERNMENT PRINTING OFFICE  1960   O-540091            Page 3            Form FAA-413 (3-60)

**Page 1**

Rider to Accompany Lease FA65WE-1153

1.  For and in consideration of the foregoing and of the operation of an Air Traffic Control Tower at the Santa Monica Municipal Airport by the United States Government, acting by and through the Federal Aviation Agency, the Lessor agrees that said Air Traffic Control Tower shall be operated in accordance with the following conditions:

   a.  The Lessor shall, at no cost to the Government, provide the lighting control panels in the control tower and shall make all necessary provisions for supplying the electrical circuits and current on a continuing basis, required for the operation of boundary, flood and obstruction lights, including those lights which may be operated from the Air Traffic Control Tower by Federal Aviation Agency Air Traffic Controllers;

   b.  All airport lighting which the Federal Aviation Agency determines is essential to aircraft operations, including that which can be controlled from the Air Traffic Control Tower and those air traffic control devices which are designated to be remotely controlled from the Air Traffic Control Tower, shall be under the operational control of Federal Aviation Agency Air Traffic Controllers;

   c.  The Lessor shall be responsible for ensuring the proper and continued functioning of any locally installed light or other device placed under the control of the Federal Aviation Agency Air Traffic Controllers;

   d.  The Lessor shall be responsible for the proper and continued functioning of all equipment and apparatus which the Federal Aviation Agency determines is necessary for air traffic control, but which cannot be placed in operation or controlled from the Air Traffic Control Tower, or is not otherwise operated by, or under the control of, the Federal Aviation Agency;

   e.  The Lessor shall advise the Federal Aviation Agency Chief of the Air Traffic Control Tower or his representative of any conditions which render all, or any area, of the airport unsafe for normal utilization by aircraft, and any such areas shall be appropriately marked to indicate such condition in a manner approved by the Federal Aviation Agency;

   f.  The Lessor shall indemnify and save harmless the United States Government, acting by and through the Federal Aviation Agency, from and against all loss, injury, or damage and claims for loss, injury, or damage resulting from or incident to the operation of the Air Traffic Control Tower, provided, however, that the Lessor shall not be responsible for any such loss, injury, or damage, or claims therefor, resulting from the negligent or wrongful act or omission of any employee of the Federal Aviation Agency incident to the operation of the Air Traffic Control Tower.

Rider to Accompany Lease FA65WE-1153

Page 2

g. The Federal Aviation Agency shall have absolute control of the operation of the Air Traffic Control Tower at all times and shall not be subject to the direction of the Lessor in this regard;

h. The Lessor shall give notice to the Federal Aviation Agency Chief of the Air Traffic Control Tower, or his authorized representative, prior to the time any maintenance or construction is begun on the airport landing area, unless such maintenance or construction is in accordance with a schedule which has been coordinated with the Federal Aviation Agency Chief of the Air Traffic Control Tower. This notice shall be given not less than thirty (30) days prior to the date scheduled for beginning of the maintenance or construction. In regard to those items set forth in an approved schedule, the schedule shall be submitted for approval no less than thirty (30) days prior to beginning the first scheduled item of construction or maintenance;

i. The Lessor agrees to provide two-way ground control communication equipment in his maintenance and emergency vehicles regularly operating on the airport landing area, this equipment to be capable of maintaining radio communications with the Federal Aviation Agency Air Traffic Control Tower;

j. The Lessor agrees that future airport construction will not impair Federal Aviation Agency Controllers' visibility to traffic patterns, approaches, runways, taxiways, operational portions of the aprons, and other operational areas necessary for the control of ground and air traffic;

k. Lessor further agrees that in the event that relocation or modification of the FAA Air Traffic Control Tower or components thereof, hereinbefore described, is made necessary by airport improvements or changes, the costs of such relocation or modification shall be chargeable to the Lessor; that the Lessee shall have the exclusive right to determine how the relocation or modification project shall be accomplished including, but not limited to, the engineering, site selection, procurement of equipment, construction, installation, testing, flight inspection and recommissioning of the facility; that upon submission by the Lessee of an estimate of the relocation or modification costs, the Lessor shall transfer to the Lessee the funds required for the relocation or modification; that in the event the actual costs of relocation or modification exceed the estimate submitted by the Lessee, the Lessor shall pay for the difference up to and including ten percent (10%) of the estimated costs; that the Lessee shall have the exclusive right to determine when a relocation or modification of a facility or component thereof has been made necessary by airport improvements or changes and that this decision shall be final. It is agreed

Rider to Accompany Lease FA65WE-1153

Page 3

by and between the Lessor and Lessee that in the event the actual costs of relocation or modification of a facility or component thereof is less than the estimate submitted by the Lessee, the Lessor shall pay only the actual costs.

