# EXHIBIT D



**U.S. DEPARTMENT OF TRANSPORTATION**
FEDERAL AVIATION ADMINISTRATION

National Policy



Effective Date:
September 30, 2009

**SUBJ:**     FAA Airport Compliance Manual

The Airport Compliance Program ensures airport sponsors' compliance with their federal obligations in the form of grant assurances, surplus and nonsurplus obligations, or other applicable federal law. The Airport Compliance Program is administered by the FAA headquarters Airport Compliance Division (ACO-100) based in Washington, DC.

This handbook provides guidance to FAA personnel on interpreting and administering the various continuing commitments airport sponsors make to the U.S. Government when they accept grants of federal funds or federal property for airport purposes. The handbook (i) analyzes the various federal obligations set forth in legislatively mandated airport sponsor assurances, (ii) addresses the nature of the assurances and the application of the assurances in the operation of public use airports, and (iii) facilitates interpretation of the assurances by FAA personnel. This manual was designed to provide guidance to FAA personnel pertaining to the Federal Aviation Administration (FAA) Airport Compliance Program.

*Randall S. Fiertz*

Randall S. Fiertz
Director
Airport Compliance and Field Operations Division (ACO-1)

22.3.   Duration and Authority. ................................................................................. 22-2
22.4    FAA Consideration of Releases. ................................................................... 22-2
22.5    Request for Concurrent use of Aeronautical Property for Other Uses. .............. 22-3
22.6.   Release for Interim Use of Aeronautical Property for Other Uses. ................... 22-5
22.7.   Release of Federal Maintenance Obligation. ................................................. 22-5
22.8.   Industrial Use Changes. ................................................................................ 22-6
22.9.   Release of National Emergency Use Provision (NEUP). ................................ 22-6
22.10.  Release from Federal Obligation to Furnish Space or Land without Charge. .................. 22-7
22.11.  Release of Reverter Clause. ......................................................................... 22-7
22.12.  Exclusive Rights Federal Obligations cannot be Released without Release and Disposal
        of the Parcel or Closure of Airport. .............................................................. 22-8
22.13.  Federal Obligations Imposed with the Airport Layout Plan and Exhibit "A". ................... 22-8
22.14.  Procedures for Operational Releases or Requests for Change in Use. ............... 22-8
22.15.  Release of Federal Obligations in Regard to Personal Property, Structures,
        and Facilities. .............................................................................................. 22-8
22.16.  All Disposals of Real Airport Property ........................................................ 22-10
22.17.  Release of Federal Obligations in Regard to Real Property Acquired as
        Federal Surplus Property. ............................................................................ 22-11
22.18.  Release of Federal Obligations in Regard to Real Property Acquired with
        Federal Grant Assistance .............................................................................. 22-14
22.19.  Effect of Not Receiving or Receiving a Grant after December 30, 1987 .......................... 22-15
22.20.  Release of Entire Airport. ............................................................................ 22-16
22.21.  Procedures for the Application, Consideration, and Resolution of Release Requests. ..... 22-17
22.22.  General Documentation Procedures. ............................................................. 22-17
22.23.  Airport Sponsor Request for Release. ........................................................... 22-17
22.24.  Content of Written Requests for Release. ...................................................... 22-17
22.25.  Content of Request for Written Release for Disposal. .................................... 22-18
22.26.  Exhibits to the Written Request for Release. ................................................. 22-19
22.27.  FAA Evaluation of Sponsor Requests. .......................................................... 22-20
22.28.  FAA Determination on Sponsor Requests. ..................................................... 22-20
22.29.  FAA Completion of Action on Sponsor Requests. ......................................... 22-21
22.30.  FAA Denial of Release or Modification. ........................................................ 22-21
22.31.  Procedures for Public Notice for a Change in Use of Aeronautical Property. ................... 22-22
22.32.  FAA Consent by Letter of Intent to Release -- Basis for Use. ........................... 22-23
22.33.  The Environmental Implications of Releases. ................................................ 22-23
22.34.  through 22.37. reserved. ............................................................................... 22-24

