STUART F. DELERY
Assistant Attorney General
Civil Division
ANDRE BIROTTE JR.
United States Attorney
JUDRY SUBAR
Assistant Director
Federal Programs Branch
HECTOR G. BLADUELL
Trial Attorney
RAPHAEL O. GOMEZ
(D.C. Bar #305540)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 514-1318
Facsimile:  (202) 616-8460
raphael.gomez@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SANTA MONICA, | No. CV 13-08046 JFW (VBKx) |
| Plaintiff, | Honorable John F. Walter |
| v. | Noticed Motion Date and Time: February 10, 2014 1:30 p.m. |
| UNITED STATES OF AMERICA, et al. | |
| Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |

DEFS.' REPLY IN SUPP. OF MOT. TO DISMISS
CASE NO. CV-13-08046 JFW (VBKx)

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................1

    I.    The Statute of Limitations Bars Plaintiff's QTA Claim. ..........................1

    II.   There is no Jurisdiction over the Takings Claims ...................................6

    III.  The Constitutional Claims Are Not Ripe..................................................7

    IV.  The City Has Failed to State Constitutional Claims ...............................8

        1.    The City Fails To State A "Regulatory" Takings Claim ................8

        2.    The City Fails To State A Tenth Amendment Claim .....................9

        3.    The City Fails To State A Due Process Claim................................9

CONCLUSION ....................................................................................................11

# TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967) ..................................................................................................8

*Action Apartment Ass'n, Inc. v. Santa Monica Rent*,
   509 F.3d 1020 (9th Cir. 2007) ................................................................................10

*Alaska v. Babbitt*,
   75 F.3d 449 (9th Cir. 1995) ......................................................................................4

*Aydin Corp. v. Union of India*,
   940 F.2d 527 (9th Cir. 1991) ....................................................................................7

*Bay View Inc. v. Ahtna, Inc.*,
   105 F.3d 1281 (9th Cir. 1997) ...............................................................................6, 8

*Block v. North Dakota ex. Rel. Bd. Of Univ. & Sch. Lands*,
   461 U.S. 273 (1983) .................................................................................................5

*California ex. rel., State Land Comm'n v. Yuba Goldfields, Inc.*,
   752 F.2d 393 (9th Cir. 1985) ................................................................................2, 3

*California v. U.S.*,
   104 F.3d 1086 (9th Cir. 1997) ..................................................................................9

*E. Enters. v. Apfel*,
   524 U.S. 498 (1998) ..............................................................................................6, 7

*Fadem v. United States*,
   52 F.3d 202 (9th Cir. 1995) ...................................................................................5-6

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
   130 S. Ct. 3138 (2010) .............................................................................................7

*Gardner v. Stager*,
   103 F.3d 886 (9th Cir. 1996) ....................................................................................5

*Gov't of Guam v. United States*,
  744 F.2d 699 (9th Cir. 1984)..................................................................................2

*Hawaii v. United States*,
  866 F.2d 313 (9th Cir. 1989)..................................................................................3

*Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*,
  452 U.S. 264, 288 (1981) ......................................................................................9

*Humboldt County v. United States*,
  684 F.2d 1276 (9th Cir. 1982)...............................................................................2

*Lingle v. Chevron U.S.A., Inc.*,
  544 U.S. 528, 542, 161 L.Ed.2d 876, 125 S. Ct. 2074 (2005) .............................10

*McIntyre v. United States*,
  789 F.2d 1408 (9th Cir. 1986)...............................................................................2

*Mead v. City of Cotati*,
  No. C 08-3585 CW, 2008 WL 4963048 (N.D. Cal. Nov. 19, 2008) .......... 6, 7, 8-9

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003) ..............................................................................................8

*In re Nat'l Sec. Agency Telecomm'n Records Litig.*,
  669 F.3d 928 (9th Cir. 2011)..................................................................................6

*New York v. United States*,
  505 U.S. 144 (1992) ..............................................................................................9

