BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
Civil Division
EILEEN M. DECKER
United States Attorney
JUDRY SUBAR
Assistant Director
Federal Programs Branch
RAPHAEL O. GOMEZ
(D.C. Bar #305540)
Senior Trial Counsel
Civil Division, Federal Programs Branch
GARY D. FELDON
(D.C. Bar #987142)
Trial Attorney
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20530
Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470
Gary.D.Feldon@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CITY OF SANTA MONICA, | ) | Case CV 13-08046 JFW (VBKx) |
| | ) | |
| Plaintiff, | ) | Honorable John F. Walter |
| | ) | |
| v. | ) | Next Event: Scheduling Conference |
| | ) | August 22, 2016 |
| UNITED STATES OF | ) | 8:30 a.m. |
| AMERICA, *et al.*, | ) | |
| | ) | ANSWER |
| Defendants. | ) | |

Defendants United States of America ("United States"), the Federal Aviation Administration ("FAA"), and Michael P. Huerta (collectively, "Defendants" or "United States") hereby answer the Complaint for Declaratory and Injunctive Relief under the Quiet Title Act and United States Constitution (ECF No. 1) ("Complaint") filed by the City of Santa Monica ("Plaintiff" or "Santa Monica") as follows, in correspondingly numbered paragraphs.  To the extent any allegation is not specifically admitted, it is denied.

The unnumbered opening paragraph of the Complaint merely characterizes the action.  Therefore, no response is required.

## NATURE OF THE ACTION

1.    Defendants admit that in the 1920s Santa Monica purchased much of the property upon which the Sana Monica Municipal Airport is located (the "Airport Property").  Defendants also admit that, due to the proximity of the Douglas Aircraft Company, the United States leased the Airport Property from Santa Monica in 1941 to assist in the war effort.  Finally, Defendants admit that the United States and Santa Monica entered into an Instrument of Transfer in 1948.  The remainder of this paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

2.    Defendants admit that Santa Monica has repeatedly asserted that it is not obligated to operate the Santa Monica Municipal Airport in perpetuity.  Defendants deny that their contrary position is either arbitrary or unsupported.  The remainder of this paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

3.    This paragraph merely characterizes the action.  Therefore, no response is required.  To the extent a response is required, Defendants deny the allegations.

4.   This paragraph merely characterizes the action.  Therefore, no response is required.  To the extent a response is required, Defendants deny the allegations.

5.   This paragraph merely characterizes the action.  Therefore, no response is required.  To the extent a response is required, Defendants deny the allegations.

## JURISDICTION AND VENUE

6.   This paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

7.   This paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

8.   This paragraph is a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

## PARTIES

### Plaintiff

9.   Defendants admit that Santa Monica operates the Santa Monica Municipal Airport, most of which is contained within Santa Monica's political boundaries.  The remainder of this paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

### Defendants

10. Admitted.

11. Admitted.

12. Defendants admit that Michael P. Huerta is the Administrator of the FAA.  The remained of this paragraph is comprised of legal conclusions to

which no response is required.  To the extent a response is required, Defendants deny the allegations.

13. This paragraph merely characterizes relief sought in this action. Therefore, no response is required.  To the extent a response is required, Defendants deny the allegations.

## FACTUAL BACKGROUND

### The City's Acquisition of the Airport Property[1]

14. Admitted.

15. Defendants lack sufficient information to admit or deny the modern equivalent of the purchase price of the Airport Property.  Therefore, this allegation shall be treated as denied.  Further, Defendants need not respond to allegations concerning the terms of the grant deeds by which Santa Monica obtained the Airport Property because those documents speak for themselves. The remainder of this paragraph is admitted.

16. Defendants lack sufficient information to admit or deny this paragraph.  Therefore, the allegations in this paragraph shall be treated as denied.

17. Defendants lack sufficient information to admit or deny this paragraph.  Therefore, the allegations in this paragraph shall be treated as denied.

### United States' Lease of the Airport Property

18. Defendants admit that President Franklin D. Roosevelt issued Presidential Proclamation 2487 on May 27, 1941.  Defendants need not respond to the remaining allegations of this paragraph concerning the contents of the

---

[1]  Defendants use the headings from Plaintiff's Complaint for convenience and clarity only.  To the extent these headings are intended as allegations, Defendants deny those allegations.

proclamation because that document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

19. Admitted.

20. Defendants lack sufficient information to admit or deny that Figure 1 in this paragraph is a true and accurate depiction of the X-configured runway at the Santa Monica Municipal Airport at any time.  Therefore, the allegation that Figure 1 is as represented shall be treated as denied.  Defendants need not respond to the remainder of this paragraph because it merely describes the terms of Lease No. W-04-193-ENG.4894 and that document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

21. Defendants need not respond to this paragraph because it merely describes the terms of Lease No. W3460-ENG.549.  To the extent a response is required, Defendants deny the allegations.