9. The Government shall have the right to connect to the City's utilities, without charge for connection to said systems, for the operation of the Air Traffic Control Tower.

10. The Lessor warrants that no person or selling agency has been employed or retained to solicit or secure this lease upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial or selling agencies maintained by the Lessor for the purpose of securing business. For breach or violation of this warranty the Government shall have the right to annul this lease without liability or in its discretion to deduct from the contract price or consideration the full amount of such commission, percentage, brokerage, or contingent fee.

LESSOR

LESSEE  Philip F. Miles
        Contracting Officer

(Corporate Acknowledgment)

STATE OF ___CALIFORNIA___ )

COUNTY OF ___LOS ANGELES___ ) SS

On this _25th_ day of _March_ 1963, before me

_Henrietta Kimberling_ a Notary Public, in and

for the said County of ___LOS ANGELES___, State of ___CALIFORNIA___,

personally appeared___ PERRY SCOTT

_____, known to me to be the ___CITY MANAGER___ of

___CITY OF SANTA MONICA___, a municipal corporation known to me to be the

person who executed the above Instrument, on behalf of the Corporation

herein named, and acknowledged to me that such Corporation executed the

same.

IN WITNESS WHEREOF, I hereunder set my hand and official seal, at my

office in the County of ___Los Angeles___, State of ___California___,

the day and year in this certificate first above written.

OFFICIAL SEAL
HENRIETTA KIMBERLING
NOTARY PUBLIC - CALIFORNIA
PRINCIPAL OFFICE IN
LOS ANGELES COUNTY

(Signed) _Henrietta Kimberling_

Notary Public in and for the County

of _Los Angeles_, State of _California_

My Commission Expires: _Jan. 21, 1969_

HENRIETTA KIMBERLING
My Commission Expires Jan. 21, 1969

RESOLUTION NO. __3255__

(CITY COUNCIL SERIES)

A RESOLUTION OF THE CITY COUNCIL OF THE CITY
OF SANTA MONICA APPROVING FEDERAL AVIATION
AGENCY LEASE NO. FA65WE-1153 BETWEEN THE CITY
OF SANTA MONICA, A MUNICIPAL CORPORATION, AND
THE UNITED STATES OF AMERICA AND AUTHORIZING
THE CITY MANAGER TO EXECUTE THE SAME ON BEHALF
OF THE CITY.

THE CITY COUNCIL OF THE CITY OF SANTA MONICA DOES RESOLVE AS
FOLLOWS:

SECTION 1.   Federal Aviation Agency Lease No. FA65
WE-1153 between the City of Santa Monica, a municipal corporation,
and the United States of America is hereby approved and the City
Manager is authorized and directed to execute the same for and on
behalf of the City of Santa Monica.

SECTION 2.   The City Clerk shall certify to the
adoption of this resolution and thenceforth and thereafter the same
shall be in full force and effect.

ADOPTED AND APPROVED this __23rd__ day of __March__,
1965.

CLO HOOVER /s/
Mayor Protempore

ATTEST:

_____
City Clerk

I hereby certify that the foregoing resolution was
duly adopted by the City Council of the City of Santa Monica at a
__regular__ meeting thereof on the 23rd day of __March__, 1965,
by the following vote of the Council:

|  |  |  |
|---|---|---|
| AYES: | Councilmen: | Goodfriend, Spurgin, Wamsley, Hoover |
| NOES: | Councilmen: | None |
| ABSENT: | Councilmen: | Bohn, Minter |

_____
City Clerk

APPROVED AS TO FORM:

_____
City Attorney