Chapter 23  -  Reversions of Airport Property

23.1.   Introduction. ................................................................................................ 23-1
23.2.   General. ...................................................................................................... 23-1
23.3.   Right of Reverter. ....................................................................................... 23-1
23.4.   Authority to Exercise Reverter. .................................................................... 23-1
23.5.   Instruments of Conveyance. ........................................................................ 23-2
23.6.   Reconveyances. ........................................................................................... 23-3
23.7.   Involuntary Reversion .................................................................................. 23-3

09/30/2009                                                                                    5190.6B

23.8.   Reversioner Federal Agency. ................................................................... 23-3
23.9.   Determination of Default. ....................................................................... 23-3
23.10. Notice of Intent to Exercise the Right of Reverter. ............................... 23-4
23.11. Voluntary Reconveyance to Correct a Default. ..................................... 23-4
23.12. Voluntary Reconveyance Documentation. .............................................. 23-5
23.13. Notice of Reverter of Property and Revestment of Title and Property
        Interest in the U.S. ................................................................................... 23-5
23.14. Recording Notice of Reversion of Property and Revestment of Title
        in the United States. ................................................................................ 23-6
23.15. Certificate of Inspection and Possession. ............................................... 23-6
23.16. Possession, Posting or Marking of Property. ......................................... 23-6
23.17. Reversion Case Studies. .......................................................................... 23-6
23.18. through 23.21. reserved. .......................................................................... 23-7

EXHIBIT D

## Chapter 23.  Reversions of Airport Property

**23.1.    Introduction.** This chapter discusses guidance on returning property originally conveyed from the U.S. Government. The "possibility of reverter" is a future



ownership interest retained by the FAA after conveying property with conditions or limitations to an airport sponsor.  The sponsor's interest will automatically end and the right to the property will "revert" to the FAA if the conditions or limitations specified in the conveyance document or agreement occur.  The FAA has shortened the terminology for this process to "reverter."

FAA will use this process when the sponsor is in default of its federal obligations and all other remedies have failed.  This process is ordinarily the last resort when a grantee of federal property for airport purposes continues in default.  All other proper and available remedies to correct a default shall be explored prior to exercising the right to exercise the reversion of airport property to the federal government.

In some cases, FAA may seek the reversion of property interests on outstanding airport leases.  When confronted with the possibility of a reversion affecting an airport lease, contact the FAA headquarters Airport Compliance Division (ACO-100) for assistance.  This guidance pertains to reverting federal property interest and obtaining good title.

It is the responsibility of ACO-100 to ensure that the public interest is served when considering reversions and airport closures.

**23.2. General.**  This chapter reflects information obtained from the four federal agencies that are major sources of federal property for public airport purposes: (a) General Services Administration (GSA), (b) Department of Agriculture (USDA), (c) Department of Interior's (DOI) Bureau of Land Management (BLM), and (d) Department of Defense (DoD).

**23.3. Right of Reverter.**  The instrument of conveyance from the federal government must specify the right to have property interest revert to a federal agency and title revest in the United States.  This right extends only to the title, right of possession, or other rights vested in the United States at the time the federal government transferred the property described in the instrument to the grantee.  The right may be exercised only at the option of the United States – with or without the cooperation of a grantee – against all or part of the property in question.

**23.4. Authority to Exercise Reverter.**  The Secretary has the authority to exercise the option of the United States for reverter of property interest conveyed by the federal government for public airport purposes.  Each revestment of title to airport property is controlled by the instrument of conveyance, applicable laws, federal regulations, and FAA orders.

EXHIBIT D
045

09/30/2009                                                                    5190.6B

> *The Secretary may exercise the option of the United States to revert property interest conveyed by the federal government for public airport purposes.  Each revestment of title to airport property is controlled by the instrument of conveyance, applicable laws, federal regulations, and FAA orders.*

**23.5. Instruments of Conveyance.**  The FAA issues instruments of conveyance that typically include a right of reverter of airport property interest and a right to revest title in the United States under authority of one or more of the following:

**a.** Section 516 of the Airport and Airway Improvement Act of 1982 (AAIA), Public Law (P.L.) No. 97-248 (49 U.S.C. § 47125).