*Park Cnty, Mont.  v. United States*,
  626 F.2d 718 (9th Cir. 1980)..................................................................................3

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
  945 F.2d 765 (4th Cir. 1991)..................................................................................6

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984) ..............................................................................................6

*Shultz v. Dep't of Army*,
   886 F.2d 1157 (9th Cir. 1989)..................................................................................2

*Skranak v. Castenada*,
   425 F.3d 1213 (9th Cir. 2005)..................................................................................6

*Spirit Lake Tribe v. North Dakota*,
   262 F.3d 732 (8th Cir. 2001)................................................................................2, 6

**STATUTES**

28 U.S.C. § 1491(a)(1)................................................................................................1

28 U.S.C. § 2409a .......................................................................................................1

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12......................................................................................................11

# INTRODUCTION

This case is jurisdictionally deficient both because it was not brought within the 12-year statute of limitations of the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, and because it is unripe. The 1948 Instrument of Transfer ("1948 Instrument"), a recorded real estate instrument to which the City of Santa Monica ("The City" or "Plaintiff") entered voluntarily, explicitly states that, if Plaintiff stops running the property in dispute ("Airport Property") as an airport, the United States may exercise an option to take title or possession of the land. Thus, the whole world knew 65 years ago that the United States had an interest in the land. In the years since, at various times, the City's actions have confirmed that it knew about this interest. The QTA statute of limitations has long since run. In addition, Plaintiff's constitutional claims (Claims Two through Five) are not ripe because the United States has not taken, nor is it about to take, title or possession of the Airport Property. Further, Plaintiff's claim for equitable and declaratory relief under the Takings Clause is barred by the Tucker Act, 28 U.S.C. § 1491(a)(1), which provides the only avenue for Plaintiff to seek relief on those claims. Plaintiff's Tenth Amendment claim (Claim Four) should also be dismissed because the United States is not "commandeering" Plaintiff to do anything; the City entered into the 1948 Agreement voluntarily and Congress has not directed Plaintiff to run the Airport Property as an airport in perpetuity. Finally, Plaintiff's Fifth Amendment "Due Process" claim (Claim Five) fails because there is no government action against Plaintiff, and Plaintiff has not alleged that the 1948 Instrument does not further a legitimate purpose.

# ARGUMENT

## I. The Statute of Limitations Bars Plaintiff's QTA Claim.

Plaintiff's claim that it did not know about the United States' interest in the Airport Property until 2008, and thus that the QTA statute of limitations began to run that year, is plainly implausible, if not simply preposterous. The QTA statute

of limitations begins to run when there is a reasonable awareness of the United States' interest. *Shultz v. Dep't of Army*, 886 F.2d 1157, 1160 (9th Cir. 1989); *McIntyre v. United States*, 789 F.2d 1408, 1411 (9th Cir. 1986), *quoting California ex. rel., State Land Comm'n v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396-97 (9th Cir. 1985) (citation omitted); *Humboldt Cnty. v. United States*, 684 F.2d 1276, 1280 (9th Cir. 1982). The plain text of the 1948 Instrument provided Plaintiff this reasonable awareness. It explicitly states that, in the event the City stops running the Airport Property as an airport, "**the title, right of possession and all other rights transferred by this instrument** to [the City], or any portion thereof', shall at the option of the [federal government] revert to the [Government] sixty (60) days following the date upon which demand to this effect is made in writing[.]" 1948 Instrument, Compl., Exhibit C at 70. (emphasis supplied). The agreement also states that the condition that the City runs the Airport Property as an airport "shall run with the land," but that the City could petition the Government in writing to be released from these conditions. 1948 Instrument, Compl., Exhibit C at 69-70. The 2008 order to show cause states nothing different than what the 1948 Instrument provides. *See id*. at 70.