22. Defendants admit that the Santa Monica City Council passed Resolution No. 3536 in 1944.  Defendants lacks sufficient information to admit or deny the representations contained in Resolution No. 3536, so those representations shall be treated as denied.  Defendant need not respond to the remainder of this paragraph because it merely describes the contents of that resolution.  To the extent a response is required, Defendants deny the allegations.

23. Defendants admit that Supplement Number 1 modified the Runway and Golf Course Leases in 1944 and 1945, respectively.  Defendants lack sufficient information to admit or deny how payments to Santa Monica were used.  Therefore, the allegation that those payments were reinvested in the Airport Property shall be treated as denied.  Defendants also lack sufficient information to admit or deny that Figure 2 in this paragraph is a true and accurate depiction of the runway at Santa Monica Municipal Airport circa 1952.  Therefore, the allegation that Figure 2 is as represented shall be treated as

denied.  Defendants need not respond to the remainder of this paragraph because it merely describes the contents of that supplement.  To the extent a response is required, Defendants deny the allegations.

24. Defendants admit that, between 1944 and 1946, the United States condemned a number of residential properties on the west side of the Airport Property totaling approximately 20 acres.  Defendants deny that the United States purchased the property using only Santa Monica's funds for the purpose of expanding the Airport Property.

25. Defendants lack sufficient information to admit or deny this paragraph.  Therefore, the allegation shall be treated as denied.

26. Defendants lack sufficient information to admit or deny that Figure 3 is an aerial view of the modern airport, including all acquired parcels, with overlays of the Runway Lease and Golf Course Lease.  Therefore, the allegation that Figure 3 is as represented shall be treated as denied.

27. Defendants admit that the United States paid only nominal rent to Santa Monica but note that the United States also provided Santa Monica with substantial improvements to the Airport Property.  Defendants lack sufficient information to admit or deny that Santa Monica made investments in the Airport Property from 1941 to 1945, that those investments were significant, or that the purpose in doings so was to support the war effort and protect Douglas Aircraft Company employees.  Therefore, those allegations shall be treated as denied.

28. Defendants admit that the decreased need to protected Douglas Aircraft Company was one reason the United States decided that a federal presence at the Airport Property was no longer necessary after World War II. Defendants further admit that the United States and Santa Monica modified both the Runway and Golf Course Leases through a Supplement Number 2 to each lease.  Finally, Defendants admit that, since 1946, Santa Monica, not the United States, has continuously maintained and operated the Santa Monica Municipal

Airport.  The remainder of this paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

29. This paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

### The United States Surrenders Its Leasehold

30. Defendants admit that, on July 29, 1946, the War Assets Administration issued Form SPB-5 *Declaration of Surplus Real Property* concerning the Airport Property.  Defendants further admit that, prior to August 1948, the Administration decided to transfer certain property interests regarding the Airport Property to Santa Monica pursuant to the Surplus Property Act.  Defendants lack sufficient information to admit or deny that the decision regarding its property interests had been finalized by April of 1948.  Therefore, that allegation shall be treated as denied.  The remainder of this paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

31. Defendants admit that, in 1948, the United States entered into an Instrument of Transfer with Santa Monica regarding the Airport Property.  The remainder of this paragraph merely characterizes that Instrument.  No response is required to the characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

32. This paragraph merely characterizes the 1948 Instrument of Transfer.  No response is required to the characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

33. Defendants admit that the Santa Monica City Council passed Resolution No. 183.  To the extent the use of "confirmed" is intended to imply that Santa Monica had the authority to establish the intent or terms of the

instruments of transfer, that allegation is denied.  The remainder of this paragraph merely characterizes that resolution and the 1948 Instrument of Transfer.  No response is required to those characterizations because the documents speak for themselves.  To the extent a response is required, Defendants deny the allegations.

34. To the extent that "[t]he City Council never agreed to . . . forfeit[] its police powers over the Airport Property for all time" is intended to mean that Santa Monica never agreed to grant the United States a perpetual right of reversion in the Airport Property, that allegation is denied.  Defendants lack sufficient information to admit or deny that the City Council never considered such an agreement.  Therefore, this allegation shall be treated as denied.  The remainder of this paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

35. Defendants admit that the United States executed a quitclaim deed in 1949 concerning 20 acres of land.  The remainder of this paragraph is comprised of legal conclusions and characterizations of the Instrument of Transfer to which no response is required.  To the extent a response is required, Defendants deny the allegations.