**b.** Section 23 of the Airport and Airway Development Act of 1970 (1970 Airport Act) (P.L. No. 91-258, May 21, 1970) (84 Stat. 219 and following).

**c**. Section 16 of the Federal Airport Act of 1946 (1946 Airport Act), as amended.

**d.** Section 13(g) of the Surplus Property Act of 1944, as amended (49 U.S.C. § 47151 et seq.).

**e.** Section 303(c) of the Federal Aviation Act of 1958 (FAA Act), as amended (49 U.S.C. § 1344(c)).  Also the precedent Civil Aeronautics Act of 1938, as amended (49 U.S.C. §§ 40110 and 40112).

**f.** Special Congressional Legislation.  Section 35 of the Alaska Omnibus Act (73 Stat 149) or other enabling Acts authorizing



*There are circumstances when only part of airport land subject to reversion is not used in accordance with the statutes and deed.  In this event, the FAA should consider reversion of title to only that property where misuse or nonuse comprises a default.  However, the FAA should contact the FAA Office of Chief Counsel before proposing measures of this type.  In circumstances in which the instigating status of noncompliance can be cured by reversion of some portion of property subject to reversion, the FAA should consider a voluntary reconveyance. The emphasis should be for runways, taxiways, and aprons. (Photo; FAA).*

09/30/2009                                                                    5190.6B

conveyances of federal property to nonfederal public agencies for public airport purposes.

**23.6. Reconveyances.**  The FAA may be selective in exercising its right to the reversion of an airport property interest.  The FAA uses its discretion to serve the public interest in aviation.  For instance, the reversion of a parcel of property may serve the public interest better than reversion of the entire airport.

In such cases, the FAA will work to cooperate with the sponsor to achieve compliance with a selective reversion on a voluntary basis.  (See paragraph 23.11 in this chapter, *Voluntary Reconveyance to Correct a Default*, for additional information on voluntary reversions.)

There are circumstances when only part of the airport land subject to reversion is not used in accordance with the statutes and the deed.  In this event, the FAA should consider reversion of that part of the property where misuse or nonuse comprises a default.  However, the FAA should contact the FAA Office of Chief Counsel before proposing measures of this type. In circumstances in which the instigating status of noncompliance can be cured by reversion of some portion of property subject to reversion, the FAA may also consider a voluntary reconveyance, as discussed below.  In addition, a grantee may request the reversion of title to an airport property interest by a voluntary reconveyance.  The FAA prefers this method since it is usually in the best interest of all parties.  Once the FAA makes the determination to exercise the federal government's option for reversion of airport property, there is no alternative but to revest title in the United States.  A grantee for good reasons may want the FAA to issue a notice of intent to exercise its right to reversion of the property before executing a voluntary quitclaim deed or instrument of reconveyance.

**23.7. Involuntary Reversion.** A sponsor's refusal to cooperate with the FAA could lead to legal proceedings to effect an involuntary reversion.  This can affect some or all of the property subject to reversion.

Responsibility for any legal proceedings to effect involuntary reversion in the event of resistance on the part of a grantee generally lies with the Department of Justice (DOJ), as the representative of the U.S. Government, in conjunction with the FAA Office of Chief Counsel.

**23.8. Reversioner Federal Agency.**  The federal agency that issued the original instrument of conveyance, or its successor, has a right to receive the federal government estate in reversion.  If that federal agency is other than the GSA or FAA and declines to accept control and jurisdiction upon revestment of title, GSA will automatically become the reversioner agent for the federal government.  In such cases, the FAA must advise GSA of the impending reversion to the United States and fully coordinate revestment of title procedures consistent with GSA supplementary guidance and procedures.  Where the FAA is the reversioner agent, the regional Acquisitions and Logistics Division will handle such reversions and administer the procedures for the action in accordance with applicable regulations.