Plaintiff argues that, somehow, the explicit language of the 1948 Instrument did not make it aware of the Government's interest in the title of the land. According to Plaintiff, it did not then believe that the Government had an option to take title because the Government never had title to begin with. But the 1948 Instrument itself is completely self-explanatory. And, knowledge of the claim's full contours is not necessary if there is a reasonable awareness that the United States claims "some" interest adverse to the plaintiff. *See Alaska v. Babbitt*, 75 F.3d 449, 452 (9th Cir. 1995). And even an invalid government claim triggers the QTA limitations period. *Spirit Lake Tribe v. North Dakota*, 262 F.3d 732, 738 (8th Cir. 2001); s*ee Gov't of Guam v. United States*, 744 F.2d 699, 701 (9th Cir. 1984).

1    In addition to the notice in the 1948 Instrument itself, between 1948 and
2  1984, there were several additional notices of the Government's interest in the
3  Airport Property.  *See* Defs.' Mot. at 12-15.  Even if those notices did not resolve
4  all issues related to the title of the Airport Property, they provided notice to the
5  City of the Government's claim.  *See Yuba Goldfields*, 752 F.2d at 396
6  ("Constructive notice of recorded deeds may commence the running of the
7  limitations period."); *Hawaii v. United States*, 866 F.2d 313, 313 (9th Cir. 1989);
8  *Park Cnty. Mont. v. United States*, 626 F.2d 718, 721 n.6 (9th Cir. 1980).  And that
9  is all that is required under the QTA.

10    Plaintiff's contention that the 1952, 1956, and 1958 releases do not
11  constitute reasonable notice is without merit.  All three releases demonstrate that
12  the United States had an interest in the Airport Property, that the City recognized
13  this interest, and that the City also recognized that it had to obtain a written release
14  to be released from the conditions of the 1948 Instrument.  Plaintiff's transparent
15  attempt to invent a factual dispute in order to convert Defendants' motion to
16  dismiss to one for summary judgment should be rejected.  Indeed, such conversion
17  would make no sense; the QTA is jurisdictional, even if a material factual dispute
18  existed with regard to the effect of the notices, a Rule 12(b) motion would be
19  proper.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988) ("[W]hen
20  considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not
21  restricted to the face of the pleadings, but may review any evidence, such as
22  affidavits and testimony, to resolve factual disputes concerning the existence of
23  jurisdiction.")

24    Plaintiff's contentions with respect to the 1956 Release and the 1984
25  Releases are similarly without merit.  Those releases not only provided Plaintiff
26  with further notice of the United States' interest in the Airport Property pursuant to
27  the 1948 Instrument, but demonstrate that the City, by its conduct, acknowledged
28  this interest.  Plaintiff cannot cite -- and we have been unable to identify -- a single

case or other support for the contention that the United States must affirm all provisions in the 1948 Instrument each time it acts pursuant to that Instrument.

Finally, the City showed that it was on notice of the United States' interest in the Airport Property pursuant to the 1948 Instrument through the issuance of legal opinions by its own attorney in 1962 and by the California AG in 1975.  *See* Defs.' Mot. at 8-9, 13-14.  Although Plaintiff seeks to litigate the merits of the 1948 Instrument here, the crucial requirement under the QTA statute of limitations is reasonable notice of the United States' interest, not the ultimate merits of the claim of interest.  *See, Alaska v. Babbitt*, 75 F.3d at 452

The United States has not abandoned its interest in the Airport Property pursuant to a FAA letter dated April 23, 1971, on which the City relies.[1]  In the letter, the FAA notes that it views SMO as an important airport and seeks its continued operation.  Although the letter says that the Airport Property "is vulnerable to being ... used for non-airport purposes," this is not an abandonment.  The letter does not even discuss or identify the 1948 Instrument, and it is not directed to the City, albeit there is a "cc" to the Airport Director of the SMO.  Furthermore, by letter dated June 16, 1971, Arvin O. Basnight, FAA Western Regional Director, to Santa Monica Mayor Anthony Bituri, the FAA informed the City that the FAA had been advised that the City was considering alternative non-aeronautical purposes for the Airport Property and the FAA's position was that the property should be continued to be used as an airport because it was needed as part of the nationwide airport system and because there were many factors which the City needed to address, including the City's obligations under the 1984 Instrument.  *See*, Exhibit C.  Thus, even under Plaintiff's own tortured reading of the QTA statute of limitations notice requirements, the City was on notice in 1971 and the

---

[1] Attached is a copy of the April 23, 1971 letter found in FAA files.  *See* Exhibit B. Neither the second page of Plaintiff's version of Exhibit B nor the FAA copy of the 1971 letter attached as Exhibit B supports Plaintiff's argument.