36. Defendants admit that, on April 28, 1952, President Truman terminated Proclamation 2487.  The remainder of this paragraph is comprised of characterizations of that Proclamation, to which no response is required because the document speaks for itself, and legal conclusions regarding the effect of the Proclamation, to which no response is required.  To the extent a response is required, Defendants deny the allegations.

**The Pure Jets Nuisance**

37. Defendants admit that civilian jets began using the Santa Monica Municipal Airport in the 1960s.  Defendants lack sufficient information to admit

or deny the remaining allegations in this paragraph.  Therefore, those allegations shall be treated as denied.

38. Defendants admit that Santa Monica residents filed a lawsuit against Santa Monica in 1967 based upon the operation of the Santa Monica Municipal Airport.  Defendants further admit that Santa Monica enacted municipal legislation limiting the hours of aircraft operation.  Defendants lack sufficient information to admit or deny that Santa Monica considered a wide range of regulations to shield itself from liability.  Therefore, that allegation shall be treated as denied.  The remainder of this paragraph is comprised of characterizations of the lawsuit, the California Supreme Court's holding as to that lawsuit, and Santa Monica's regulation of jet traffic.  Defendants need not respond to those characterizations because the record of the litigation speaks for itself.  To the extent a response is required, Defendants deny the allegations.

**The City's Plan for Airport Closure and the 1984 Settlement Agreement**

39. Defendants admit that there was a growth in general aviation nationwide in the late 1960s.  Defendants lack sufficient information to admit or deny the remaining allegations in this paragraph.  Therefore, those allegations shall be treated as denied.

40. Defendants admit that, in the late 1960s and early 1970s, aviation associations expressed concern regarding the possible closure of the Santa Monica Municipal Airport.  Defendants further admit that, in April 1971, the FAA sent a letter to Max Karant.  The remainder of this paragraph is comprised of mere characterizations of that letter.  Defendants need not respond to those characterizations because the letter speaks for itself.  To the extent a response is required, Defendants deny the allegations.

41. Defendants admit that Santa Monica adopted ordinances governing the operation of the Santa Monica Municipal Airport in 1975.  Defendants need not respond to the characterizations of those ordinances in this paragraph

because the ordinances speak for themselves.  To the extent a response is required, Defendants deny the allegations.

42. Defendants admit that the Santa Monica Airport Association filed a lawsuit against Santa Monica that concerned ordinances enacted in 1975. Defendants further admit that the FAA filed a brief as *amicus curiae* for the Association.  The remainder of this paragraph merely recounts the rulings on the Association's lawsuit.  Defendants need not respond to that recounting because the rulings speak for themselves.  To the extent a response is required, Defendants deny the allegations.

43. Defendants admit that the Santa Monica City Council enacted Ordinance No. 1137 in 1979.  Defendants need not respond to the remainder of this paragraph because the ordinance speaks for itself.  To the extent a response is required, Defendants deny the allegations.

44. Defendants admit that the National Business Aircraft Association filed litigation against Santa Monica concerning Ordinance No. 1137, that the litigation was before the same judge who heard the litigation referenced in Paragraph 42, and that the FAA again filed a brief as an *amicus curiae*.  The remainder of the allegations in this paragraph merely characterizes the pleadings and outcome of the litigation.  Defendants need not respond to those characterizations because the documents speak for themselves.  To the extent a response is required, Defendants deny the allegations.

45. Defendants admit that Santa Monica adopted Resolution No. 6296 in 1981.  Defendants further admit that the parties to the litigation referenced in Paragraph 44 reached an agreement by which the case would be conditionally dismissed.  The remainder of this paragraph merely characterizes the resolution and the agreement.  Defendants need not respond to those characterizations because the resolution and agreement speak for themselves.  To the extent a response is required, Defendants deny the allegations.

46. Defendants admit that Santa Monica adopted a Master Plan for the Airport Property in 1983.  Defendants further admit that the litigation referenced in Paragraph 44 was ultimately dismissed.  The remainder of this paragraph merely characterizes the Master Plan.  Defendants need not respond to that characterization because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

47. Defendants admit that there were Part 13 proceedings filed by users of the Santa Monica Municipal Airport after the dismissal of the litigation referenced in Paragraph 44.  Defendants further admit that Santa Monica and the FAA had discussions to attempt to resolve the future use of the Airport Property.  Defendants lack sufficient information to admit or deny that the Part 13 proceedings were prompted by the adoption of Resolution No. 6296, the creation of the Master Plan, or the dismissal of the litigation referenced in Paragraph 44.  Therefore, those allegations shall be treated as denied.

48. Defendants admit that Santa Monica and the FAA signed a settlement agreement in 1984.  The remainder of this paragraph merely characterizes that agreement.  Defendants need not respond to those characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

49. This paragraph merely characterizes the 1984 settlement agreement.  Defendants need not respond to those characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

50. Defendants admit that Santa Monica accepted federal grant money for airfield improvements in 1994.  Defendants deny that 1994 was the last time Santa Monica accepted federal grant money.  In 2003, the FAA granted Santa Monica's application to amend the 1994 Grant Agreement to provide funds to cover additional costs of the projects contemplated by the Agreement.