**23.9. Determination of Default.**  To exercise reversion of a property interest conveyed for public airport purposes and revest that interest in the United States, the Associate Administrator for Airports must determine that a grantee is in default under the covenants of the instrument of conveyance or the terms and conditions of an agreement between the two (2) parties.  FAA policy

requires FAA offices to cooperate with the grantee to the extent reasonable to resolve the matter expeditiously and in the interest of the United States in civil aviation.  If the grantee fails to resolve the matter in a timely and efficient manner, the FAA Director of Airport Compliance and Field Operations (ACO-1) will pursue the reversion and revestment, including the issuance of a notice of reverter and revestment of title in the United States Government.

**23.10.  Notice of Intent to Exercise the Right of Reverter.**  This notice is a formal letter informing a grantee of FAA's declaration of default and decision to revest title to property in the United States Government under the conveyance instrument covenants.  The FAA will send notice to the grantee (and an information copy to the grantor agency) by certified or registered mail, with return receipt requested.  Prior to advising the grantee, the FAA must fully coordinate in writing with the appropriate federal agency (reversioner) and provide the agency with a copy of the notice. The notice shall include:

**a.**  Prior notices of prior noncompliance.

**b.**  A description of grantee's failure to correct the deficiencies listed in the notices of noncompliance.

**c.**  A description of the resulting default based on grantee's noncompliance and default on the instrument of conveyance or agreement.

**d.**  A visual and legal description of the property to be reverted.

**e**. FAA's description of the cure for the default and minimum requirements for curing the default to retain the property.

**f.**  The time allowed to cure the default to permit grantee to retain the property.  FAA usually allows a grantee 60 days to cure a default.  Time may vary depending on the circumstances, but generally the period should not exceed 90 days.

**g.**  FAA's requirement for the grantee to notify the FAA promptly (set a reasonable time period for response, i.e., 7, 10, 14 days) if it does not intend to act to cure the default and thereby waive the time allowed for the cure.

**h.**  A description of any other relevant facts bearing on the default or potential remedies.

**23.11.  Voluntary Reconveyance to Correct a Default.**  The FAA must give grantees that are in default an opportunity to reconvey the property voluntarily to the United States.  Where only part of the real property described in the instrument is involved, the FAA must coordinate with the reversioner federal agency in order to supplement the general guidance and procedures for the revestment of good title and property interest in the United States.  It is an essential step in ensuring that the property in question will be used to serve the best public interests in aviation.  In all cases, each voluntary reconveyance requires the following:

09/30/2009                                                                    5190.6B

### *The FAA must give grantees in default an opportunity to reconvey the property voluntarily to the United States. Where only part of the real property described in the instrument is involved, the FAA must coordinate with the reversioner federal agency in order to supplement the general guidance and procedures for the revestment of good title in the United States.*

**a. Resolution from the Governing Body.**  A resolution of the grantee authorizing a reconveyance to the United States and designating an appropriate official to execute an instrument of reconveyance acceptable to the United States.  The resolution shall also cite the reason for reconveyance (e.g., not developed, ceased to be used, not needed).

**b.  Instrument of Reconveyance.**  An instrument of reconveyance that substantially conforms to a format suggested by FAA counsel.

**c. Grantee Legal Opinion.**  A legal opinion by the grantee's attorney.  The legal opinion should recite:

**(1).** The grantee's legal authority to reconvey the property to the United States.

**(2).** The status and validity of title to the property interest reconveyed to the United States.  The attorney must provide a history of the title and property interest that covers the period from the original conveyance to the present, which includes any outstanding encumbrances or interests, along with an outline of the procedures for returning the title to its original form.

**d. Certificate of Inspection and Possession.**  Prepare a certificate of inspection and possession.

**23.12.  Voluntary Reconveyance Documentation.**   The FAA will submit the necessary documents to the appropriate official of the reversioner federal agency.  If the reversioner federal agency requires a certified or conformed copy, the FAA will obtain it from the grantee.

**23.13. Notice of Reverter of Property and Revestment of Title and Property Interest in the U.S.**  This notice is ordinarily prepared under the direction of FAA counsel.  The basic elements of this notice  include:

**a.**  Identification of the instrument of conveyance from the United States to the grantee.

**b.**  Citation of the statutory authority enabling the original conveyance of federal property.

**c.**  Legal description of the property conveyed and that part which reverts to the United States.

**d.**   Statement that the property was conveyed subject to an express provision authorizing its reversion under certain circumstances and as set forth in the reverter clause.