QTA statute of limitations has expired.  Indeed, the City cannot meaningfully suggest that the FAA somehow abandoned its interest in a 1971 letter, when in 1975, the California Attorney General reviewed the 1948 Instrument as well as various other agreements to which the City was bound (MTD, Ex. C at 39 – 42) and issued an opinion that through the 1948 Instrument and other agreements, the City had "contracted away its rights to deal freely with the Airport property and its uses as an airport." *Id*. at 42.  Thus, the California Attorney General confirmed in 1975 that the United States had an interest in the Airport Property pursuant to the 1948 Instrument.  *Id*.

Further, while the 1984 Agreement did reference the 1948 Instrument, it did not constitute an abandonment.  Section 1 of the 1984 Agreement explains that the FAA and the City entered into an agreement to resolve a "series of disputes," but none of these disputes referred to the title to the property or releasing all the Airport Property from the conditions in the 1948 Instrument.  Plaintiff's contention notwithstanding, there is no requirement under the QTA notice requirements that the 1984 Agreement reiterate or address the 1948 Instrument.  The 1984 Agreement, just as an award of federal funding for improvements to SMO, represent an independent and separate agreement and obligation.  Similarly, subsequent references to the continued operation of SMO pursuant to the 1984 Agreement do not constitute an abandonment, as there is no express statement regarding the 1948 Instrument in these subsequent statements by the FAA.

Finally, Plaintiff argues that the Court cannot resolve the jurisdictional prerequisite of the QTA without litigating the merits of the 1948 Instrument.  The Supreme Court has established otherwise. *See Block v. North Dakota ex rel. Board of Univ. and School Lands*, 461 U.S. 273, 275- 76, 103 S. Ct. 1811, 75 L.Ed.2d 840 (1983)  (QTA claim precluded the suit because it was time barred by the QTA's twelve-year statute of limitations); *Gardner v. Stager*, 103 F.3d 886, 888 (9th Cir. 1996)), *rev'd on other grounds, Fadem v. United States*, 52 F.3d 202 (9th

Cir. 1995). The running of the twelve-year limitations period deprives the federal courts of jurisdiction to inquire into the merits of an action brought under the QTA. *Skranak v. Castenada*, 425 F.3d 1213, 1216 (9th Cir. 2005); *see also Spirit Lake Tribe*, 262 F.3d 732, 737-38; *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 769 (4th Cir. 1991).

**II.     There Is No Jurisdiction Over The Takings Claims.**

Plaintiff argues that this Court has jurisdiction over its takings claim because "the City seeks only equitable relief," not "monetary compensation[.]" Pl.'s Opp'n at 21. The Ninth Circuit has rejected this argument several times. *See, e.g., Bay View Inc. v. ATHTNA, Inc.*, 105 F.3d 1281, 1285n.6 (9th Cir. 1997) ("neither injunctive nor declaratory relief is available for a takings claim against the United States."); *In re Nat'l Sec. Agency Telecomm'n Records Litig.*, 669 F.3d 928 (9th Cir. 2011). The Takings Clause only prohibits a taking "without just compensation." *Id*. at 932. Accordingly, "'[e]quitable relief is not available to enjoin an alleged taking … when a suit for compensation can be brought … subsequent to the taking.'" *Id*. (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984)). The Tucker Act provides a mechanism for pursuing such suit, so it impedes equitable relief in district court. *Id*. (citing *Bay View*, 105 F.3d at 1285). Here, because the City has "failed to seek just compensation from the Court of Federal Claims," there is no jurisdiction. *Id*. *See Mead v. City of Cotati*, No. C 08-3585 CW, 2008 WL 4963048, at *4 (N.D. Cal. Nov. 19, 2008) (takings "claim for declaratory judgment is not ripe for review because a taking is not unconstitutional unless it is uncompensated, and he has not yet sought compensation.").