Defendant need not respond to the characterization of the terms of that grant because the document speaks for itself.  The remainder of this paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

51. Defendants admit that the FAA has consistently maintained its position that Santa Monica has a degree of control over the use of the Airport Property, subject to the limitations imposed by law, regulations, and pertinent agreements.  Defendants deny that the FAA has ever recognized an unlimited right for Santa Monica to use the Airport Property in any manner it sees fit, such as using it for non-airport purposes.

52. Defendants admit that the FAA issued a director's determination in 1998 in connection with a Part 16 proceeding regarding long term airport leases.  The remainder of this paragraph merely characterizes that determination.  Defendants need not respond to those characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.  Further, Defendants specifically deny that the director's determination addressed Santa Monica's obligations under the instruments of transfer at issue in this case.

53. Defendants admit that the FAA issued a final agency decision in 2003 upon appeal of the director's determination referenced in Paragraph 52.  The statement in this paragraph that the decision constitutes a final agency action under federal regulations is a legal conclusion to which no response is required.  The remainder of this paragraph merely characterizes that decision.  Defendants need not respond to those characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

**Litigation Regarding the City's Aircraft Conformance Program**

54. Defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph.  Therefore, the allegations shall be treated as denied.  Further,

this paragraph contains a characterization of a study commissioned by Santa Monica.  Defendants need not respond to that characterization because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

55. Defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph.  Therefore, the allegations shall be treated as denied.  Further, this paragraph contains a characterization of a study commissioned by Santa Monica.  Defendants need not respond to that characterization because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

56. Defendants admit that, on December 10, 2002, the Santa Monica City Council unanimously approved in principle a proposal described as an Aircraft Conformance Program.  Defendants further admit that the FAA and Santa Monica did not reach an agreement concerning the implementation of that program.  Defendants deny that this was the result of "[t]he FAA refus[ing] the City's efforts to reach a voluntary agreement."  Defendant lacks sufficient information to admit or deny the remaining allegations in this paragraph. Therefore, these allegations shall be treated as denied.

57. Defendants admit that Santa Monica promulgated an ordinance in 2008 concerning the use of the Santa Monica Municipal Airport.  The remainder of this paragraph merely characterizes that ordinance.  Defendants need not respond to those characterizations because the ordinance speaks for itself.  To the extent a response is required, Defendants deny the allegations.

58. Defendants admit that the FAA issued an order to show cause to Santa Monica on March 26, 2008.  Defendant denies that the order was the first time that it maintained that the Surplus Property Act of 1944 and the 1948 Instrument of Transfer created a perpetual obligation to operate the Airport Property as an airport.  The remainder of this paragraph merely characterizes the order to show

cause.  Defendants need not respond to those characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

59. Defendants admit that the FAA issued a cease and desist order to Santa Monica in April 2008.  Defendants further admit that the FAA obtained a temporary restraining order and preliminary injunction affecting the enforcement of the ordinance referenced in Paragraph 57.  The remainder of this paragraph merely characterizes the temporary restraining order and preliminary injunction.  Defendants need not respond to those characterizations of the cease and desist order, motion for a temporary restraining order, and/or motion for a preliminary injunction because the documents speak for themselves.  To the extent a response is required, Defendants deny the allegations.

60. Defendants admit that Santa Monica and the FAA engaged in the FAA administrative review process concerning the ordinance referenced in Paragraph 57.  Defendant further admits that the administrative review process resulted in a director's determination.  The remainder of this paragraph merely characterizes the administrative review process and the director's determination.  Defendants need not respond to those characterizations because the documents speak for themselves.  To the extent a response is required, Defendants deny the allegations.

61. Defendants admit that Santa Monica requested a hearing on the director's determination referenced in Paragraph 60.  Defendants further admit that Santa Monica's request resulted in a four-day hearing before a FAA hearing officer in March 2009.  Finally, Defendants admit that both Santa Monica and the FAA appealed the hearing officer's initial determination to the FAA Administrator.  The remainder of this paragraph merely characterizes the hearing officer's decision.  Defendants need not respond to those characterizations

because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

62. Defendants admit that, on July 8, 2009, the FAA issued a final agency decision in connection with the director's determination referenced in Paragraph 60.  The remainder of this paragraph merely characterizes that final agency decision.  Defendants need not respond to those characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

63. Defendants admit that in September 2009 Santa Monica appealed the final agency decision referenced in Paragraph 62 to the D.C. Circuit.  The remainder of this paragraph merely characterizes the D.C. Circuit's decision in that appeal.  Defendants need not respond to that characterization because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

64. This paragraph merely characterizes the D.C. Circuit's decision referenced in Paragraph 63.  Defendants need not respond to those characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

**The City Evaluates the Future of the Santa Monica Airport**

65. Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  Therefore, these allegations shall be treated as denied.