**e.**  Statement that the FAA has determined that the property in question reverts to the United States for specific reasons consistent with the reverter clause.

**f.**  Statement of the specifics which caused the default of the grantee as set forth in the clauses in the instrument of conveyance.

**g.**  Statement that the property interest to which the United States has reverter rights is revested in the United States.

**h.**  Statement identifying the reversioner federal agency.

**i.**  Reference to the notice of intent for reversion of property.

**23.14.  Recording Notice of Reversion of Property and Revestment of Title in the United States.**  After execution by the authorized FAA official, the FAA airports district office (ADO) will record the original executed copy of the notice in the official records of the county in which the property is located.  The ADO will obtain the required number of certified copies or certificates of recordation from the Clerk of the Court or other custodian of the official county records.  The number of copies requested must satisfy the needs of the federal agencies involved. Concurrent with recording the original copy of the notice, the ADO will send or deliver an executed copy to the grantee.  A cover letter shall affirm that pursuant to the execution of the notice, the property involved has reverted to, and title revested in, the United States.  This letter shall specifically advise the grantee that the notice has been recorded in the official records of the county in which the property is located.

**23.15.  Certificate of Inspection and Possession.**  Once the FAA completes the reversion, the ADO will conduct an inspection and complete the certificate of inspection and possession.

**23.16.  Possession, Posting, or Marking of Property.**  Since a property reversion requires a process similar to a physical taking of property, the reversioner must post or mark the property to indicate that it is now the property of the United States.  This action effects possession and a constructive occupancy.  Consequently, concurrent with the physical inspection, the ADO will post or mark the property, as appropriate, thus indicating that the property belongs to the United States.  Therefore, prior to the inspection, the ADO should request sufficient signs from the reversioner federal agency for this purpose.

**23.17.  Reversion Case Studies.**  Reversions of surplus federal property are not common, but they do occur.

**a.  McIntosh County Airport, Georgia.** An example of such a situation was Harris Neck AFB in Georgia, 30 miles south of Savannah in McIntosh County.

In October 1946, the War Assets Administration (WAA) deeded the facility to McIntosh County for use as a civilian municipal airport.  The facility was updated and one of its runways was extended to 5,400 feet. It served both civilian and military users well into the late 1950s. However, mismanagement by the sponsor – including illegal disposal of the airport's assets – and restricted access resulted in action by the federal government.  The Federal Aviation Agency exercised the

09/30/2009                                                                5190.6B

reversion clause contained in the surplus property conveyance and the facility was taken over by GSA.  In 1962, GSA conveyed the now closed airport to the U.S. Bureau of Sport Fisheries & Wildlife (today's U.S. Fish and Wildlife Service).  Today the remains of the airport are part of a migratory bird refuge.

**b. Half Moon Bay Airport, California.**  Half Moon Bay Airport was constructed in 1942 for the Army, and relinquished to the Navy at the end of World War II.  In 1947, the WAA deeded the property to San Mateo County under the Surplus Property Act of 1944.  The airport has continued in use as a county civil airport since that time.

For many years the local water district paid the county an extraction fee for water from wells located on the airport.  The water district then decided to use its eminent domain powers to acquire the wells by condemning the airport property on which the wells were located.  The FAA filed a notice of intent to exercise reversion rights to the property, and then intervened in the condemnation proceeding.  In February 2009, the U.S. District Court for the Northern District of California found that the water district's action was sufficient to trigger the FAA's right of reverter in the airport deed.  The court found that title to the wells had passed to the United States through the exercise of that reversion right, and that the wells therefore could not be condemned by a local or state government agency.  (See *Montara Water and Sanitary District v. County of San Mateo*, 598 F.Supp. 2d 1070 (N.D.Cal. 2009).

**23.18. through 23.21. reserved.**

09/30/2009                                                                     5190.6B

**THIS PAGE INTENTIONALLY LEFT BLANK**