Petitioner's reliance on *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) is misplaced.[2] In *Apfel*, the Supreme Court stated that "the availability of a Tucker

---

[2] The passage from *Apfel* Plaintiff relies on is "the opinion of four justices only, and thus is not binding on the lower courts." *Mead*, 2008 WL 4963048, at *6.

1  Act remedy renders premature any takings claim in federal district court." *Id*. at
2  521.  Only when "monetary relief against the Government is [not] an available
3  remedy" can a district court entertain a claim for equitable relief under the Takings
4  Clause.  *Id*.  The Supreme Court explicitly suggested that a monetary relief is
5  available when the challenged government action allegedly "burden[s] real or
6  physical property[.]"  *Id*.  Because this suit involves real property, there is no merit
7  to the City's allegation that it "cannot be justly compensated in monetary terms[.]"
8  Pl.'s Opp'n at 21.  *See also Mead*, 2008 WL 4963048, at *6 (dismissing takings
9  claim for declaratory relief because "any taking of Plaintiff's [real] property could
10 be compensated by a monetary payment, and … Plaintiff could bring a claim for
11 such compensation under the Tucker Act.").

### III.     The Constitutional Claims Are Not Ripe.

Relying on *Aydin Corporation v. Union of India*, 940 F.2d 527 (9th Cir. 1991), the City argues that its constitutional claims are ripe.  But *Aydin* shows why the City's claims are not ripe.  In that case, the plaintiff sought a declaration that a foreign arbitral award that was "yet to be awarded" could be enforced in the United States.  *Id.* at 528.  The Ninth Circuit held that the case was not ripe because "[t]he future existence and enforcement in the United States of an Indian award against [plaintiff] is speculative."  *Id*.  The same logic applies here.  The City seeks to prevent the United States from taking title or possession of the Airport Property in the event the City discontinues using it as an airport.  Under the 1948 Instrument of Transfer, only if the City does not use the Airport Property as an airport can the United States exercise an option to take title or possession of the land within 60 days.  But the City has not stopped using the Airport Property as an airport, and it is speculative that it will do so.  It is also speculative that the United States will exercise its option, in the event the City does so.  Thus, this action is not ripe.[3]

---

[3] Plaintiff's reliance on *Free Enterprise Fund v. Public Company Accounting Oversight Bd*., 130 S.Ct. 3138 (2010) is misguided.  Defendants are not asking

The ripeness doctrine "protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)). Here, the FAA has not taken a formal decision to exercise its option under the 1948 Instrument of Transfer, given that the City continues to run the airport. The City has also not decided not to use the Airport Property as an airport. If it does so, pursuant to the 1948 Instrument, the City can petition the FAA to seek the relief it seeks here. *See* Defs.'s Mot. at 15 (citing Compl. Exh. C at 6, ¶ 6; 49 U.S.C. § 47153). Requiring the City to go through that prescribed administrative process to obtain relief may "significantly advance [the Court's] ability to deal with the legal issues" when they are ripe. *Id*. at 812. Under these circumstances, the issues are not fit for judicial review nor has the City suffered severe hardship. *Id*. at 810-12.

**IV.    The City Has Failed To State Constitutional Claims.**

    **1. The City Fails To State A "Regulatory" Takings Claim**

The City argues that it has stated a takings claim because it only seeks equitable relief and the alleged taking cannot be compensated through monetary damages. Pl.'s Opp'n at 24. This claim is implausible on its face. "[N]either injunctive nor declaratory relief is available for a takings claim against the United States." *Bay View*, 105 F.3d at 1285 n.6. And because this suit concerns real property, the City can be compensated under the Tucker Act. *See Mead*, 2008 WL

---

Plaintiff to incur a sanction, as the government was asking the plaintiffs in Free Enterprise Fund to do, before seeking relief. For one thing, a government decision to exercise an option to take title to the airport would not be a sanction for wrongdoing; it would be a result of a City decision – a result to which Santa Monica agreed in 1948 if it later made such a decision. Further, if Santa Monica makes such a decision, and if the United States exercises its option, the City might then have a ripe claim.