66. Defendant lacks sufficient information to admit or deny the allegations in this paragraph.  Therefore, these allegations shall be treated as denied.  Further, this paragraph contains characterizations of the content of the report referenced in Paragraph 65.  Defendants need not respond to those characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

67. Defendants admit that Santa Monica employees met with FAA representatives between 2010 and 2013 regarding the future of the Santa Monica Municipal Airport.  Defendants further admit that no agreement on the Airport's future operations was reached.  Finally, Defendants admit that the FAA maintained during those meetings that Santa Monica has a perpetual obligation to operate the Airport Property as an airport or be subject to reversion for failure to do so.  Defendants deny that FAA representatives were unwilling to negotiate a compromise regarding the future of the Santa Monica Municipal Airport. Defendants lack sufficient information to admit or deny that Santa Monica was motivated to meet with the FAA by a desire to avoid litigation.  Therefore, this allegation shall be treated as denied.

**FAA Guidance Concerning Reversionary Interests**

68. This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

69. Defendants admit that the FAA has published a document titled "FAA Airport Compliance Manual," FAA Order 5190.6B.  The remainder of this paragraph merely characterizes that document.  Defendants need not respond to those characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

70. This paragraph merely characterizes the FAA Airport Compliance Manual.  Defendants need not respond to those characterizations because the document speaks for itself.  To the extent a response is required, Defendants deny the allegations.

71. The first clause of the only sentence of this paragraph merely characterizes the FAA Airport Compliance Manual.  Defendants need not respond to that characterization because the document speaks for itself.  The second clause of the only sentence in this paragraph states a legal conclusion to

which no response is required.  To the extent a response is required, Defendants deny the allegations.

72. This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

73. This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

## FIRST CLAIM FOR RELIEF

### (Quiet Title Action under 28 U.S.C. § 2409a)

74. Defendants incorporate by reference the responses set forth in paragraphs 14 to 73.

75. This paragraph merely characterizes this action.  Therefore, no response is required.  To the extent a response is required, Defendants deny the allegations.

76. This paragraph merely characterizes this action.  Therefore, no response is required.  To the extent a response is required, Defendants deny the allegations.

77. This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

78. This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

79. This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

80. This paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

81. If this paragraph is intended to mean that the United States has never challenged Santa Monica's unfettered interest in the Airport Property, that allegation is denied.  Otherwise, this paragraph states a legal conclusion to

which no response is required.  To the extent a response is required, Defendants deny the allegations.

82. Defendants admit that the United States asserts that the instruments by which possession of the Airport Property was transferred to Santa Monica created a property interest that allows for reversion in perpetuity if Santa Monica ceases to use the Airport Property as an airport.  The remainder of this paragraph is comprised of a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

83. Denied.

84. This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

85. This paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

86. This paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

87. This paragraph is comprised of legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations.

88. This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

89. This paragraph merely characterizes relief sought in this action. Therefore, no response is required.  To the extent a response is required, Defendants deny the allegations.

## SECOND CLAIM FOR RELIEF

**(For Violation of the Fifth Amendment to the U.S. Constitution-Taking)**

90. Defendants incorporate by reference the responses set forth in paragraphs 14 to 73.

91. This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

92. This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

93. This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

94. Defendants admit that Santa Monica in 1926 purchased property interests in much of the land comprising the Airport Property. The nature of those property interests is a legal conclusion to which no requires is required. To the extent a response is required, Defendants deny the allegations.

95. Defendants admit that Santa Monica leased most of the Airport Property to the United States to aid in the war effort during World War II. Defendant need not respond regarding the terms of the lease because the document speaks for itself. To the extent a response is required, Defendants deny the allegations.

96. This paragraph states legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations. However, Defendants explicitly deny that the United States never owned any portion of the Airport Property.

97. Defendants admit that the FAA has asserted that the United States has a perpetual right of reversion if Santa Monica ceases to use the Airport Property as an airport. The remainder of this paragraph is comprised of legal conclusions to which not response is required. To the extent a response is required, Defendants deny the allegations.

98. This paragraph states legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations.

99. This paragraph states legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations.

100. This paragraph states legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations.

101. This paragraph states legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations.

102. This paragraph states legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations.

103. This paragraph states legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations.

104. This paragraph merely characterizes the relief sought in this action. Therefore, no response is required. To the extent a response is required, Defendants deny the allegations.