4963048, at *6.  Thus, the City has failed to state a Takings claims.  *See* Defs.' Mot. at 18-19.

### 2. The City Fails To State A Tenth Amendment Claim

The City alleges that the FAA has violated the Tenth Amendment in commandeering the City to run the airport in perpetuity.  Compl. ¶ 117.  This claim fails as a matter of law.  The Tenth Amendment prohibits Congress from "simply 'commandee[ring] the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program.'"  *New York v. United States*, 505 U.S. 144, 161 (1992) (quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 288 (1981)).  Neither Congress nor the FAA has commandeered the City to do anything.  It was the City that requested the Government to enter into a transfer agreement under the Surplus Property Act "subject to such conditions as the Administrator may desire to impose" under applicable regulations.  Defs.' Mot. at 4-5.  The agreement the City voluntarily entered into gives the FAA an option to take title or possession of the land if the City does not run it as an airport.  But the City is not required to run the property as an airport in perpetuity.  If it wants to stop running it as an airport without risking losing title, it can petition the FAA in writing.  *See id*. at 15.  Because the Government did not compel the City to enter into this agreement, the City has no Tenth Amendment Claim.  *See California v. U.S.*, 104 F.3d 1086, 1092 (9th Cir. 1997) (no claim under Tenth Amendment because State voluntarily agreed to federal program).

### 3. The City Fails To State A Due Process Claim

The City has also failed to state a Due Process claim because it has not been deprived of property without due process of law.  The City continues to run the property as an airport, so the option for the Government to take title or possession has not emerged.  The mere existence of the 1948 Instrument of Transfer giving

1  the Government an option to take title if certain conditions are met is insufficient
2  to allege a due process violation because the Government has not taken any action
3  to enforce the 1948 Instrument against Plaintiff.  *See Action Apartment Ass'n, Inc.*
4  *v. Santa Monica Rent*, 509 F.3d 1020, 1027-28 (9th Cir. 2007) (no due process
5  violation because the government had not enforced eviction requirements against
6  plaintiff).   In any event, Plaintiff does not allege that the 1948 Instrument serves
7  no legitimate governmental objective, and it cannot be arbitrary or irrational
8  because the City voluntarily agreed to its conditions more than half a century ago.
9  *Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 542, 161 L.Ed.2d 876, 125 S. Ct.
10 2074 (2005).

# CONCLUSION

For the foregoing reasons, the Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

DATED January 27, 2014

Respectfully Submitted,

OF COUNSEL:

KATHRYN B. THOMSON
Acting General Counsel
PAUL M. GEIER
Assistant General Counsel for Litigation
PETER J. PLOCKI
Deputy Assistant General Counsel for Litigation
TIMOTHY H. GOODMAN
Senior Trial Attorney
United States Department of Transportation

MARC WARREN
Acting Chief Counsel
DAPHNE FULLER
Assistant Chief Counsel
JONATHAN CROSS
Manager, Airport Law Branch
SCOTT MITCHELL
Attorney-Advisor

Federal Aviation Administration

STUART F. DELERY
Assistant Attorney General
Civil Division

ANDRE BIROTTE JR.
United States Attorney

JUDRY SUBAR
Assistant Director,
Federal Programs Branch

  /s/ Raphael O. Gomez
HECTOR G. BLADUELL
Trial Attorney
RAPHAEL O. GOMEZ
(D.C. Bar #305540)
Senior Trial Counsel
Federal Programs Branch
U.S. Department of Justice, Civil Division
Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-1318
Facsimile: (202) 616-8460
raphael.gomez@usdoj.gov

Attorneys for Defendants