### THIRD CLAIM FOR RELIEF

**(For Violation of the Fifth Amendment to the U.S. Constitution-**
**Regulatory Taking)**

105. Defendants incorporate by reference the responses set forth in paragraphs 14 to 73.

106. This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

107. This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

108.     This paragraph states legal conclusions to which no responses are required.  To the extent a response is required, Defendants deny the allegations.

109.     This paragraph states legal conclusions to which no responses are required.  To the extent a response is required, Defendants deny the allegations.

110.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

111.     This paragraph states legal conclusions to which no responses are required.  To the extent a response is required, Defendants deny the allegations.

112.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

113.     This paragraph merely characterizes the relief sought in this action.  Therefore, no response is required. To the extent a response is required, Defendants deny the allegations.

## FOURTH CLAIM FOR RELIEF

### (For Violation of the Tenth Amendment to the U.S. Constitution)

114.     Defendants incorporate by reference the responses set forth in paragraphs 14 to 73.

115.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

116.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

117.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

118.     Defendants admit that Santa Monica in 1926 purchased property interests in much of the land comprising the Airport Property.  The

nature of those property interests is a legal conclusion to which no requires is required. To the extent a response is required, Defendants deny the allegations.

119.    This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

120.    This paragraph states legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations.

121.    Defendants admit that the United States has asserted a perpetual interest in the Airport Property whereby the United States has the option to claim the Airport Property in fee simple if it ever ceases to be used as an airport. The remainder of this paragraph is comprised of legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations.

122.    This paragraph states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations.

123.    Defendants need not respond to the recitation of the contents of the Airport Compliance Manual because that document speaks for itself. The remainder of this paragraph states legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations.

124.    This paragraph states legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations.

125.    This paragraph states legal conclusions to which no responses are required. To the extent a response is required, Defendants deny the allegations.

126.    This paragraph merely characterizes the relief sought in this action. Therefore, no response is required. To the extent a response is required, Defendants deny the allegations.

## FIFTH CLAIM FOR RELIEF

**(For Violation of the Fifth Amendment to the U.S. Constitution-Due Process)**

127.     Defendants incorporate by reference the responses set forth in paragraphs 14 to 73.

128.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

129.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

130.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

131.     Defendants need not respond to the recitation of the contents of the Airport Compliance Manual because that document speaks for itself.  The remainder of this paragraph states legal conclusions to which no responses are required.  To the extent a response is required, Defendants deny the allegations.

132.     Denied.

133.     Defendants deny that the FAA acted with the intent to coerce or act unconstitutionally.  The remainder of this paragraph states legal conclusions to which no responses are required.  To the extent a response is required, Defendants deny the allegations.

134.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

135.     This paragraph states a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations.

136.     This paragraph merely characterizes the relief sought in this action.  Therefore, no response is required.  To the extent a response is required, Defendants deny the allegations.

## **PRAYER FOR RELIEF**

1.      This paragraph contains only Plaintiff's prayer for relief, to which no response is required.  To the extent a response is required, Defendants deny the allegations.

2.      This paragraph contains only Plaintiff's prayer for relief, to which no response is required.  To the extent a response is required, Defendants deny the allegations.

3.      This paragraph contains only Plaintiff's prayer for relief, to which no response is required.  To the extent a response is required, Defendants deny the allegations.

4.      This paragraph contains only Plaintiff's prayer for relief, to which no response is required.  To the extent a response is required, Defendants deny the allegations.

5.      This paragraph contains only Plaintiff's prayer for relief, to which no response is required.  To the extent a response is required, Defendants deny the allegations.

6.      This paragraph contains only Plaintiff's prayer for relief, to which no response is required.  To the extent a response is required, Defendants deny the allegations.

7.      This paragraph contains only Plaintiff's prayer for relief, to which no response is required.  To the extent a response is required, Defendants deny the allegations.

8.      This paragraph contains only Plaintiff's prayer for relief, to which no response is required.  To the extent a response is required, Defendants deny the allegations.

9.      This paragraph contains only Plaintiff's prayer for relief, to which no response is required.  To the extent a response is required, Defendants deny the allegations.

10. This paragraph contains only Plaintiff's prayer for relief, to which no response is required. To the extent a response is required, Defendants deny the allegations.

11. This paragraph contains only Plaintiff's prayer for relief, to which no response is required. To the extent a response is required, Defendants deny the allegations.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE
### (Statute of Limitations)

1.      Defendants incorporate by reference all averments set forth in paragraphs 1 through 136 of this answer.

2.      On August 10, 1948, the United States entered into an instrument of transfer with Santa Monica pursuant to the Surplus Property Act of 1944, 58 Stat. 765, 660 (codified at 49 U.S.C. § 47151 *et seq.*), which transferred certain of the United States' property interests in a portion of the Airport Property to Santa Monica along with various improvements constructed and funded by the United States, including an approximately 5,000 foot runway.

3.      The 1948 Instrument of Transfer contains a reversion clause under which the United States could retake the property subject to the Instrument if Santa Monica ceased to use it for airport purposes.

4.      During the negotiation of the 1948 Instrument of Transfer, the United States put Santa Monica on notice that the reversion clause referenced in Paragraph 3 was a perpetual interest.  In the alternative, the United States' statements and conduct during the negotiation were sufficient to put a reasonable party on notice that the reversion clause referenced in Paragraph 3 was a perpetual interest.

5.      The plain language of the 1948 Instrument of Transfer, along with the Surplus Property Act under the authority of which the Instrument was drafted, reflects the parties' mutual understanding that the reversion clause referenced in Paragraph 3 is a perpetual interest.  Even if Santa Monica did not understand that the reversion clause was a perpetual interest before seeing the final language of the clause, the language of the reversion clause in the

context of the 1948 Instrument of Transfer as a whole put Santa Monica on notice that the United States believed it had a perpetual reversion interest in the property conferred by the Instrument.  In the alternative, the language of the reversion clause in the context of the 1948 Instrument of Transfer as a whole would put a reasonable party on notice that the United States believed it had a perpetual reversion interest in the property conferred by the Instrument.

6.      The United States and the City of Santa Monica entered into a second instrument of transfer in 1949, also pursuant to the Surplus Property Act.  That instrument transferred certain of the United States' property interests in a second portion of the Airport Property to Santa Monica.

7.      During the negotiation of the 1949 Instrument of Transfer, the United States put Santa Monica on notice that the reversion clause referenced in Paragraph 3 applied to the 1949 Instrument and was a perpetual interest.  In the alternative, the United States' statements and conduct during the negotiation of the 1949 Instrument of Transfer were sufficient to put a reasonable party on notice that the reversion clause referenced in Paragraph 3 applied to the 1949 Instrument and was a perpetual interest.

8.      In 1952 Santa Monica asked that it be partially released from the terms, reservations, and conditions of the 1948 Instrument of Transfer when it sought to use a small portion of the Airport Property for non-airport purposes.  The United States granted the release on April 25, 1952.

9.      During the negotiation of the release referenced in Paragraph 8, the United States put Santa Monica on notice that the reversion clause referenced in Paragraph 3 was a perpetual interest.  In the alternative, the United States' statements and conduct during the negotiation of the release referenced in Paragraph 8 were sufficient to put a reasonable party on notice that the reversion clause referenced in Paragraph 3 applied was a perpetual interest.

10.     In 1956 Santa Monica asked that it be partially released from the terms, reservations, and conditions of the 1948 Instrument of Transfer when it sought to use a second portion of the Airport Property for non-airport purposes. The United States granted the release on March 5, 1956.

11.     During the negotiation of the release referenced in Paragraph 10, the United States put Santa Monica on notice that the reversion clause referenced in Paragraph 3 was a perpetual interest. In the alternative, the United States' statements and conduct during the negotiation of the release referenced in Paragraph 10 were sufficient to put a reasonable party on notice that the reversion clause referenced in Paragraph 3 applied was a perpetual interest.

12.     During the course of litigation between the FAA and Santa Monica, the parties entered into a settlement agreement in 1984. That agreement set out the manner in which Santa Monica had to operate the Santa Monica Municipal Airport through 2015. The 1984 settlement agreement did not abrogate any rights held by the United States pursuant to the 1948 and 1949 Instruments of Transfer. To the contrary, the 1984 settlement agreement explicitly recognized and preserved the parties' preexisting rights.

13.     During the negotiation of the settlement agreement referenced in Paragraph 12, the United States put Santa Monica on notice that the reversion clause referenced in Paragraph 3 was a perpetual interest. In the alternative, the United States' statements and conduct during the negotiation of the settlement agreement referenced in Paragraph 12 were sufficient to put a reasonable party on notice that the reversion clause referenced in Paragraph 3 applied was a perpetual interest.

14.     On January 23, 1962, the City Attorney for Santa Monica admitted that the 1948 Instrument of Transfer created a perpetual obligation for Santa Monica to operate the Airport Property as an airport. This

28

admission reflects Santa Monica's notice of the United States' position that the reversion clause referenced in Paragraph 3 created perpetual obligations. In the alternative, the City Attorney's statement was sufficient to put a reasonable party on notice that the reversion clause referenced in Paragraph 3 was a perpetual interest.

15.     On May 30, 1975, the Office of the Attorney General of the State of California independently concluded that Santa Monica was obligated to operate the Airport Property as an airport at that time based on the contractual agreements between the United States and Santa Monica.  This conclusion supports the United States' position that the reversion clause referenced in Paragraph 3 created perpetual obligations because, if that clause created obligations only for the unexpired portion of the United States' leasehold that was surrendered by the 1948 Instrument of Transfer, there would not be any obligation under the Instrument in 1975.

16.     The opinion of the Office of the Attorney General of the State of California referenced in Paragraph 15 put Santa Monica on notice that the reversion clause of the 1948 Instrument of Transfer referenced in Paragraph 3 was a perpetual interest.  In the alternative, the opinion referenced in Paragraph 15 was sufficient to put a reasonable party on notice that the reversion clause referenced in Paragraph 3 was a perpetual interest.

17.     Plaintiff's claims are barred by the statute of limitations of the Quiet Title Act because Santa Monica knew or reasonably should have known that the United States asserted a perpetual interest in the Airport Property more than twelve years prior to the filing of this lawsuit.

**SECOND AFFIRMATIVE DEFENSE**

**(Equitable Estoppel)**

18.     Defendants incorporate by reference Paragraphs 1 through 17 of the Affirmative Defenses.

19.     Santa Monica's conduct, representations, and omissions during the negotiations referenced in Paragraphs 4, 7, 9, 11, and 13 of the Affirmative Defenses collectively amount to an acknowledgement by Santa Monica that the United States' reversion interest under the 1948 Instrument of Transfer created a perpetual obligation to use the Airport Property for airport purposes.

20.     Defendants relied upon the acknowledgement referenced in Paragraph 19 of the Affirmative Defenses to their detriment when dealing with Santa Monica, particularly when negotiating grant agreements to provide funds to improve or maintain the Santa Monica Municipal Airport.

21.     Santa Monica is equitably estopped from asserting any claim contrary to its acknowledgement referenced in Paragraph 19 of the Affirmative Defenses, including all its claims in this lawsuit.

### THIRD AFFIRMATIVE DEFENSE

### (Ripeness)

22.     Defendants incorporate by reference Paragraphs 1 through 21 of the Affirmative Defenses.

23.     In 1994, Santa Monica entered into a grant agreement with the FAA whereby the FAA would provide money for airport improvements. Santa Monica later sought additional money for the improvements.  The FAA provided that additional money pursuant to a 2003 amendment to the grant agreement.

24.     Federal obligations relating to the use, operation, and maintenance of airports remain in effect throughout the useful life of airport facilities developed using grant funds, with a maximum obligation of twenty years.

25.     There are currently administrative proceedings before the FAA to decide the legal effect of the 2003 amendment to the earlier grant

agreement.  One possible outcome of the proceedings is that the FAA will conclude that the effect of the amendment is to trigger a twenty year obligation to continue using the Airport Property for airport purposes.  If that occurs, Santa Monica must continue using the Airport Property for airport purposes through 2023.  While taking no position as to the outcome of the administrative proceedings, for the purpose of preserving their ripeness defense, Defendants allege that the grant obligation continues through 2023.

26.     Because the Airport Property is grant obligated through 2023, the effective duration of the reversion clause in the 1948 Instrument of Transfer will not determine whether Santa Monica can use the Airport Property for non-airport purposes for another seven years.

27.     Santa Monica's claims based on causes of action other than the Quiet Title Act—Claims Two, Three, Four, and Five—are not ripe because the purported potential injury on which those claims are based—the possible loss of the Airport Property—is at least seven year in the future.

### THIRD AFFIRMATIVE DEFENSE

**(Failure to State a Claim)**

28.     Defendants incorporate by reference Paragraphs 1 through 27 of the Affirmative Defenses.

29.     Santa Monica's claims other than Count One fail to state claims upon which relief can be granted because they do not plead the elements of their respective causes of action.

### CONCLUSION

Defendants specifically deny all allegations in the complaint not otherwise answered herein.  In addition, defendants deny that plaintiff is entitled to the relief requested in the prayer for relief, or to any relief whatsoever.

WHEREFORE, having duly answered, defendants pray that:

1.     This Court enter judgment for defendants.

31

1       2.      Defendants be awarded costs incurred herein; and

2       3.      Defendants be granted such further relief as the Court may deem just

3   and proper.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: August 9, 2016                          Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

EILEEN M. DECKER
United States Attorney

JUDRY SUBAR
Assistant Branch Director

RAPHAEL O. GOMEZ (D.C. Bar #305540)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 514-1318
Facsimile:  (202) 616-8460
Raphael.gomez@usdoj.gov

/s/ Gary D. Feldon
GARY D. FELDON (D.C. Bar #987142)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Fax: (202)  616-8460
Email:  Gary.D.Feldon@usdoj.gov

*Attorneys for Defendants*