# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

CITY OF SANTA MONICA,

                    Petitioner,

        v.

UNITED STATES OF AMERICA, et al.

                  Respondent.

Civil Action No. 13-CV-8046-JFW (VBKx)

## STIPULATION AND ORDER/CONSENT DECREE

It is stipulated by and between the undersigned parties by their respective attorneys that:

1.      The Court has jurisdiction over each of the parties, and venue of this action is proper in the United States District Court for the Central District of California.

2.      The City of Santa Monica (the City) filed this case seeking to quiet title to certain properties and the United States disputes these claims. Live controversies exist between the parties including these and other issues.

3.      The parties consent to the Court's entry of the Settlement Agreement in the form attached to this Stipulation and Order/Consent Decree.

4.      The parties' execution of this Stipulation and Order/Consent Decree and the Settlement Agreement shall settle and resolve any and all claims of the City arising from the events giving rise to the allegations described in the Complaint in this action and in certain other proceedings between the parties, as provided in the Settlement Agreement.

5.      Neither this Stipulation and Order/Consent Decree nor the attached Settlement Agreement shall be construed to preclude the United States or the Federal Aviation Administration from bringing an action against the City for any violation(s) of any laws, regulations or orders other than those addressed in the Settlement Agreement.

6.      In the event that the proposed Settlement Agreement is not entered pursuant to this Stipulation and Order/Consent Decree, this Stipulation shall become null and void and shall be of no effect whatever, and the making of this Stipulation shall be without prejudice to any party in this or any other proceeding.

**For the Federal Aviation Administration:**

Reginald C. Govan
Chief Counsel
Federal Aviation Administration

**For the Department of Justice**
JOYCE BRANDA
Acting Assistant Attorney General

EILEEN M. DECKER
United States Attorney

JUDRY SUBAR
Assistant Branch Director

RAPHAEL O. GOMEZ (D.C. Bar #305540)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-1318
Facsimile: (202) 616-8460
Raphael.gomez@usdoj.gov

GARY D. FELDON (D.C. Bar #987142)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-4686
Fax: (202) 616-8460
Email: Gary.D.Feldon@usdoj.gov

Dated: 1/30/17

**For the City of Santa Monica:**

JOSEPH LAWRENCE
Interim City Attorney
LANCE S. GAMS
Chief Deputy City Attorney
IVAN O. CAMPBELL
Deputy City Attorney
1685 Main Street, Third Floor
Santa Monica, CA 90401-3295
Telephone: 310-458-8336
Facsimile: 310-393-6727

ARTURO J. GONZALEZ
agonzalez@mofo.com
Morrison & Forester LLP
425 Market Street
San Francisco, CA 94105
Telephone: 415-268-7000
Facsimile: 415-268-7522

WILLIAM V. O'CONNOR, JR.
WOConnor@mofo.com
JOANNA L. SIMON
JoannaSimon@mofo.com
Morrison & Foerster LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
Telephone: 858-720-5100
Facsimile: 858-720-5125

WILLIAM V. O'CONNOR, JR.

Dated: January 30 , 2017

**ORDER**

IT IS SO ORDERED by this Court, this _____ day of January, 2017, at Los Angeles, California.

_____

Honorable John F. Walter
United States District Court
For the Central District of California

## SETTLEMENT AGREEMENT/CONSENT DECREE BETWEEN THE FEDERAL AVIATION ADMINISTRATION AND THE CITY OF SANTA MONICA

The United States of America, acting through the Federal Aviation Administration (FAA) and the City of Santa Monica, CA (City) (collectively, the Parties) enter into this Settlement Agreement (Agreement), by and through their undersigned representatives, to resolve the disputes outlined below and pertaining to the operation of the Santa Monica Municipal Airport (Airport or SMO). This Agreement, once signed by the FAA and the City, shall be presented to the U.S. District Court for the Central District Court of California (U.S. District Court) for entry as a Consent Decree.

### Background

**Airport Property & Runway**

SMO is generally composed of two parcels of property.

1. *First Parcel*. The first parcel consists of approximately one hundred and seventy acres that the City of Santa Monica (City) leased to the U.S. government during World War II. (This parcel is referred to herein as the First Parcel and is more fully described as the premises referred to as "Clover Field, Santa Monica Municipal Airport" in the leases, as modified, that are referred to in that certain Instrument of Transfer, dated as of August 10, 1948, between the United States of America and the City that was recorded at Book 28055, Pages 211 through 222, inclusive, in the Official Records of Los Angeles County, California (the IOT).)

2. *Second Parcel*. The second parcel consists of approximately eighteen acres with respect to which the United States of America duly executed a Quitclaim Deed dated April 8, 1949, and recorded at Book 30037, Pages 364 though 370, inclusive, in the Official Records of Los Angeles County, California (the Quitclaim Deed), conveying its interests in said parcel to the City. (This parcel is referred to herein as the Second Parcel.) (The First Parcel and the Second Parcel, together with any other right, title and interest in any premises, structures, improvements or other property conveyed by the United States of America to the City in the IOT or the Quitclaim Deed, are collectively referred to herein as Airport Property).

*Airport Runway*. The Airport's current runway of 4,973 feet occupies land in both the First Parcel and Second Parcel , and also includes adjoining land that the Douglas Aircraft Company conveyed to the City by grant deed in 1945.

**District Court Litigation**

On August 10, 1948, pursuant to the Surplus Property Act of 1944 (SPA), the U.S. Government and the City executed an "Instrument of Transfer" (IOT) by which the U.S. Government surrendered its leaseholds and which the U.S. Government contends  imposed certain restrictions on the future use of the Airport property  including that:

> the land, buildings, structures, improvement and equipment in which this instrument transfers any interest shall be used for public airport purposes for the use and benefit of the public, on reasonable terms and with unjust discrimination and without grant or exercise of any exclusive right . . . .

The IOT further provides that "the restrictions . . . shall run with the land . . . ." and requires that:

> the entire landing area . . . be maintained for the use and benefit of the public at all times in good and serviceable conditions, provided, however, that such maintenance shall be required as to structures, improvement, facilities and equipment only during the remainder of their estimated life . . . .

On April 8, 1949, the U.S. government effected a Quit Claim Deed, transferring its interests in all or substantially all of the Second Parcel to the City.

On October 31, 2013, the City sued the FAA under the Quiet Title Act regarding the meaning and effect of the IOT. *City of Santa Monica v. United States of America, et al.*, Case No. CV 13-08046 JFW (VBKx).  The City's claim seeks, in part, a declaratory judgment providing that the City has unencumbered title to the Airport Property.

On February 13, 2014, the U.S. District Court dismissed the City's claim based on the statute of limitations.  However, on March 11, 2016, the U.S. Court of Appeals for the Ninth Circuit reversed the District Court's dismissal and remanded the case to the District Court.  Trial is currently set for August 29, 2017.

**Circuit Court Litigation**

On June 27, 1994, the City accepted a $1,604,700.00 federal grant for certain improvements at the Airport pursuant to the terms of a grant agreement that the Parties agree remained in effect for twenty years.  On August 27, 2003, the City and the FAA executed a grant amendment that provided $240,600.00 in federal funds to the City.  The Parties dispute whether the terms of the grant remain in effect for twenty years from the date of the acceptance of the amendment or for twenty years from the date of the acceptance of the initial agreement in which case they have expired.

In response to a complaint filed pursuant to 14 C.F.R. part 16, on August 15, 2016, the FAA issued a Final Agency Decision (FAD) holding that by accepting the additional funds, the grant expiration date was extended until August 27, 2023. *Nat'l Bus. Aviation Assoc., v. City of Santa Monica*, FAA Docket No. 16-14-04. The City sought review of the FAD in the U.S. Court of Appeals for the Ninth Circuit. *City of Santa Monica v. FAA*, Case No. 16-72827 (9th Cir.).

**Federal Administrative Proceedings**

The FAA issued a Notice of Investigation (NOI) to determine, in part, whether the City is violating its federal obligations to provide access to the fixed based operators (FBOs). *In re Compliance with Fed. Obligations by the City of Santa Monica*, FAA Docket No. 16-16-13. The NOI is based on the City's handling of the tenancy of the Airport's FBOs, the possible ban on the sale of unleaded fuels, and the City's declared intent to provide certain aeronautical services at SMO on an exclusive basis (proprietary exclusive). The City filed a response to the NOI asserting that it has fully complied with its obligations in regard to these matters.

On December 12, 2016, the FAA issued an Interim Cease and Desist order ordering the City to cease and desist from removing the FBO's until the FAA issues a final agency decision under the NOI. No final decision has been reached regarding the NOI.

**NOW, THEREFORE**, in consideration of the mutual covenants and other consideration described herein, the the Parties agree it is in the interest of the public and civil aviation to AGREE as follows:

## I.   COMPLETE SETTLEMENT OF ALL CLAIMS

Within 30 days of this Agreement's execution, the Parties shall jointly move in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.), for entry of this Agreement as a Consent Decree and for a stay of the the litigation pending the decision on the Consent Decree. Also within 30 days of this Agreement, the Parties shall jointly move to stay *City of Santa Monica v. Federal Aviation Administration*, No. 16-72827, (9th Cir.), pending the entry of the Consent Decree. Within 14 days of the entry of the Consent Decree, the City shall dismiss with prejudice *City of Santa Monica v. Federal Aviation Administration*, No. 16-72827, (9th Cir.). Furthermore, the Parties agree that entry of the Consent Decree shall resolve all pending disputes at issue in *In re Compliance with Federal Obligations by the City of Santa Monica*, FAA NO. 16-16-13 (U.S. Dep't of Transp., Fed. Aviation Admin.), and that the FAA shall therefore dismiss the NOI.

In addition, the FAA shall send a letter in substantially the form of Exhibit A to this Agreement to private parties that have filed Part 16 complaints raising issues within the scope of this Agreement requesting that the parties withdraw those complaints. The Parties acknowledge that the FAA does not have authority to require private parties to withdraw their Part 16 complaints

and that the FAA must consider any complaints not withdrawn.  Thus, the Parties further acknowledge that no action of a private party in a Part 16 proceeding can constitute a breach of this Agreement.

Unless modified by the court having jurisdiction over the Consent Decree, the Decree shall expire on December 31, 2028.  The Parties agree that the expiration of the Decree shall have no effect on the terms or condition of this Agreement, which terms or conditions shall survive the expiration of the Decree.

Further, the Parties agree that this Agreement upon entry of the Consent Decree shall resolve all claims by the Parties that have been brought, or could have been brought, in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.), *City of Santa Monica v. Federal Aviation Administration,* No. 16-72827, (9th Cir.), or *In re Compliance with Federal Obligations by the City of Santa Monica,* FAA NO. 16-16-13 (U.S. Dep't of Transp., Fed. Aviation Admin.), including all the Parties' actual or potential claims pertaining to the past operation of the Airport by the City pertaining to tenants, non-tenant aircraft and FBOs.

If one of the Parties alleges a breach of the terms or conditions of this Agreement, the exclusive venue for remedying such a breach shall be the court having jurisdiction over the Consent Decree.

In the event the court in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.) does not enter the Consent Drecree as-written, the Parties shall confer and, as soon as feasible, decide whether to move the court to enter a modified Consent Decree.  If the Parties have not reached an agreement on the form of the revised Consent Decree within 30 days, the Parties shall jointly move to lift the stays of litigation in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.) and *City of Santa Monica v. Federal Aviation Administration,* No. 16-72827, (9th Cir.).  The FAA shall also at that time resume proceedings in *In re Compliance with Federal Obligations by the City of Santa Monica,* FAA NO. 16-16-13 (U.S. Dep't of Transp., Fed. Aviation Admin.).  In such event each Party agrees that this Agreement shall be of no force and effect and may not be used by either Party for any purpose whatsoever.

## II.  RUNWAY

    **A.**    **Runway Length.**  The Parties agree that the Airport's runway shall have an operational runway length of 3,500 feet.  The 3,500 foot distance shall not include the runway safety areas that shall be constructed and maintained at both runway ends.  The runway safety area may include an engineered materials arrestor system (EMAS) at the City's option.  The Parties further agree that the Airport shall accomodate aircraft operations that can safely take off

and land on a runway of the agreed-on length. Prior to the initiation of shortening the runway, the City shall comply with the 30 day notice provisions of 14 C.F.R. Part 157.5(b)(2).

**B.** **Costs to Shorten the Runway.** The costs to shorten the runway, including but not limited to the installation of EMAS, shall be borne by the City. If sought by the City, the FAA will provide technical support to the City through the FAA's Office of Airports to assist in obtaining federal funds to support the shortening of the runway, as consistent with federal laws, regulations and the availability of funds.

**C.** **Environmental Studies.** The City shall be responsible for complying with its state and federal environmental requirements related to its planning and implementation of modifications at SMO. The City's responsibility shall include the cost of conducting any necessary environmental studies or other requirements under the National Environmental Policy Act (NEPA). 42 U.S.C. § 4321 *et seq.*

## III.  USE AND RELEASE OF PROPERTY

Consistent with the ultimate configuration of the runway pursuant to Section II, the FAA agrees that prior to closure of the Airport, the City may use the property no longer needed for the the Airport with a shortened or reconfigured runway, taking into consideration standard safety areas, including the use of EMAS, for non-aeronautical uses that are safe and compatible with the operation of the Airport. Such land shall be subject to an avigation easement for the period the airport is operated which shall be recorded contemporaneously with any instrument releasing such property. A copy of the form of avigation easement is attached hereto as Exhibit B. This agreement does not constitute FAA approval of any particular future use.

## IV. CITY'S PROPRIETARY EXCLUSIVE RIGHT

### A. FAA's Acknowledgement of the City's Right

The City may exercise its proprietary exclusive right to provide aeronautical services at SMO, including but not limited to the sale and into-plane delivery of all types of aviation fuels, in accordance with generally-applicable rules governing the exercise of proprietary exclusive rights.

### B. City's Obligations

The City shall provide any proprietary exclusive aeronautical services at SMO (i) in conformance with the standard of grant assurance 22 (ii) on reasonable terms at reasonable rates, and (iii) during all hours that such services would normally be provided at comparable general aviation airports, taking into account permissible curfews provided for in section V. The City further agrees that, if the City does not fully provide a type of service at any point in time and a private FBO desires to provide such a service, that operator shall have reasonable access to the airport on commercially reasonable terms and in conformance with the standards of grant assurance 22. See 79 Fed. Reg. 18755 (April 3, 2014).

## C. Timing of the City's Exercise of Its Right

Subject to the City's right pursuant to subsection D, below, the City will not implement any proprietary exclusive operations, as defined above, until the work to shorten the runway, as provided in Section II above, is complete.

## D. Leases for Private Aeronautical Service Providers Prior to the City's Exercise of Its Right

Leases offered to all tenants providing aeronautical services shall be on reasonable terms and in substantially the same form as that attached as Exhibit C. For purposes of this Agreement, the phrase "reasonable terms" shall mean terms that are customary and usual at similarly situated and sized general aviation airports.

The City shall offer all current tenants providing aeronautical services leases of no less than three (3) years with reasonable terms appropriate to the aeronautical service usually and customarily provided such service at similar facilities, including but not limited to tenant investment and financing requirements.

The City shall also offer leases to all prospective tenants providing aeronautical services for which there is space at SMO subject to reasonable terms and consistent with the standards of grant assurance 22, provided the City is not itself providing such services on a proprietary exclusive basis.

Any and all leases providing aeronautical services may, at the City's election, be subject to termination upon six months written notice of the City's exercise of its proprietary exclusive right to provide the category of services otherwise being provided by private FBOs, provided the City is ready, willing, and able to fully provide such aeronautical service in accordance with applicable law.

## V.   AIRPORT CURFEW

The City may submit an application for enhanced curfews consistent with 14 C.F.R. part 161 (Part 161). Review of such an application shall be conducted under the procedural rules and subject to the substantive standards applicable to all Part 161 applications submitted to the FAA, which shall not be affected by this Agreement. Review of any decision made in connection with such an application shall be conducted exclusively in the same manner as, and in the same forum as, review of any decision made in connection with a Part 161 application submitted to the FAA. That is, this Agreement shall not affect the form or substance of such a review. Notwithstanding any other provision of this Agreement, judicial review of FAA's decision and record thereof with regard to any Part 161 application submitted by the City shall be within the exclusive jurisdiction of the applicable U.S. Court of Appeals.

## VI.    DURATION

The City agrees to operate the Airport consistent with its obligations set forth in this Agreement until December 31, 2028, unless an earlier date is agreed to by the Parties.  Any subsequent decison by the FAA to release the Airport at an earlier date shall be made consistent with the standard of 49 U.S.C. § 47153.  The obligation to operate the Airport until December 31, 2028 shall be binding on any subsequent purchaser of Airport Property.  Within 90 days of a Consent Decree embodying this Agreement taking effect, the City shall cause this Agreement to be recorded in the property records for the County of Los Angeles, California.

Without limiting the express terms of this Agreement, the FAA  agrees that the Airport Property shall be released from all covenants, reservations, restrictions, conditions, exceptions and reservations of rights imposed under the IOT and the Quitclaim Deed and the grant assurances imposed in 1994 upon the effectiveness of this Agreement and to provide such notice as required under 49 U.S.C. §47153(c).  Upon the City's request, the FAA  shall execute, acknowledge and deliver from time to time any instruments reasonably necessary requested by the City appropriate to evidence the release of the Airport Property from all such covenants, reservations, restrictions, conditions, exceptions and reservations of rights. The Parties shall record any instruments necessary to effectuate this provision.

The City's operation of the Airport until December 31, 2028 shall conform with (i) the standards set forth in grant assurances 19, 22, 23, 24, 25, and 30; and (ii) all applicable state and federal operational, maintenance, and safety standards.  For purposes of this paragraph, the substantive standards of grant assurances 19, 22, 23, 24, 25, and 30 shall apply until December 31, 2028.

If the City enters into future grant agreements with the FAA, then it shall also be bound by those terms as provided for in any such grant agreement in addition to any applicable the standards expressly set forth in this Agreement.

If the City does not enter into future agreements with the FAA that continue to require the City to operate the Airport after December 31, 2028, the Parties agree that the City may, in its sole discretion at any time on or after January 1, 2029, cease to operate the Airport as an airport and may close the Airport to all aeronautical use forever, subject only to the applicable 30 day notice requirements set forth in 49 U.S.C. § 46319(a) and 14 C.F.R. Part 157.5(b)(2).

## VII.    UNLEADED FUEL

The FAA is committed as a matter of national aviation policy to support the development and use of unleaded aviation gas appropriate to the operation of piston aircraft where commercially and technically feasible.  The FAA agrees to consider any demonstration project the City may seek to implement pertaining to the use of unleaded fuel.  Nothing in this Agreement shall allow the City to restrict the sale of leaded aviation fuel for as long as the FAA authorizes use of such fuels within the United States.

## VIII.  MISCELLANEOUS PROVISIONS

**A.  Enforcement.** The Parties reserve the right to judicially enforce any terms or provisions of this Agreement.

**B.  Consent Decree.** The terms of this Agreement shall be memorialized and embodied in a consent decree to be filed in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.) in the form attached as Exhibit D.  The court shall have jurisdiction to issue  injunctive relief only as to the provisions of sections II, III, and IV.  Further, the court shall have jurisdiction to enforce the provisions of sections II, III and IV as to any successors, transferees, licensees, agents, heirs, and assigns of the City's interests in, operation of, or sponsorship of SMO.  The court shall not have jurisdiction to subject the Parties to penalties or sanctions for any alleged violations of its obligations in this Agreement.

**C.  Own Costs.** Each Party shall bear its own costs, including attorney fees.

**D.  Authority.** The representatives of each Party hereby certify that he or she is duly authorized to enter into the Agreement.  The City represents that it has the full authority to perform all of the acts and obligations it has agreed to perform under the terms of this Agreement. The United States, acting though the Department of Justice and the FAA represents that the FAA has the full authority to perform all of the acts and obligations it and the United States of America has agreed to perform under the terms of this Agreement.

**E.  Copies and Counterparts.**  It is contemplated that this Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together constitute one and the same document. Facsimiles, hard copies, and scanned electronic copies of signatures, including scanned electronic copies sent by email, shall constitute acceptable, binding signatures for purposes of this Agreement.

**F.  Defense of This Agreement**.  The Parties agree to vigorously and actively defend this Agreement, any resulting Consent Decree, and all terms embodied therein as fair and reasonable, to vigorously and actively defend the same against any challenge by any individual or entity.  The Parties further agree not to undermine directly or indirectly this Agreement, any resulting Consent Decree or any terms set forth therein for so long as this Agreement or any resulting Consent Decree remains in effect.

**G.  Modification.**  This Agreement may be supplemented, amended, or modified only by the mutual agreement of the Parties, and, once the Consent Decree is entered, only with the approval of the court  No supplement, amendment, or modification of this Agreement shall be binding unless it is in writing and signed by all duly authorized representatives of each Party.

**H.  Successors or Assigns.**  This Agreement and any resulting consent decree shall be binding upon and inure to the benefit of the Parties and their respective successors, transferees, licensees, agents, heirs, and assigns.  Prior to any change of the sponsor of SMO or to the identity of the holder of any operating certificate related to the operation or sponsorship of SMO the City shall obtain the written agreement of such new entity to be bound by the terms of this Agreement and any resulting consent decree.

**I.  Precedent.**  Nothing in this Agreement shall constitute an admission concerning any allegation, claim, or defense at issue in in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.), *City of Santa Monica v. Federal Aviation Administration,* No. 16-72827, (9th Cir.), or *In re Compliance with Federal Obligations by the City of Santa Monica,* FAA NO. 16-16-13 (U.S. Dep't of Transp., Fed. Aviation Admin.), and this Agreement has no precedential effect as to any other dispute between the Parties or between either the City or the FAA and any third party.  This Agreement is made in light of the unique circumstances of this case and the uncertainty of the specific matters resolved hereby. Nothing herein shall be construed to be an admission of liability or as an interpretation of the validity or terms or provisions of any other instruments or contracts.

**J.  Release.**  Upon the entry of the Consent Decree, the Parties and all their heirs, administrators, representatives, attorneys, successors, and assigns, hereby release, waive, acquit, and forever discharge each other and all their respective officers, employees, and agents from, and are hereby forever barred and precluded from prosecuting, any and all claims, causes of action, and/or requests for relief asserted in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.), *City of Santa Monica v. Federal Aviation Administration,* No. 16-72827, (9th Cir.), and *In re Compliance with Federal Obligations by the City of Santa Monica,* FAA NO. 16-16-13 (U.S. Dep't of Transp., Fed. Aviation Admin.), as well as any and all claims, causes of action, and/or requests for relief, whether or not made, against any Party that could have been raised in those matters, with the exception of proceedings to enforce this Agreement or the Consent Decree.

**K.  No Third Party Rights.**  This Agreement is not intended to create, and does not create, any third-party beneficiary rights, confer upon any non-party a right to enforce or sue for an alleged breach of the Agreement, or generate any other kind of right or privilege for any person, group, or entity other than the Parties.

**L.  Effective Date.**  This Agreement shall be effective upon the date the Court enters an order approving this Agreement.

For the Federal Aviation Administration:

_____
Reginald C. Govan
Chief Counsel
Federal Aviation Administration


For the Department of Justice

JOYCE BRANDA
Acting Assistant Attorney General

EILEEN M. DECKER
United States Attorney

JUDRY SUBAR
Assistant Branch Director

RAPHAEL O. GOMEZ (D.C. Bar #305540)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-1318
Facsimile: (202) 616-8460
Raphael.gomez@usdoj.gov

_____
GARY D. FELDON (D.C. Bar #987142)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-4686
Fax: (202) 616-8460
Email: Gary.D.Feldon@usdoj.gov

Dated: 1/30/17

For the City of Santa Monica:
Attest:

_____
Rick Cole
City Manager

_____
Denise Anderson-Warren
City Clerk

_____
Joseph Lawrence
Interim City Attorney

Dated: _____1-30-17_____

Approved as to form:

_____
William V. O'Connor
Morrison & Foerster LLP
12531 High Bluff Drive | San Diego, CA 92130-2040
P: +1 (858) 720.7932
WOConnor@mofo.com

Dated: _January 30, 2017_

Attorneys for the City of Santa Monica

**IT IS SO ORDERED.**

Signed ___, _____, 2017, at Los Angeles, California

_____

Honorable John F. Walter
United States District Court
For the Central District of California

**Acknowledgements:**

District of Columbia
City of Washington

Subscribed, sworn and acknowledged before me by Reginald C. Govan, Chief Counsel of the Federal Aviation Administration, this *27* day of January, 2017.

*Judy S. McGhee*

Notary Public.
My commission expires *10/14/2020*

JUDY S. MCGHEE
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires October 14, 2020

State of California
County of _____

On _____ before me, _____ personally

Appeared _____
_____
_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

_____          (Seal)
Signature

12

# Exhibit A

EXHIBIT A

Dear X,

This letter pertains to your complaint filed with the FAA under 14 C.F.R. Part 16 and relating to Santa Monica Municipal Airport (SMO).  Among other matters, your complaint alleges:

| Statement of Claim | Grant Assurance Number |
|---|---|
|  |  |
|  |  |

This letter is to inform you that the City of Santa Monica and the Federal Aviation Administration (FAA) have entered into Settlement Agreement, effective as of the date of signature, which we believe may subsume many of claims made in your Part 16 complaint.

As you may know, there are a number of disputed legal issues pertaining to the operation of at SMO, which continue to be the subject of federal court litigation. *See, City of Santa Monica v. Federal Aviation Administration,* Case No. 16-72827, FAA No. 16-14-04 (9th Cir.); *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.).

The FAA and the City have determined that it is in the public interest to enter into the Settlement and Consent Decree to resolve such litigation, thereby modifying the City's federal obligations and clarifying certain FAA legal and regulatory policy positions as they pertain to the operation of SMO.  In sum, the basic terms of the Agreement and Decree:

- Require the City to operate SMO with a runway of 3,500 feet for 12 years duration until December 31, 2028;

- Recognize the City's right to establish an exclusive fixed based aeronautical service provision upon completion of runway construction work; and

- Provide tenants providing aeronautical services reasonable leases for terms of no less than three years, subject to the City's implementation of its exclusive fixed-based services.

The Settlement Agreement, the terms of which bind the City and the FAA, will be entered as a Consent Decree of the U.S. District Court for the Central District of California.

Exhibit A to settlement agreement/consent decree between the FAA and the City of Santa Monica

**EXHIBIT A**

Your Part 16 complaint was filed to notify the FAA of your belief that the City was violating its obligations as a federally obligated airport sponsor.   This letter serves a dual purpose.  First, to inform you of the FAA's judgment that because the City's federal obligations to the FAA at issue in the Part 16 complaints now are governed by the terms of the settlement agreement and consent decree, it is the FAA's presumptive position that if the City is in compliance with the terms of the Settlement Agreement and the Consent Order, then the City is meeting its obligations to the FAA.   Second, to ask you to thoroughly review your complaint(s) and determine whether the matter has been resolved by the terms of the Agreement and Order.   To the extent that your complaint no longer states a valid claim, we ask that you consider withdrawing it in the interest of judicial and administrative economy.

Sincerely,

Reginald C. Govan
Chief Counsel

Exhibit A to settlement agreement/consent decree between the FAA and the City of Santa Monica

**EXHIBIT A**

**PAGE 014**

# Exhibit B

EXHIBIT B
## SURFACE AND OVERHEAD AVIGATION EASEMENT

**WHEREAS**, the City of Santa Monica, hereinafter called the Grantor is the fee owner of the parcels of land situated in or in the vicinity of the City of Santa Monica, Los Angeles County, California, specifically described in Attachment A, hereinafter called "Grantor's property" and outlined on an attached Exhibit A map.

**NOW, THEREFORE**, in consideration of that certain Settlement Agreement entered into by the United States of America, acting through the Federal Aviation Administration (FAA)  and the City of Santa Monica and dated _____ (Settlement Agreement); and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Grantor, for itself, its heirs, administrators, executors, successors and assigns do hereby grant the following appurtenant rights and benefits to the FAA hereinafter called the "Grantee" for the use and benefit of the public.

The appurtenant rights and benefits include the uses, rights and restrictions described as follows:

The unobstructed use and passage of all types of aircraft in and through the airspace at any height or altitude above the surface of the land.

The right of said aircraft to cause noise, vibrations, fumes, deposits of dust, fuel particles (incidental to the normal operation of aircraft), fear, interference with sleep or communication, and any other effects associated with the normal operation of aircraft taking off, landing or operating in the vicinity of Santa Monica Municipal Airport (SMO).

As used herein, the term "aircraft" shall mean any and all types of aircraft, whether now in existence or hereafter manufactured and developed, to include jet, propeller-driven, civil, military or commercial aircraft; helicopters, regardless of existing or future noise levels, for the purpose of transporting persons or property through the air, by whoever owned or operated.

**EXHIBIT B**

**PAGE 015**

The Grantor agrees that during the life of this easement, it will not construct, erect, suffer to permit or allow any structure or trees or other natural growth on the surface of the burdened property that shall in any way limit the utility of the runway, as it is configured pursuant to the Settlement Agreement or as it may be configured in the future.  The Grantor may not permit any places of public assembly or gatherings within the easement area. (Examples: churches, schools, day care facilities, hospitals, restaurants, stadiums, office buildings, etc.)  The Grantor is permitted to grow ornamental landscaping or establish a conservation area in the easement area provided that such landscaping or use shall not in any way limit the utility of the runway, as it is configured pursuant to the Settlement Agreement or as it may be configured in the future.

The Grantor agrees to keep the easement area free of the following: structures (permanent or temporary) that might create glare or contain misleading lights; residences, fuel handling and storage facilities and smoke generating activities, and creation of any means of electrical interference that could affect the movement of aircraft over the easement area.

Grantor agrees to waive all damages and claims for damages caused or alleged to be caused by the Grantor's violations of any aspect of this easement document. The FAA has a right of ingress/egress in the easement area and the right to remove any new structure or vegetation that is not specifically mentioned above as "accepted" for as long as the airport is used as an airport.

TO HAVE AND TO HOLD said easement and right of way, and all rights appertaining thereto unto the Grantee, its successors, and assigns, until airport operations at SMO are terminated pursuant to the Settlement Agreement and SMO ceases to be used for public airport purposes. It is understood and agreed that all provisions herein shall run with the land and shall be binding upon the Grantor, its heirs, administrators, executors, successors and assigns until airport operations at SMO are terminated pursuant to the Settlement Agreement and SMO ceases to be operated for public airport purposes.

IN WITNESS WHEREOF, the grantors have hereunto set their hands and seals this_____day of_____, 20_____.

_____

The City represents that it has the full authority to perform all of the acts and obligations it has

**EXHIBIT B**

**PAGE 016**

agreed to perform under the terms of this agreement.

_____(SEAL)
City of Santa Monica

Attachment A

The Santa Monica Municipal Airport consisting of that property referenced in the following documents or otherwise described below:

1. That certain Instrument of Transfer, dated as of August 10, 1948, between the United States of America and the City that was recorded at Book 28055, Pages 211 through 222, inclusive, in the Official Records of Los Angeles County, California  consisting of approximately one hundred sixty eight and 87/100  (168.87) acres;

2. That certain Quitclaim Deed dated April 8, 1949, and recorded at Book 30037, Pages 364 though 370, inclusive, in the Official Records of Los Angeles County, California (the Quitclaim Deed) consisting of approximately eighteen and 629/1000 (18.629) acres; and

3. That certain property that the Douglas Aircraft Company conveyed to the City of Santa Monica by grant deed in 1945 upon which is now situated part of the runway at Santa Monica Municipal Airport and is referenced in that certain Settlement Agreement entered into by the Federal Aviation Administration and the City of Santa Monica and dated _____.

**EXHIBIT B**

**PAGE 018**

EXHIBIT A to Avigation Easement



**EXHIBIT B**

**PAGE 020**

# Exhibit C

Exhibit 9

# EXHIBIT C

(Agreement No. 8547)

**LEASE AGREEMENT**

by and between

**THE CITY OF SANTA MONICA**

and

**A T E OF CALIFORNIA, dba
AMERICAN FLYERS**

**EXHIBIT C**

**PAGE 021**

Exhibit 9

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| SECTION 1. | PREMISES | - 2 - |
| SECTION 2. | TERM | - 2 - |
| 2.1. | Commencement Date and Term | - 2 - |
| 2.2. | Expiration Date | - 2 - |
| 2.3. | No Hold Over Tenancies | - 2 - |
| 2.4. | Surrender | - 3 - |
| 2.5. | Survival | - 3 - |
| SECTION 3. | USE OF THE PREMISES | - 3 - |
| 3.1. | Required Activities and Services | - 3 - |
| 3.2. | Permitted Activities and Services | - 4 - |
| 3.3. | Prohibited Activities and Services | - 5 - |
| 3.4. | High Levels of Service | - 5 - |
| SECTION 4. | RENT | - 6 - |
| 4.1. | Monthly Base Rent | - 6 - |
| 4.2. | CPI Adjustments | - 6 - |
| 4.3. | Fuel Flowage Fees. | - 8 - |
| 4.4. | Late Charges As Additional Rent | - 8 - |
| 4.5. | Payments to the City | - 8 - |
| 4.6. | Application of Payment | - 9 - |
| 4.7. | Security Deposit | - 9 - |
| 4.8. | Documents and Records | - 9 - |
| SECTION 5. | COMPLIANCE WITH LAW | - 10 - |
| 5.1. | Compliance With All Laws | - 10 - |
| 5.2. | Fixed Based Operations Shall Be In Full Compliance with the Airport Code | - 10 - |
| 5.3. | Cooperation in Enforcement of Airport Code | - 10 - |
| 5.4. | No Services To Excluded Pilots, Aircraft or Owners of Aircraft | - 10 - |
| 5.5. | Permits and Licenses | - 10 - |
| 5.6. | Federal Requirements | - 10 - |
| SECTION 6. | LESSEE'S OBLIGATIONS | - 12 - |
| 6.1. | Highest Level of Service | - 12 - |
| 6.2. | Obtain and Maintain All Necessary Licenses and Permits | - 13 - |
| 6.3. | Fuel Supplier Agreement(s) | - 13 - |
| 6.4. | Fuel Storage and Delivery | - 13 - |
| 6.5. | Fueling Vehicles | - 13 - |
| 6.6. | Retail Fuel Pricing | - 13 - |
| 6.7. | Compliance With Environmental Requirements | - 14 - |
| SECTION 7. | MAINTENANCE AND REPAIR OF THE PREMISES AND LEASEHOLD IMPROVEMENTS; CONSTRUCTION OF REQUIRED LESSEE IMPROVEMENTS | - 15 - |
| 7.1. | Maintenance and Repair of Premises | - 15 - |
| 7.2. | Repairs To Be In Compliance With Law | - 1? - |

i

**EXHIBIT C**

**PAGE 022**

Exhibit 9

| | | |
|---|---|---|
| 7.3. | Alterations, Additions or Changes to the Premises Require Prior Written Approval By City | - 15 - |
| 7.4. | Required Lessee Improvements | - 15 - |
| 7.5. | Limited Obligation of the City | - 16 - |
| SECTION 8. | OWNERSHIP OF IMPROVEMENTS AND EQUIPMENT | - 17 - |
| 8.1. | Ownership of Leasehold Improvements During Term | - 17 - |
| 8.2. | Equipment | - 17 - |
| 8.3. | Removal and Demolition | - 17 - |
| 8.4. | Lessee's Obligations Upon Expiration or Earlier Termination of the Agreement; Environmental Remediation | - 17 - |
| SECTION 9. | LIABILITY AND INSURANCE | - 18 - |
| 9.1. | Minimum Limits of Insurance | - 18 - |
| 9.2. | Minimum Scope of Insurance | - 19 - |
| 9.3. | Deductibles and Self-Insured Retentions | - 20 - |
| 9.4. | Other Insurance Provisions | - 21 - |
| 9.5. | Property Insurance | - 21 - |
| 9.6. | Waiver of Subrogation | - 21 - |
| 9.7. | All Coverages | - 22 - |
| 9.8. | Acceptability of Insurers | - 22 - |
| 9.9. | Verification of Coverage | - 22 - |
| 9.10. | Lessee's Contractor's Insurance | - 23 - |
| 9.11. | Sublessees and Licensees | - 23 - |
| SECTION 10. | INDEMNIFICATION, DEFENSE AND HOLD HARMLESS | - 23 - |
| SECTION 11. | CITY'S RIGHTS | - 24 - |
| 11.1. | Ingress and Egress | - 24 - |
| 11.2. | Access for Environmental Tests or Work | - 24 - |
| 11.3. | Maintenance and Repair of Underground Storage Tank | - 25 - |
| 11.4. | Right To Access | - 25 - |
| 11.5. | Right to Regulate Access | - 25 - |
| SECTION 12. | RESTRICTIONS ON ASSIGNMENTS OR SUBLEASES | - 25 - |
| 12.1. | Assignment and Subletting Require Prior Written Consent from City | - 25 - |
| 12.2. | Transfer of Corporate Shares | - 25 - |
| 12.3. | Lessee's Application for Consent | - 26 - |
| 12.4. | Grounds for Denying Consent | - 26 - |
| 12.5. | Conditions to Consent | - 26 - |
| 12.6. | Acceptance of Rent from Transferee | - 27 - |
| SECTION 13. | COVENANT AGAINST LIENS | - 27 - |
| SECTION 14. | TAXES AND ASSESSMENTS | - 28 - |
| 14.1. | Lessee's Obligation Pay Taxes | - 28 - |
| 14.2. | Personal Property Taxes | - 28 - |
| 14.3. | Reservation of Rights | - 29 - |
| SECTION 15. | UTILITIES | - 29 - |
| 15.1 | Utilities Costs | - 29 - |
| 15.2 | Discontinuances and Interruptions of Utility Services | - 29 - |
| SECTION 16. | SIGNS, LIGHTS AND ADVERTISEMENT | - 29 - |

ii

**EXHIBIT C**

**PAGE 023**

Exhibit 9

SECTION 17.  DAMAGE OR DESTRUCTION TO THE PREMISES OR
IMPROVEMENTS .................................................................................. - 29 -
   17.1.   Notice of Damage to the Premises ..................................... - 29 -
   17.2.   Repair or Rebuild the Premises ......................................... - 29 -
   17.3.   Damage or Destruction to the Common Area ..................... - 31 -
   17.4.   Lessee's Remedies ............................................................. - 31 -
   17.5.   Insurance Proceeds ............................................................ - 31 -
   17.6.   Waiver ................................................................................ - 31 -
SECTION 18.  CONDEMNATION ......................................................... - 31 -
   18.1.   Effect of Taking ................................................................. - 31 -
   18.2.   Condemnation Awards ....................................................... - 32 -
SECTION 19.  NOTICES ........................................................................ - 32 -
SECTION 20.  DEFAULTS AND REMEDIES FOR DEFAULTS ........... - 33 -
   20.1.   Events Constituting Material Default by Lessee ............... - 33 -
   20.2.   Remedies for Default ......................................................... - 34 -
SECTION 21.  TERMINATION .............................................................. - 35 -
   21.1.   Termination By City for Lessee's Breach .......................... - 35 -
   21.2.   Duties Upon Termination ................................................... - 35 -
SECTION 22.  GENERAL PROVISIONS ................................................ - 36 -
   22.1.   Authority ............................................................................ - 36 -
   22.2.   Integrated Agreement ......................................................... - 36 -
   22.3.   Governing Law ................................................................... - 36 -
   22.4.   Time is of the Essence ....................................................... - 36 -
   22.5   City's Proprietary Capacity ............................................... - 36 -
   22.6.   Nonwaiver .......................................................................... - 36 -
   22.7.   Attorneys' Fees and Costs ................................................. - 36 -
   22.8.   Counterparts ...................................................................... - 37 -

## EXHIBITS

Exhibit A – Premises, Site Plan and Existing Improvements

Exhibit B – Facility Improvement Plan

iii

**EXHIBIT C**

Exhibit 9

## LEASE AGREEMENT NO. 8547 (CCS)

This Lease Agreement Number 8547 (CCS) ("Agreement") is entered into this 23rd day of June 2006, ("Execution Date") by and between the CITY OF SANTA MONICA, a municipal corporation (hereinafter "City" or "Lessor"), and A T E of CALIFORNIA, a California corporation, doing business as AMERICAN FLYERS (hereinafter "ATE" or "Lessee"), with respect to the following:

### R E C I T A L S:

A.     The City is a municipal corporation duly organized and validly existing under the laws of the State of California with the power to carry on its business as it is now being conducted under the statutes of the State of California and the Charter of the City.

B.     Lessee is a California corporation, duly incorporated or formed, validly existing, and in good standing under the laws of the State of California. Lessee represents and warrants that it is experienced in the operation and management of aviation fixed based operations.

C.     The City owns real property generally located at 2501 Airport Avenue, Santa Monica, California 90405, more specifically identified in the site plan attached hereto as Exhibit A and incorporated herein by reference ("Premises"), at the Santa Monica Municipal Airport ("Airport"). The Premises is one of two aircraft fueling service areas at the Airport. The City seeks to lease the Premises for use as an aviation fixed based operation consisting of aircraft hangars, aircraft tie-downs, aircraft fueling, offices, shops and a vehicle parking area  as more particularly set forth in this Agreement.

D.     On or about December 16, 1997, the City and Lessee entered into a Month-to-Month Lease Agreement ("Month-to-Month Lease") for the lease of the Premises. The Month-to-Month Lease was replaced by a Lease entered into on or about September 1, 2000 for a period of five (5) years.  The parties intend by this Agreement to extend and replace the September 1, 2000 Lease which expired on August 31, 2005 and thereafter became a month-to-month lease arrangement.

E.     The City and Lessee desire to enter into this Agreement for the rental of the Premises for use as a full service fixed base operation facility providing aircraft fueling, transient line services, aircraft rental, aircraft maintenance and repair and other necessary aviation services and products for the public as described herein.

NOW THEREFORE, in consideration of the mutual promises and undertakings hereinafter set forth and for other good and valuable consideration, the receipt and

- 1 -

**EXHIBIT C**

**PAGE 025**

Exhibit 9

sufficiency of which are hereby acknowledged, it is mutually agreed by and between the undersigned parties as follows:

## SECTION 1. PREMISES.

The City leases to Lessee, and Lessee leases from the City, the Premises located at the Airport and depicted in the Site Plan attached hereto as Exhibit "A" and incorporated herein by reference.  Lessee acknowledges and agrees that it is in possession of the Premises and accepts the Premises in "as-is" condition.  The Premises contain existing buildings and other improvements ("Existing Improvements") shown in Exhibit A. Lessee has been in occupancy, possession and control of the Premises since December 16, 1997 and takes responsibility for the condition of the Premises, the Existing Improvements and all other leasehold improvements installed or located on the Premises from and after said date.

## SECTION 2. TERM.

**2.1.** **Commencement Date and Term.**  This Agreement shall be deemed to commence on **November 1, 2005** ("Commencement Date"), and shall continue until June 30, 2015 unless earlier terminated pursuant to the terms of this Agreement.

**2.2.** **Expiration Date.**  Unless terminated earlier in accordance with the terms of this Agreement, this Agreement shall expire and terminate on **June 30, 2015** ("Termination Date"), without the necessity of any notice from either City or Lessee to terminate this Agreement.  Lessee hereby waives notice to vacate or quit the Premises and agrees that City shall be entitled to the benefit of all provisions of law respecting the summary recovery of possession of the Premises from a tenant holding over to the same extent as if statutory notice had been given.  Lessee further agrees that if it fails to surrender the Premises at the expiration or termination of this Agreement in good condition, reasonable wear and tear excepted, Lessee shall be liable to City for any and all damages which City may suffer by reason thereof, and Lessee will indemnify, defend and hold harmless City against all claims and demands made by any succeeding tenants against City.

**2.3.** **No Hold Over Tenancies.**  If Lessee shall be in possession of the Premises after the expiration of the Term, without the express or implied consent of City, then the tenancy under this Agreement shall terminate and City shall be entitled to the benefit of all provisions of law respecting the summary recovery of possession of the Premises from a tenant holding over.  The acceptance by City of monthly rent from Lessee after such expiration or earlier termination of the Agreement shall not result in a renewal of this Agreement or an extension of the Term of this Agreement.

- 2 -

**EXHIBIT C**

**PAGE 026**

Exhibit 9

The City expressly reserves the right to require Lessee to surrender possession of the Premises upon the expiration of the Term, or upon the earlier termination hereof, to reenter the Premises, and to assert any remedy at law or in equity to evict Lessee and/or collect damages in connection with such holding over.

**2.4.** **Surrender.** Upon the expiration or any earlier termination of this Agreement, Lessee, at its sole cost and expense, shall surrender up and deliver possession of the Premises to City, in a clean condition, and in the same good operating condition and repair as it exists on the Execution Date, reasonable wear and tear excepted, and subject to all requirements of Section 8.4 of this Agreement, including, without limitation, Lessee's obligations to perform environmental remediation of the Premises.

Lessee agrees that if it fails to surrender the Premises at the expiration or termination of the Agreement in good operating condition, reasonable wear and tear excepted, or if Lessee fails to satisfy its environmental remediation obligations set forth in Section 8.4 of this Agreement, Lessee shall be liable to City for any and all damages which City shall suffer by reason thereof and Lessee will indemnify City against all costs and expenses to restore the Premises to good operating condition, reasonable wear and tear excepted and to perform Lessee's environmental remediation obligations under this Agreement.

**2.5.** **Survival.** The provisions of this Section 2 shall survive the expiration or earlier termination of this Agreement.

## SECTION 3. USE OF THE PREMISES.

Lessee agrees that the Premises shall be used only for the required activities and services identified in Section 3.1, or the permitted activities and services identified in Section 3.2. Lessee shall not use or permit the Premises to be used for any other purpose without the City's prior written consent, which may be granted or withheld in the City's sole and complete discretion.

**3.1.** **Required Activities and Services.** During the Term of this Agreement, Lessee shall conduct the following activities and provide the following services on the Premises to the public consistent with the provisions of applicable federal, state and local laws and regulations, including, but not limited to, the Santa Monica Municipal Code:

(a)   Provide aircraft tie-down space and aircraft storage facilities for rental, which conform to federal, state and local requirements. Lessee shall be required to provide and maintain 49 aircraft parking spaces in either open tie-down space or aircraft storage facilities for based and transient aircraft.

- 3 -

**EXHIBIT C**

**PAGE 027**

Exhibit 9

(b)    Provide rental of commercial leasehold space for aviation-related uses.

(c)    Provide ramp services for transient aircraft.

(d)    Provide aircraft fueling services from City-approved facilities, including the sale, dispensing and storage of aviation petroleum products from one underground storage tank.

(e)    Provide aircraft maintenance and repair, overhaul or modification of aircraft.

(f)    Operation of a flight and ground school.

(g)    Provide rental or lease of aircraft.

3.2.    **Permitted Activities and Services.**  In addition to the above required activities and services, Lessee may conduct the following activities and provide the following services on the Premises consistent with the provisions of the Santa Monica Municipal Code:

(a)    Retail or wholesale sale of aircraft parts, components, accessories and allied equipment

(b)    Sale of new and used avionics and electronic equipment and aircraft instruments.

(c)    Sale of pilot supplies and accessories.

(d)    Retail or wholesale sale of aircraft.

(e)    Rental or lease of aircraft.

(f)    Operation of a UNICOM radio, transmitter and receiver.

(g)    Washing, detailing and waxing of aircraft.

(h)    Upholstery, cabinetry and interior services for aircraft.

(i)    Parachute, fire extinguisher and oxygen services for aircraft.

- 4 -

**EXHIBIT C**

**PAGE 028**

Exhibit 9

(j)    Aircraft charter operations, subject to compliance with all federal, state and local laws and regulations, including, but not limited to, Santa Monica Municipal Code, Subchapter 10.04.06.

(k)    Filming activities subject to the approval in advance by the Airport Director or his or her designee.

(l)    Such other uses as the Airport Director may approve in writing from time to time.

**3.3.**    **Prohibited Activities and Services.**  Other than the activities and services set forth in Sections 3.1 and 3.2, above, Lessee is expressly prohibited from conducting any other activity or providing any other services at the Premises. Lessee is specifically prohibited from the following:

(a)    Engaging in the storage of motor vehicles, trailers, boats or other recreational vehicles.

(b)    Engaging in any operation which uses the leasehold as a base for the substantial use of helicopters, or any operation involving the repetitive, frequent or continuous use of helicopters.

(c)    Engaging in any type of helicopter flight training or helicopter pattern flying.

(d)    Engaging in any activity or providing any service likely to violate the night-time curfew on aircraft take-offs.

(e)    Salvage yard activities.

(f)    Operation of any ramp services during night-time departure curfew hours as set forth in Santa Monica Municipal Code Section 10.04.04.080.

(g)    Overnight camping or residential uses.

(h)    Any activity inconsistent or in contravention of the requirements of any applicable federal, state or local law or regulation.

**3.4**    **High Levels of Service.**  Lessee shall endeavor to provide high levels of service consistent with industry standards for the type of service being provided to the public at the Airport.  Lessee or its sublessees shall keep and maintain an adequate staff and an appropriate stock of merchandise to service and supply the usual and ordinary

- 5 -

**EXHIBIT C**

**PAGE 029**

Exhibit 9

demands and requirements of its customers.  Lessee shall provide the services in accordance with all federal, state and local laws, rules and regulations.

## SECTION 4.  RENT.

**4.1.    Monthly Base Rent.**  For use and occupancy of the Premises, Lessee agrees to pay to the City the sum of **FOUR THOUSAND DOLLARS AND NO CENTS ($4,000.00 )** for each month, without set off or deduction, during the Term of this Agreement (hereinafter "Monthly Base Rent").  Lessee shall pay Monthly Base Rent to the City on or before the first day of each month.  In the event this Agreement is in effect for less than a full calendar month, Lessee shall pay a pro rata portion of the Monthly Base Rent for the fraction of the month that the Agreement is in effect.  In the event that the City provides an invoice to Lessee, this invoice shall be deemed a courtesy to the Lessee and the Lessee's obligation to pay rent shall be based upon the provisions of this Agreement.

The Monthly Base Rent shall commence on the Execution Date of this Agreement.

**4.2.    CPI Adjustments.**  During the Lease Term the Monthly Base Rent may be subject to consumer price index adjustments ("CPI" as defined below).  The first CPI adjustment may occur on **July 1, 2007** ("First Adjustment Date").  Additional CPI adjustments may occur on July 1, 2010 and July 1, 2013.  The adjustments to the Monthly Base Rent shall be calculated as follows:

**4.2.1.    First Adjustment Date.**  For the First Adjustment Date, the Monthly Base Rent shall be adjusted on **July 1, 2007** to an amount calculated by multiplying the Monthly Base Rent for June 2007 by a fraction in which the numerator shall be equal to the CPI published for June 2007 and the denominator of which shall be equal to the CPI for November 2005.

**4.2.2.    Second Adjustment Date.**  The Monthly Base Rent may be adjusted on **July 1, 2010** to an amount calculated by multiplying the Monthly Base Rent for June 2010 by a fraction in which the numerator shall be equal to the CPI published for June 2010 and the denominator of which shall be equal to the CPI for June 2007.

**4.2.3.    Third Adjustment Date.**  The Monthly Base Rent may be adjusted on **July 1, 2013** to an amount calculated by multiplying the Monthly Base Rent for June 2013 by a fraction in which the numerator shall be equal to the CPI published for June 2013 and the denominator of which shall be equal to the CPI for June 2010.

City shall, as promptly as practicable after the beginning of each Rental Year when the Adjustment Dates occur, give notice to Lessee of the resulting adjustment, if any, in the Monthly Base Rent as determined by City.  City's computation thereof shall be

- 6 -

**EXHIBIT C**

**PAGE 030**

Exhibit 9

conclusive and binding (except for mathematical error), but shall not preclude any further adjustment which may be required in the event of a published amendment of the CPI. Until receipt of City's notice, Lessee shall pay monthly installments of Monthly Base Rent at the rate applicable to the immediately preceding Rental Year in which the Adjustment Date occurs. If at the time of City's notice the total of the monthly installments of Monthly Base Rent actually paid by Lessee with respect to the elapsed portion of the current Rental Year is less than the amount of Monthly Base Rent required to be paid for such period as indicated in City's notice, Lessee shall immediately pay to City the amount of the deficiency.

    **4.2.4.**   <u>Definitions</u>. For purposes of this section, the following definitions shall apply:

    A.     The term "Rental Year" shall mean that fiscal year of 12 consecutive months commencing on July 1st and continuing through the next June 30th; provided, however, that in no event shall a Rental Year be shorter than 12 full calendar months.

    B.     The term "CPI" shall mean the percentage increase in the cost of living index as measured by the "Consumer Price Index for All Urban Consumers" published by the Bureau of Labor Statistics of the United States Department of Labor for Los Angeles-Riverside-Orange County, California (1982-84=100). In the event the CPI shall hereafter be converted to a different standard reference base or otherwise revised, such conversion factor, formula or table for converting the CPI as may be published by the Bureau of Labor Statistics shall be used, or if the Bureau of Labor Statistics shall not publish the same, then such conversion factor, formula or table selected by City as may be published by any other nationally recognized publisher of similar statistical information shall be used. In the event the CPI shall cease to be published, then there shall be substituted for the CPI such other index of similar nature as is then generally recognized and accepted for like determinations of purchasing power, as City shall select.

    **4.2.5.** <u>Minimum and Maximum Adjustments</u>. The CPI adjustments shall be subject to a minimum increase adjustment of 2% per year and a maximum increase adjustment of 5% per year.

    **4.2.6.** <u>No Waiver</u>. In the event that the CPI is unavailable as of the Adjustment Date, Lessee shall continue to make payments for the Monthly Base Rent based on the monthly installments at the then current amount until notified by the City of the CPI increase. Any delay or failure of City in computing or billing Lessee for the

- 7 -

**EXHIBIT C**

**PAGE 031**

Exhibit 9

escalation of Monthly Base Rent based upon a CPI increase shall not constitute a waiver of or in any way impair the continuing obligation of Lessee to pay such CPI increase. Lessee shall provide a retroactive payment to City of the CPI increase from the Adjustment Date to the date of notification of such increase.

     4.3    **Fuel Flowage Fees.**  In addition to the Monthly Base Rent paid to the city set forth above, Lessee shall pay to the City fuel flowage fees equivalent to six cents ($.06) per gallon for each gallon of aviation fuel and fifteen cents ($.15) for each gallon of aviation oil sold, delivered or pumped on the Premises for each calendar month (collectively referred to as "Fuel Flowage Fees") as additional rent. Fuel Flowage Fees shall be subject to adjustment or revision by City at its sole and complete discretion based upon rates competitive with neighboring municipal airports within 100 miles of the Santa Monica Municipal Airport.

     Lessee shall pay Fuel Flowage Fees to the City on a monthly basis no later than the 15th day of each calendar month for the preceding calendar month during the term of this Agreement. Fuel Flowage Fees shall be computed on the basis of the following: (i) the supplier's meter tickets provided by the tanker truck making the delivery or from refinery meter tickets provided to the carrier at the time the tanker truck is loaded; and (ii) invoices detailing the quantity of oil delivered to the Premises. The number of U.S. gallons shown on the tickets and invoices as delivered shall be multiplied by the fuel flowage fee established by the City. The product of that computation shall be the Fuel Flowage Fees for that calendar month.

     4.4.    **Late Charges As Additional Rent.**  Lessee acknowledges that late payments by the Lessee of its monetary obligations to the City, including Monthly Base Rent, will cause the City to incur costs not contemplated by this Agreement. The exact amount of these costs will be extremely difficult to ascertain. Therefore, if Lessee fails to pay any of its monetary obligations to the City, including Monthly Base Rent, within ten (10) calendar days from the date the payment is due, late charges in the amount of 10 percent (10%) per month of the unpaid amount shall be paid by the Lessee as Additional Rent. Lessee shall pay this amount for each calendar month in which all or any part of any payment to the City remains delinquent for more than ten (10) calendar days after the due date. The parties agree that late charges represent a fair and reasonable estimate of the costs the City will incur for late payment of any monetary obligations. Acceptance of the late charges by the City shall not constitute a waiver of the Lessee's default with respect to the overdue amount or prevent the City from exercising any of its rights and remedies pursuant to this Agreement. Lessee shall pay the late charge as Additional Rent with the next installment of Monthly Base Rent.

     4.5.    **Payments to the City.**  Payment shall be made by check or money order made payable to the City of Santa Monica and shall be mailed or delivered to the following address:

- 8 -

**EXHIBIT C**

**PAGE 032**

Exhibit 9

City of Santa Monica
Airport Administration Building
3223 Donald Douglas Loop South, Suite 3
Santa Monica, California  90405
Attention:  Airport Director or Airport Manager

**4.6.     Application of Payment.**  All payments received by the City from Lessee shall be applied to the oldest payment obligation owed by Lessee to City.  No designation by Lessee, either in a separate writing or on a check or money order, shall modify this Agreement or have any force or effect.

**4.7.     Security Deposit,**  Lessee has deposited with the City the sum of **EIGHT THOUSAND DOLLARS AND NO CENTS ($8,000.00)** as a security deposit for the performance of its obligations pursuant to this Agreement.  If Lessee defaults on any provision of this Agreement, City may, without prejudice to any other remedy it has, apply all or part of the security deposit to: (a) any Monthly Base Rent or other sum in default; (b) any amount that the City may spend to repair damage caused by Lessee or its sublessee; or (c) any expense, loss, or damage that City may suffer because of Lessee's default.  If the City applies all or part of the security deposit, and if the City does not elect to terminate the Agreement, the Lessee shall provide the City with sufficient funds to restore the full amount of the security deposit within ten (10) days after demand by the City.

**4.8.     Documents and Records.**  Lessee agrees to provide the City with a written summary of gross receipts from the Premises upon written request.  In addition, Lessee agrees to keep and maintain at the Premises a full, permanent and accurate set of books and records of all sales of merchandise and revenue derived from its conduct of business in, at or from the Premises from which gross sales generated from the Premises can be determined and all supporting records.

All such records shall be maintained in accordance with generally accepted accounting principles and shall be clearly identified and readily accessible.

Lessee further agrees that it will keep, retain, and preserve for at least three (3) years all records, books, bankbooks, or duplicate deposit books, and other evidence of gross sales and Fuel Flowage Fees generated from the Premises for such year.

City shall have the right, upon reasonable notice and at City's expense, to inspect and audit Lessee's books and records pertaining to this Agreement and to make copies of any such books and records to verify the payment generated from the Premises.  City may make such audit at any time during normal business hours upon reasonable notice.  If City's audit discloses an error of five percent (5%) or more in Fuel Flowage Fees, as reported by Lessee, which results in an underpayment of the amounts due under Article 4

- 9 -

**EXHIBIT C**

**PAGE 033**

Exhibit 9

of this Agreement, then Lessee shall pay the cost of City's audit computed on the basis of four (4) times the direct payroll of the audit staff completing the audit and audit report. Lessee shall immediately pay all deficiencies to the City.

## SECTION 5. COMPLIANCE WITH LAW.

**5.1.** _Compliance With All Laws._ During the term of this Agreement, Lessee shall comply with all applicable federal, state and local laws, ordinances, codes and regulations including, but not limited to, Chapter 10.04 of the Santa Monica Municipal Code ("Airport Code") and all FAA regulations applicable to fixed based operations.

**5.2.** _Fixed Based Operations Shall Be In Full Compliance with the Airport Code._ Lessee understands the importance of the City's airport noise abatement program, and shall operate its fixed based operations in a manner, which will be in full compliance with the Airport Code, the noise abatement program, and all rules, regulations and procedures. Lessee agrees to inform its employees, customers and invitees of all noise abatement programs, rules, procedures, and any regulations relating thereto.

**5.3.** _Cooperation in Enforcement of Airport Code._ Lessee shall cooperate fully with the City in the enforcement of the provisions of the Airport Code and regulations of the Noise Abatement Program implemented by the City. If Lessee's employees or agents become aware of any circumstance which could constitute a violation of the Airport Code, regulations, or Noise Abatement Program by any of its customers or invitees, Lessee shall inform the Airport Director or his or her designee immediately.

**5.4.** _No Services To Excluded Pilots, Aircraft or Owners of Aircraft._ Lessee shall be prohibited from providing any services to any pilot, aircraft or owner of an aircraft excluded from the Santa Monica Airport pursuant to the Airport Code. Lessee shall also be prohibited from providing services to any pilot, aircraft or owner of aircraft for which Lessee does not have adequate facilities, services or personnel. Lessee shall also not permit any outside vendors from performing services from or at the Premises without full compliance with all applicable laws and regulations, including, but not limited to, obtaining all applicable permits and licenses.

**5.5.** _Permits and Licenses._ Lessee shall obtain and maintain during the term of this Agreement, at Lessee's sole expense, all licenses, permits and certificates that may be required in connection with the operation of the facility and for the provision of services set forth in this Agreement, including, but not limited to, all FAA and City of Santa Monica licenses, permits and certificates.

**5.6.** _Federal Requirements._ Pursuant to the requirements of the FAA, the parties agree as follows:

- 10 -

**EXHIBIT C**

Exhibit 9

**5.6.1.  Compliance with Federal Requirements.**  Lessee agrees to comply with all federal requirements, including but not limited to, statutes, regulations, Executive Orders, agency regulations, orders or advisory circulars.

**5.6.2.  Nondiscrimination.**  Lessee agrees that it will not discriminate against any person on the account of disability, sexual orientation, condition of having AIDS, race, color, creed, religion, sex, age, marital status, national origin or ancestry with respect to (i) the use, occupancy and possession of the Premises, and (ii) the operations, activities or services of the Lessee.

**5.6.3.  Right to Improve Landing Area .**  The City, as the airport owner, reserves the right to further develop or improve the landing area of the Airport as it sees fit, regardless of the desires or views of the Lessee and the Lessee shall not interfere or hinder such development or improvement.

**5.6.4.  Maintenance and Repair of Landing Area and Public Facilities .**  The City, as the Airport owner, reserves the right, but shall not be obligated to the Lessee to maintain and to keep in repair the landing area of the airport and all publicly owned facilities of the Airport, together with the right to direct and control all activities of the Lessee in this regard.

**5.6.5.  Subordination of this Agreement.**  This Agreement shall be subordinate to the provisions and requirements of any existing or future agreement between the City and the United States, relative to the development, operation and maintenance of the Airport.

**5.6.6.  Right of Flight Easement .**  There is reserved to the City, its successors and assigns, for the use and benefit of the public, a right of flight for the passage of aircraft in the airspace above the surface of the leased premises.  This public right of flight shall include the right to cause in said airspace any noise inherent in the operation of any aircraft used for navigation or flight through said airspace or landing at, taking off from or operating on the Airport premises at the Santa Monica Municipal Airport.  Notwithstanding the foregoing, this reservation of a right of flight easement shall not operate to deprive the Lessee, its officers, agents, invitees or employees of any rights they may have against any operator of aircraft or other third parties responsible for negligence or careless operation of aircraft.

**5.6.7.  Part 77 FAA Notification .**  Lessee agrees to comply with the notification and review requirements covered in Part 77 of the Federal Aviation Regulations in the event future construction of a building is planned for the leased premises or in the event of any planned modification or alteration of any present or future building or structure situated on the leased premises.

- 11 -

**EXHIBIT C**

**PAGE 035**

Exhibit 9

**5.6.8. Height Restrictions.** The Lessee, by accepting this Agreement, expressly agrees for itself, its successors and assigns, that it will not erect nor permit the erection of any structure or object, nor permit the growth of any tree, or landscaping in contravention of Part 77 of the Federal Aviation Regulations.

**5.6.9. Prohibition on Interference with Landings and Take-Offs.** The Lessee, by accepting this Agreement, expressly agrees for itself, its successors and assigns, that it will not make any use of the leased premises in any manner which might interfere with the landing and taking off of aircraft or otherwise constitute a hazard. In the event the aforesaid covenant is breached, the City reserves the right, but not the obligation, to enter upon the leased premises and cause the abatement of such interference at the expense of the Lessee.

**5.6.10. No Exclusive Right Granted .** It is understood and agreed that nothing herein contained shall be construed to grant or to authorize the granting of an exclusive right within the meaning of 49 U.S.C §40103(e) and §47107(a)(4), as may be amended from time to time.

**5.6.11. Federal Control of Airport .** This Agreement and all of the provisions hereof shall be subject to whatever right the United States Government now has or in the future may have or acquire, affecting the control, operation, regulation and taking over of said airport or the exclusive or nonexclusive use of the Airport by the United States during the time of war or national emergency.

**5.6.12. Nondiscriminatory Services and Pricing .** The Lessee will furnish services on a reasonable, and not unjust discriminatory basis to all users and charge reasonable, and not unjustly discriminatory prices for each unit or services, provided that the Lessee may be allowed to make reasonable and nondiscriminatory discounts, rebates, or other similar types of price reductions to volume purchasers.

## SECTION 6.   LESSEE'S OBLIGATIONS

During the term of this Agreement, Lessee agrees to operate the fixed based operation on the Premises in the following manner:

**6.1. Highest Level of Service.** Lessee shall endeavor to provide the highest level of service to the public at the Santa Monica Municipal Airport. Lessee shall keep and maintain an adequate staff and an appropriate stock of merchandise and trade fixtures to service and supply the usual and ordinary demands and requirements of its customers. Lessee shall provide the services in accordance with all federal, state and local laws, rules and regulations.

- 12 -

**EXHIBIT C**

**PAGE 036**

Exhibit 9

**6.2.   Obtain and Maintain All Necessary Licenses and Permits.**
Lessee shall obtain and maintain all necessary licenses and permits to conduct its fixed based operations on the Premises.

**6.3.   Fuel Supplier Agreement(s).**  Lessee shall enter into written agreements with all fuel supplier(s) to the Premises which contain the following provisions:  (i) the fuel supplier(s) shall indemnify the City from any and all loss, damage, cost, expense, liability, claims, demands, suits, attorneys' fees, and judgments arising directly or indirectly from or in any manner related to the delivery of aviation fuel; (ii) the fuel supplier(s) shall provide evidence of insurance coverage to City in an amount to be designated by the Risk Manager; and (iii) the fuel supplier(s) shall make available to City at reasonable times upon written request by the City, its records of transactions involving delivery of aviation fuel to Lessee for purposes of auditing Lessee's performance under this Agreement.  Copies of all agreements with fuel supplier(s) shall be delivered to the City's Airport Director prior to the commencement of the first fuel delivery by that supplier.

**6.4.   Fuel Storage and Delivery.**  Unless otherwise specified by the City, all aviation fuel deliveries to the Premises by any supplier shall be placed into the underground storage tank designated by the City.

**6.5.   Fueling Vehicles.**  All fueling vehicles used by Lessee for fueling, defueling or refueling operations at the Premises or other locations at the Airport shall conform to the most stringent safety regulations and shall be operated only by persons qualified and trained in fueling operations.

**6.6.   Retail Fuel Pricing.**  It is the intent of the parties to ensure that the retail price per gallon of aviation gasoline ("AvGas") shall remain competitive with the AvGas selling price in comparable FBOs in the region to provide the consumer with competitive prices.  Accordingly, the establishment of the retail price per gallon of AvGas dispensed to the public shall be subject to the following procedure.

**6.6.1.   Submission of an AvGas Retail Price Justification Report.**
On a monthly basis, Lessee shall submit a AvGas Retail Price Justification Report ("AvGas Report") to the Airport Director for approval on a form preapproved by the City.  The AvGas Report shall contain all of the following information:

A.   The wholesale cost of AvGas purchased from Lessee's fuel supplier;

B.   The current per gallon rate of applicable taxes and flowage fees;

- 13 -

**EXHIBIT C**

**PAGE 037**

Exhibit 9

C.   The results of Lessee's survey of the selling price (not posted price) of AvGas at FBOs at specific airports in the region, including Corona, Fullerton, Hawthorne, Whiteman, Riverside, Montgomery, Camarillo airports and other airports approved by the City. The City will have the discretion to adjust the list of specific airports which are the subject of the survey pursuant to this Section 6.6.1. The survey shall indicate both self serve and truck refueling price. The survey shall list the FBO contacted, brand of fuel, contact person and telephone number; and

D.   The proposed retail AvGas selling price (not posted price) per gallon for self serve and full serve truck refueling. Under no circumstances shall the proposed retail selling price exceed the lowest selling price of AvGas of the FBO's surveyed.

6.6.2. **Review by the Airport Director.**   The Airport Director will review the AvGas Report and notify the Lessee whether the proposed price is approved or disapproved. Absent prior approval of from the Airport Director, Lessee may not adjust the AvGas selling price.

6.7.   **Compliance With Environmental Requirements.**   Lessee shall be responsible for the use, operation and maintenance of the existing underground storage tank ("Existing UST"), and any new underground storage tank installed by the City, in a manner that is in compliance with applicable municipal, state and federal law, including, but not limited to Santa Monica Municipal Code, Chapter 8.104. If Lessee has knowledge of, or has reasonable cause to believe, that a spill, release, discharge, or exposure to any "hazardous substance" as defined in Santa Monica Municipal Code Section 8.104.020 has occurred in, on or about the Premises, Lessee shall immediately give written notice of such fact to City. Lessee shall also immediately give Lessor a copy of any statement, report, notice, registration, application, permit, claim, action or proceeding given to, or received from, any governmental entity or private party, concerning the presence, spill, release, discharge of, or exposure to, any "hazardous substance" or contamination in, on, or about the Premises, including but not limited to, all documentation pertaining to such occurrence.

///
///
///
///
///

- 14 -

**EXHIBIT C**

Exhibit 9

## SECTION 7.   MAINTENANCE AND REPAIR OF THE PREMISES AND LEASEHOLD IMPROVEMENTS; CONSTRUCTION OF REQUIRED LESSEE IMPROVEMENTS.

7.1     **Maintenance and Repair of Premises.**  Lessee expressly agrees to maintain and to keep, at its sole cost and expense, the Premises and all Leasehold Improvements thereon in a safe, clean and sanitary condition.  For purposes of this Agreement, Leasehold Improvements ("Leasehold Improvements") shall include all Existing Improvements, Required Lessee Improvements as described below, and any additional improvements made to the Premises during the Term hereof.  All pavement surfaces used for aircraft transit or parking shall be maintained in accordance with FAA design standards, including, without limitation, markings, lighting and physical condition. Lessee hereby consents to periodic inspections by City for the purpose of determining maintenance violations upon reasonable notice, except in an emergency, in which case no notice will be required.  Lessee further agrees to promptly correct each and every violation.  Lessee shall not allow refuse, garbage or trash to accumulate on or adjacent to the Premises, except on the date of scheduled pick-up service, and then only in appropriate receptacles located in areas designated for such purposes.

7.2.     **Repairs To Be In Compliance With Law.**  Lessee shall make all necessary repairs to maintain the Premises and all Leasehold Improvements thereon, including the repairs or replacement of equipment, structures, or other physical improvements on the Premises, as well as painting, cleaning, and other upgrades. Repairs shall maintain the Premises in its current operational condition or the operational condition that exists following the completion of the Required Lessee Improvements under Section 7.4 hereof, less normal wear and tear.  All repairs shall comply with any and all applicable regulations, laws or ordinances of the United States, State of California, County of Los Angeles, City of Santa Monica or other governmental body including, but not limited to, the Federal Aviation Administration.

7.3.     **Alterations, Additions or Changes to the Premises Require Prior Written Approval By City.**  Lessee shall obtain prior written City approval for any alterations, additions, or changes to the Premises and improvements thereon, including the required Lessee improvements ("Required Lessee Improvements") described in Section 7.4 below.  The City may withhold its consent to any alterations, additions or changes in City's sole and complete discretion.

7.4     **Required Lessee Improvements.**
Lessee shall be responsible for the following required leasehold improvements (the "Required Lessee Improvements"):

- 15 -

**EXHIBIT C**

**PAGE 039**

Exhibit 9

7.4.1   <u>Painting</u>.  Lessee shall paint all structures on the Leasehold Premises prior to August 31, 2006 and shall paint all structures on the Leasehold Premises again during the period September 1, 2010 to August 31, 2011.

7.4.2   <u>Installation of Aircraft Tie-Down Chains</u>.  Following the pavement improvements on the aircraft ramp and tie-down areas, Lessee shall install aircraft tie-down chains consistent with the standards utilized by the City in the installation of its aircraft tie-down chains.  Lessee shall consult and secure the approval of the Airport Director or his or her designee in the process of installing these required aircraft tie-down chains.

7.4.3   <u>Ramp Lighting System</u>.  Lessee shall install and maintain a ramp lighting system.  The plans and schedule for the installation of the ramp lighting system shall be submitted for City approval no later than August 31, 2006, as part of the Facility Improvement Plan and Schedule described below.

7.4.4   <u>Facility Improvement Plan and Schedule</u>.  No later than June 30, 2006, Lessee shall prepare and submit, or cause to be prepared and submitted to the Airport Director or his or her designee, for approval, and incorporation into this Agreement as Exhibit "B", a facility improvement plan ("Facility Improvement Plan") which shall include all of the following:  (i) a detailed layout plan which reflects locations and detailed descriptions of all required Lessee improvements; (ii) a plot plan; (iii) preliminary plans and specifications for the construction of the Required Lessee Improvements; (iv) a detailed project schedule; and (v) the cost estimate and budget for the Required Lessee Improvements.  Lessee shall be responsible for the entire cost all Required Lessee Improvements.

7.4.5   <u>Building Permit and Required Approvals; Commencement of Construction</u>.  Lessee shall obtain all necessary approvals to construct the Required Lessee Improvements, obtain the issuance of any required building permits, and commence construction of the Required Lessee Improvements by August 31, 2006 or the construction commencement date set forth in the project schedule set forth in Exhibit B.

7.4.6   <u>Completion Dates for Required Lessee Improvements</u>.  Lessee shall diligently proceed and carry out construction of the Required Lessee Improvements and shall substantially complete the Required Lessee Improvements, as set forth in Exhibit B.

7.5.   <u>Limited Obligation of the City</u>.  City will make certain pavement improvements ("Pavement Improvements") to the Premises in an amount not to exceed $100,000.00 (One Hundred Thousand Dollars), as more particularly described in Exhibit B.  Except for these Pavement Improvements and any damage to the Premises proportionately caused by the City's negligence or willful misconduct, City has no

- 16 -

**EXHIBIT C**

**PAGE 040**

Exhibit 9

$5,000,000 Combined Single Limit per Occurrence
$5,000,000 Aggregate

2.   Ground Hangarkeepers Liability:
$500,000 per Aircraft
$1,000,000 per Occurrence

3.   Personal Injury Liability:
$1,000,000 per Occurrence
$1,000,000 Aggregate

4.   Premises Medical:
$5,000 per Person
$25,000 per Occurrence

B.   Business Automobile Liability Insurance shall cover liability arising out of any automobile (including owned, hired and non-owned autos). Coverage shall be written on Insurance Services Offices form CA 00 01, CA 00 05, CA 00 12, CA 00 20, or a substitute form providing equivalent liability coverage. If necessary, the policy shall be endorsed to provide contractual liability coverage.

C.   Aircraft liability insurance shall include coverage for owned, non-owned or hired aircraft.

D.   Property insurance policies shall contain a no co-insurance penalty provision. The Property policy or policies shall be endorsed to provide Business Interruption coverage to provide for the payment of twelve (12) months of Monthly Base Rent due City at the time of the loss.

E.   Environmental Liability insurance shall provide coverage for sudden and non-sudden pollution conditions to cover property damage, bodily injury and clean-up costs related to lessee's use or occupancy of the Premises to include any leak or spill associated with the storage tank located on the Premises.

9.3.   **Deductibles and Self-Insured Retentions.**

Any deductibles or self-insured retentions in excess of $10,000 must be declared to and approved by the City. Lessee shall provide a bond or other financial guarantee in a form reasonably acceptable to the City, guaranteeing payment of any deductible or self insured amounts in excess of $25,000.

- 20 -

**EXHIBIT C**

**PAGE 041**

Exhibit 9

**9.4.** **Other Insurance Provisions.**

The commercial general liability, business automobile liability, hangarkeepers' liability, aircraft liability and environmental impairment liability policies shall contain or be endorsed to contain the following provisions:

**A.** City of Santa Monica, each member of its City Council, Board and Commission, its officers, officials, employees, and volunteers ("Insured City Parties") are to be covered as additional insureds with respect to liability arising out of automobiles or aircraft owned, hired, or non-owned by Lessee; liability arising out of work or operations performed by Lessee or on behalf of Lessee; or aircraft under Lessee's care, custody, and control. under the CGL policy, using the Insurance Services Office additional insured endorsement form CG 20 11 or a substitute providing equivalent coverage. City and other additional insureds mentioned in this paragraph shall not, by reason of their inclusion as additional insureds, become liable for any payment of premiums to carriers for such coverage.

**B.** For any claims related to this Agreement, Lessee's insurance coverage shall be primary as respects the Insured City Parties. Any insurance or self-insurance maintained by the Insured City Parties shall be excess of Lessee's insurance and shall not contribute with it.

**C.** If any of the liability policies are written on a claims made basis, it shall be maintained continuously for a period of not less than three (3) years after the termination of this Lease. The "Retro Date" must be shown, and must be before the date of the Lease or commencement date of the Lease.

**9.5.** **Property Insurance.**

The policy or policies shall be endorsed to provide that the Insured City Parties be named as additional insureds as their interests may appear.

**9.6.** **Waiver of Subrogation.**

The Insurer (for property and workers' compensation only) shall agree to waive all rights of subrogation against the Insured City Parties for losses arising from activities and operations of Lessee under this Agreement.

///

- 21 -

**EXHIBIT C**

**PAGE 042**

Exhibit 9

**9.7.** **All Coverages.**

**A.** Each insurance policy required by this Section shall be endorsed to state that coverage shall not be cancelled except after thirty (30) days prior written notice by certified mail, return receipt requested and given to the City's Resource Management Department to the attention of the Airport Director or his or her designee.

**B.** The minimum amounts of insurance may be increased in accordance with increases, if any, reasonably determined by the City to be necessary to maintain policy limits from time to time in amounts customary and usual for premises comparable to the Premises, and such increases, if any, are to be made on a yearly basis on or about the commencement of each Rental Year.

**C.** If Lessee, for any reason fails to maintain insurance coverage which is required pursuant to this Agreement, the same shall be deemed to be a material breach of contract. City, at its sole option, may terminate this Agreement and obtain damages from Lessee resulting from said breach. Alternatively, City may purchase such coverage (but has no special obligation to do so), and the cost of same, including any interest on insurance premiums paid by City shall be deemed Additional Rent and shall be payable upon City's demand.

**9.8.** **Acceptability of Insurers.**

Insurance is to be placed with insurance with a current A.M. Best's rating of no less than A:6 unless otherwise approved by the City's Risk Manager.

**9.9.** **Verification of Coverage.**

Lessee shall furnish City with original certificates and amendatory endorsements effecting coverage required by this Section. The certificates and endorsements for each policy are to be signed by a person authorized by the insurer to bind coverage on its behalf. The certificates and endorsements shall be on forms provided by the City, or on other than the City's forms, provided these forms and endorsements conform to the City's requirements. All certificates and endorsements are to be received and approved by the City before occupancy occurs. The City reserves the right to require complete, certified copies of all required insurance policies, including endorsements, affecting the coverage required by these specifications at any time.

/ / /
/ / /

- 22 -

**EXHIBIT C**

**PAGE 043**

Exhibit 9

### 9.10. Lessee's Contractor's Insurance.

All coverages for contractors and subcontractors shall be subject to all of the requirements stated herein, except that any contractor must maintain a Commercial General Liability policy with limits of not less than $1,000,000 per occurrence (for contractors performing capital improvements and $1,000,000 per occurrence for contractors performing maintenance and routine repairs). Each contractor shall provide a "Builders' Risk insurance policy written on an "All Risk" or "Special Causes of Loss" basis in the amount equal to the completed value of the project with no co-insurance penalty provisions. The insurance shall be on a replacement cost basis and be provided on a completed value form.

### 9.11. Sublessees and Licensees.

Lessee shall include all sublessees and licensees using the Premises, and all consignors and bailors giving custody and control of personal property to Lessee, as additional insureds under its policies or shall furnish separate certificates and endorsements for each sublessee, licensee, consignor and bailor. All coverages for sublessees, licensees, consignors and bailors shall be subject to all of the requirements stated herein as required or modified by the City.

## SECTION 10. INDEMNIFICATION, DEFENSE AND HOLD HARMLESS.

Lessee agrees to indemnify, defend, and hold harmless the Insured City Parties from any and all loss, damage, cost, expense, liability, claims, demands, suits, attorneys' fees, and judgments arising directly or indirectly from or in any manner related to Lessee's possession, occupancy or use of the Premises or arising from or in any manner connected to Lessee's business, activities, operations, service or work conducted in or about the Premises, regardless of the active or passive negligence of the City, except as otherwise stated herein.

Lessee shall indemnify, defend and hold the Insured City Parties harmless from and against any and all claims, demands, actions, losses, damages, expenses, costs and the like, including but not limited to City's attorneys' fees and costs or the value of all legal services supplied to City, suffered or incurred by City by reason of Lessee's failure to timely surrender and vacate the Premises upon the expiration or earlier termination of this Agreement without the written consent of the City.

Lessee shall also indemnify, defend, and hold harmless the Insured City Parties from and against any and all loss, damage, costs, expense, liability, claims, demands, suits, attorneys' fees and judgments arising from or in any manner connected to the furnishing or supplying of any work, services, materials, equipment or supplies by any

- 23 -

**EXHIBIT C**

**PAGE 044**

Exhibit 9

persons, firms, corporations or other entities under the control or supervision of or invited by Lessee in, on or about the Premises.

Notwithstanding the foregoing, Lessee shall have no obligation to indemnify, defend or hold harmless Insured City Parties where the claim arises from or relates to willful and wanton misconduct or inaction that is directly attributable to one or more of the Insured City Parties.

The Lessee shall pay the City for any costs incurred in enforcing this Section. The provisions of this Section shall survive the termination of this Agreement with respect to any loss occurring prior to upon termination.

## SECTION 11.  CITY'S RIGHTS.

11.1.  **Ingress and Egress** .  The City reserves the right to enter the Premises at any time, in the case of an emergency, and otherwise at reasonable times, for the purpose of inspecting the condition of the Premises and for verifying compliance by Lessee with this Agreement and all applicable law and to employ experts and/or consultants in connection therewith and/or to advise Lessor with respect to Lessee's activities, including, but not limited to, the operation, use, monitoring, or maintenance, or removal of any Hazardous Material or storage tank on or from the Premises. For purposes of this Lease, "Hazardous Material or Materials" shall mean: (i) "hazardous substance" or "toxic substances," as defined by CERCLA; (ii) "hazardous waste," as defined by RCRA; (iii) "Hazardous Waste," "Extremely Hazardous Waste" or "Restricted Hazardous Waste," as those terms are defined by Sections 25115, 25117, or 25122-7 of the California Health and Safety Code, Division 20, Chapter 6.5, as amended or hereafter amended; (iv) any pollutant or contaminant or hazardous, dangerous or toxic chemicals, materials or substances within the meaning of any other environmental laws; (v) more than 100 gallons of crude oil or any fraction thereof that is liquid at standard conditions of temperature and pressure (60 degrees Fahrenheit and 14.7 pounds per square inch absolute); (vi) any radioactive material, including any source, special nuclear or by-product material as defined at 42 U.S.C. §2011 et seq., as amended or hereafter amended; and/or (vii) asbestos or PCBs in any form or condition.

11.2.  **Access for Environmental Tests or Work** .  The City reserves the right to access the Premises to perform any environmental tests and any other environmental work on the Premises. The City will provide the Lessee with prior notice of the date and location of any environmental tests or work to be performed on the Premises. Prior to the commencement of any environmental tests or work on the Premises, Lessee and Lessor will agree on a work plan that ensures continued operations during the period of such tests and work and, if necessary, the feasibility of an alternative location during such period of testing or work.

- 24 -

**EXHIBIT C**

**PAGE 045**

Exhibit 9

**11.3.   Maintenance and Repair of Underground Storage Tank.**   Lessee shall be responsible for the maintenance and repair of the underground storage tank (UST) installed on the Premises.

**11.4.   Right To Access.**   In addition to the rights set forth in Sections 11.1 and 11.2, above, the City shall have the right at all reasonable times to enter the Premises to: (a) inspect the Premises and all Leasehold Improvements; (b) show the Premises to prospective tenants; (c) serve, post and keep posted notices required by law or that the City considers necessary; (d) make repairs, replacements, alterations, or improvements to the Premises or Leasehold Improvements that the City considers necessary or desirable (without any obligation to do so); (e) take possession in the manner set forth in this Agreement; or (f) perform any covenants of Lessee that Lessee fails to perform.

**11.5.   Right to Regulate Access.**   In addition to the right to access, the City, in its sole and complete discretion, may at any time control and limit access to, in, or about the Santa Monica Municipal Airport for the public health, safety, welfare, or for any other municipal or public purpose.  The City reserves the right to regulate the hours and location of deliveries and restrict the activities of the Lessee with regard to all deliveries, loading, unloading and servicing of the Premises, and Lessee agrees to abide by the regulations of the City.  The City also reserves the right to restrict and control access routes to the Santa Monica Municipal Airport and the Premises during the days and hours which the Santa Monica Municipal Airport is closed or operations are at minimum levels.

## SECTION 12.  RESTRICTIONS ON ASSIGNMENTS OR SUBLEASES.

**12.1.   Assignment and Subletting Require Prior Written Consent from City.**   Lessee has been selected to lease the Premises in reliance upon business experience, reputation and stated unique expertise of the owner of Lessee and its skill and experience in operating fixed based operations.  Except as provided herein, Lessee shall not assign, hypothecate or transfer this Agreement or any interest herein or sublet the Premises or any portion thereof, by operation of law or otherwise, (generally, a "Transfer") to any person or entity ("Transferee") without the prior written consent of the City, which may be withheld in accordance with this Agreement.  Any attempt to Transfer without complying with the foregoing shall be null and void, and any assignee, sublessees, lienholder or transferee shall acquire no right or interest by reason of such attempted Transfer.  Any attempt by the Lessee to make a Transfer of its interest without the prior written consent and approval of the City shall be deemed a material breach of this Agreement.

**12.2.   Transfer of Corporate Shares.**   Any sale or transfer of all or substantially all of the stock, assets or other equitable interests of the Lessee that has the effect of a material change in the control of Lessee shall constitute a Transfer of this Agreement requiring the City's prior written approval pursuant to this Section.

- 25 -

**EXHIBIT C**

**PAGE 046**

Exhibit 9

**12.3.   Lessee's Application for Consent.** If Lessee desires to make a Transfer, Lessee must submit in writing to City the name of the proposed Transferee, the proposed Transferee's business to be conducted in the Premises, the terms and provisions of the proposed Transfer, information of the proposed Transferee pertaining to the requirements set forth in this Section, or other information as City may request. No request for a Transfer shall be considered by the City until receipt of the above information.

**12.4.   Grounds for Denying Consent** . Since the City would not enter into this Agreement but for the business experience, reputation and expertise of A T E of California, Inc., any proposed Transferee shall not be approved unless the City has determined, as minimum requirements, that such proposed Transferee has (a) adequate business experience in operating similar types of establishments to fulfill Lessee's obligations set forth in this Agreement; (b) a credit quality reasonably satisfactory to fulfill Lessee's obligations under this Agreement and verified by the City;  (c) the personal character, reputation and integrity of the proposed Transferee and its principals and operational officers and owners are of the at least the same caliber as the Transferor, and (d) the proposed Transferee agrees to expressly assume all of Lessee's obligations under  this Agreement  and all liability arising from the condition of the Premises during Lessee's occupancy and use of the Premises,  such assumption of obligations including, without limitation, all monetary obligations and required environmental remediation under this Agreement.  City may establish other reasonable requirements of the proposed Transferee, and subsections (a), (b) (c) and (d) of this Section are not to the exclusion of any other reasonable requirements which the City may establish.

**12.5.   Conditions to Consent.** Prior to any request for City's consent to any Transfer, all of the following conditions shall be met:

   A.   Subject to the requirement for an express written assumption of obligations by the Transferee, as described in Section 12.4 above, the original named Lessee shall not be relieved of its obligation to pay Monthly Base Rent which accrues on and after the date of City's written approval of the Transfer, and to perform all other obligations to be performed by Lessee hereunder provided that any such approved Transfer is evidenced on City approved forms.

   B.   Lessee shall reimburse City for City's attorneys' fees incurred or the value of attorneys' services received in connection with the review, processing and documentation of such Transfer request.

   C.   Lessee shall inform City of any and all compensation it receives in connection with any Transfer.  City shall have the right to request

- 26 -

**EXHIBIT C**

Exhibit 9

and receive from Lessee any additional information reasonably related thereto.

D.   The Transferee shall agree that in the event that City gives notice to any sublessee that the Transferee Lessee is in monetary default under this Agreement, sublessee shall thereafter make any sublease payments directly to the City.  These payments shall be received by the City without any liability pursuant to the sublease, and sublessee shall agree to attorn to the City should this Agreement be terminated for any reason, except that in no event shall the City be obligated to accept an attornment.

E.   Any such consent shall be effected on forms approved by City.

F.   Lessee shall not be in default hereunder in any respect, nor shall any event have then occurred which, with the giving of notice or passage of time or both, would constitute a default under this Agreement which has not been cured or waived.

G.   Any such Transferee must agree to assume, be bound by and perform all of the terms, covenants and conditions of this Agreement, subject to the condition that City shall not be bound to any provision of any agreements pertaining to such Transfer to the extent such agreement grants rights not possessed by Lessee against City.

H.   One executed copy of any and all written instruments evidencing or relating to any such Transfer shall be delivered to City. City agrees not to disclose any confidential information which may be contained therein, except as otherwise required by applicable law.

I.   All sublessees must obtain and maintain a Santa Monica Commercial Operations Permit, as well as all other applicable permits and licenses, during the entire term of the sublease.

**12.6.  Acceptance of Rent from Transferee.**  The acceptance by City of the payment of Rent following any assignment or other transfer prohibited by this Section shall not be deemed to be a waiver of any right or remedy of City hereunder.

## SECTION 13.  COVENANT AGAINST LIENS.

Lessee shall not be the cause or object of any liens or allow any liens to exist, attach to, or be placed on, or encumber City's interest in the Premises by operation of law

- 27 -

**EXHIBIT C**

**PAGE 048**

Exhibit 9

or otherwise.  Lessee shall keep the Premises free and clear of any mechanic's liens, and other liens, and liens for labor, services, supplies, equipment, or material furnished or claimed to have been furnished to the Lessee or the Premises.  If any lien is attached or Lessee receives notice of any lien, Lessee shall cause the lien to be released and removed from the record or provide documentation of adequate surety for payment of the lien amount within five (5) business days from receipt of notice of lien, and shall notify the City of the existence of the lien.  Despite any other provision of this Agreement, if the lien is not released and removed by Lessee, or if Lessee fails to demonstrate adequate surety for payment of the lien amount, the City may take all action necessary to release and remove the lien.  Any surety obtained to secure payment of any lien hereunder shall be in a form and of a duration approved by the City.  All expenses, including reasonable attorneys' fees, incurred by City in connection with the lien shall be considered Additional Rent by the City under this Agreement and shall be immediately due and payable by the Lessee.

## SECTION 14.  TAXES AND ASSESSMENTS.

**14.1**   **Lessee's Obligation to Pay Taxes** .  The term "Tax Year" shall mean and refer to each twelve (12) month period (deemed, for the purpose of this Section, to have 365 days) established as the real estate tax year by the taxing authorities having lawful jurisdiction over the Premises.  Lessee shall pay in each Tax Year during the Term, directly to the appropriate taxing authorities, all real estate taxes, bonds, levies or charges, ad valorem taxes and assessments, general and special assessments, taxes on the Premises, or any other tax imposed upon or levied against real estate or upon owners of real estate, including taxes upon Leasehold Improvements payable with respect to or allocable to the Premises, all land and all buildings and improvement situated thereon, whether assessed to the Premises or to City.  Any taxes to be paid by Lessee under this Section shall be paid directly to the proper taxing authorities at least ten (10) days before due.

**14.2.**   **Personal Property Taxes.**  This Agreement may create a possessory interest in public property which is subject to taxation.  In the event possessory interest is created, Lessee shall pay any and all taxes levied on such interest.  In addition, Lessee shall pay to the appropriate agency not less than 10 days prior to delinquency, any and all sales, excise, and other taxes and license fees or other charges levied, imposed or assessed by any taxing or levying authority including the State of California and County of Los Angeles whether on its goods sold or on its Leasehold Improvements, equipment, furniture, or personal property in or about the Premises (collectively, "Personal Property Taxes").  In the event any or all of Lessee's Leasehold Improvements (as herein defined), equipment, furniture, fixtures or personal property shall be assessed with the real property or as Taxes charged to City, Lessee shall pay to City all such Personal Property Taxes within 10 days after delivery to Lessee by City of a statement in writing setting forth the amount of such Personal Property Taxes applicable to Lessee's property.

- 28 -

**EXHIBIT C**

**PAGE 049**

Exhibit 9

**14.3   Reservation of Rights.**  Lessee reserves the right to contest any federal, state or local tax assessment of any kind provided that Lessee agrees to indemnify, defend and hold harmless the City against any damages arising from such contest.

## SECTION 15.  UTILITIES.

**15.1   Utilities Costs.**  Utilities will be separately metered and Lessee shall pay all charges for all heat, water, gas, electricity, light, power, telephone and sewer or other services used by it and supplied by City, a public utility or public authority, or any other person, firm or corporation.

**15.2   Discontinuances and Interruptions of Utility Services.**  City shall not be liable to Lessee in damages or otherwise (a) if any utility shall become unavailable from any public utility company, public authority or any other person or entity (including City) supplying or distributing such utility, or (b) for any interruption in any utility service (including, without limitation, any heating, ventilation or air-conditioning) caused by failure to pay such utility services, the making of any necessary repairs or improvements or by any cause beyond City's reasonable control, and the same shall not constitute a termination of this Agreement or an eviction of Lessee.

## SECTION 16.  SIGNS, LIGHTS AND ADVERTISEMENT.

Lessee must submit plans for all signs, outside lighting and advertisement to the Airport Director, or his or her designee, for prior approval.  All signs, outside lighting and advertisement shall be in compliance with the requirements, regulations and ordinances of the City of Santa Monica.  Additionally, Lessee shall comply with all regulations of the Federal Aviation Administration pertaining to signage and lighting of the Premises.  Lessee shall maintain adequate lighting and illumination of the Premises.

## SECTION 17.  DAMAGE OR DESTRUCTION TO THE PREMISES OR IMPROVEMENTS.

**17.1.   Notice of Damage to the Premises.**  Lessee agrees to notify the City immediately of any damage to the Premises or Leasehold Improvements resulting from fire, earthquake, or any other identifiable event of a sudden, unexpected or unusual nature where such damage exceeds the sum of $10,000.

**17.2.   Repair or Rebuild the Premises.**  In the event the Premises or the Leasehold Improvements are damaged or destroyed, Lessee shall, at Lessee's sole expense, repair or rebuild, as necessary, the Premises to at least the quality level existing prior to the damage or destruction and in any event at a level suitable to conduct the required activities and services set forth in Section 3.1 (as they were conducted prior to

**EXHIBIT C**

**PAGE 050**

Exhibit 9

the damage to the Premises). Notwithstanding the foregoing, Lessee's obligation to repair or rebuild the damaged or destroyed Premises shall be subject to and limited by the following conditions:

A.  **Damage or Destruction of the Premises in Final 3 Years of Remaining Term.** In the event that there are less than three (3) years remaining on the then current term of this Lease Agreement following the date the Premises have been damaged or destroyed, Lessee shall have the following rights :

(1) If damages to the Premises exceed the total amount of insurance proceeds payable by Lessee's insurers or if Lessee cannot repair the damages and continue its operations on the Premises in an economically viable manner, then Lessee may terminate this Agreement subject to all requirements in Sections 2.4 and 8.4 of this Agreement. Upon such termination, Lessee shall tender possession of the Premises and Leasehold Improvements to City and shall assign to the City all right title and interest to the proceeds of the Lessee's insurance policies maintained pursuant to Section 9 of this Agreement; or

(2) In the case of destruction of the Premises and if Lessee cannot rebuild or reconstruct the destroyed Premises and continue its operations on the Premises in an economically viable manner, then Lessee may terminate this Agreement subject to all requirements in Sections 2.4 and 8.4 of this Agreement. Upon such termination, Lessee shall tender possession of the Premises to City and shall assign to the City all right, title and interest to the proceeds of Lessee's insurance policies maintained pursuant to Section 9 of this Agreement.

B.  **Damage or Destruction of Premises with Remaining Term Exceeding 3 Years.** In the event that there are more than three (3) years remaining on the then current term of this Agreement following the date the Premises are damaged (such that Lessee and its subtenants cannot continue their respective operations in a financially viable manner in the Premises) or are destroyed, the City and Lessee shall meet and confer on the feasibility of a relocation plan for Lessee and its subtenants, which would allow, Lessee and Lessee's subtenants to continue their respective operations in a financially viable manner at the Airport. If the parties are unable to agree on a relocation plan within thirty (30) days of such damage or destruction of the Premises, then, either party shall have the right to

- 30 -

**EXHIBIT C**

**PAGE 051**

Exhibit 9

terminate this Agreement, subject to all requirements in Sections 2.4 and 8.4 of this Agreement. Upon such termination, Lessee shall tender possession of the Premises to the City and shall assign to the City all right title and interest to the proceeds of Lessee's insurance policies maintained pursuant to Section 9 of this Agreement.

     **17.3.**    <u>Damage or Destruction to the Common Areas</u>.  In the event that the Common Areas of the Santa Monica Municipal Airport are damaged or destroyed by fire or any other cause or are otherwise made unusable, to the extent of fifty percent (50%) of the total insured value or replacement cost of all such Common Areas or the Airport becomes unusable or unavailable for use by general aviation for any reason for a period greater than thirty (30) days, either party shall have the right to terminate this Agreement (subject to all requirements in Sections 2.4 and 8.4 of this Agreement), by giving written notice to the other party.  Otherwise, the City shall repair the damage as soon as reasonably possible in which event this Agreement shall continue in full force and effect.

     **17.4.**    <u>Lessee's Remedies</u>.  Lessee shall have no claim against City, its City Council, boards and commissions, officers, agents, and employees for any damage, loss of business or good will, alterations, improvements, fixtures, furnishing, equipment, buildings, structures, vehicles and inventory suffered by reason of any damage, destruction, repair or restoration of the Premises or the Common Areas of the Santa Monica Municipal Airport.

     **17.5.**    <u>Insurance Proceeds</u>.  Except as otherwise specifically provided herein, all insurance proceeds payable with respect to the Premises and Leasehold Improvements shall be payable to Lessee, subject to Lessee's obligation to use any such insurance proceeds to  either satisfy its repair and restoration obligations  hereunder or assign or transfer such insurance proceeds to the City.

     **17.6.**    <u>Waiver</u>.  City and Lessee waive the provisions of any statutes which relate to termination of leases when leased property is destroyed and agree that such event shall be governed by the terms of this Agreement to the extent of any conflict between said statutes and this Agreement.

## SECTION 18.  CONDEMNATION.

     **18.1.**    <u>Effect of Taking</u>.  If the Premises or any portion thereof is taken under the power of eminent domain by other than the City or one of its constituent parts, this Agreement shall terminate as to the part so taken on the date Lessee is required to yield possession thereof to the condemning authority.  In the event that only a portion of the Premises is subject to condemnation, and the conduct of Lessee's business on the remaining portion of the Premises would not be commercially feasible in the reasonable judgment of Lessee, then Lessee shall have the option to terminate this Agreement on

**EXHIBIT C**

**PAGE 052**

Exhibit 9

written notice to City. Lessee's option to terminate hereunder is only valid if exercised within thirty (30) days of the date when Lessee is required to yield possession.

If any notice of termination is given pursuant to this Section, this Agreement and the rights and obligations of the parties hereunder shall cease as of the date of such notice and Monthly Base Rent (other than any Additional Rental due City by reason of Lessee's failure to perform any of its obligations hereunder) shall be adjusted as of the date of such termination.

18.2.    Condemnation Awards.

All compensation awarded for any taking of the Premises (except for the portion attributable to the lost business and lost goodwill of Lessee which shall belong to Lessee) shall belong to and be the property of City, and Lessee hereby assigns to City all rights with respect thereto; provided, however, nothing contained herein shall prevent Lessee from applying for reimbursement from the condemning authority (if permitted by Law) for moving expenses, the expense of removal of Lessee's trade fixtures, loss of the Leasehold Improvements paid for by Lessee or any other loss incurred by Lessee, but if and only if such action shall not reduce the amount of the award or other compensation otherwise recoverable from the condemning authority by City for improvements paid for by City. Notwithstanding the foregoing, if the City is the condemning authority, any compensation for the remaining leasehold value of the Premises will belong to Lessee.

## SECTION 19. NOTICES.

All notices required to be given pursuant to this Agreement shall be in writing and either served personally or sent by United States mail to the address listed below, or to another address as may be provided by written notice. Notice shall be deemed given within forty-eight (48) hours from the time of mailing if mailed as provided in this Section.

All notices, demands, requests, or approvals from Lessee to City shall be addressed to City at:

> Airport Director or Airport Manager
> City of Santa Monica
> 3223 Donald Douglas Loop South, Suite 3
> Santa Monica, California 90405

with a copy to:

> City Attorney
> 1685 Main Street, Third Floor
> Santa Monica, California 90401

- 32 -

**EXHIBIT C**

**PAGE 053**

Exhibit 9

All notices, demands, requests or approvals from City to Lessee shall be addressed to Lessee at:

> A T E of California, dba American Flyers,
> 2501 Airport Avenue
> Santa Monica, California 90405
> Attention: Mr. R. Clark McCormick

This Section shall replace rather than supplement any equivalent or similar statutory notice including, but not limited to, any notices required by California Code of Civil Procedure Sections 1161 and 1162. When a statute requires service of a notice in a particular manner, service of such notice in the manner set forth in this Section shall replace and satisfy the statutory service-of-notice procedures, including those required by California Code of Civil Procedure Sections 1161 and 1162.

## SECTION 20.  DEFAULTS AND REMEDIES FOR DEFAULTS.

**20.1.  Events Constituting Material Default by Lessee.** The occurrence of any one or more of the following events shall constitute a material default and breach of this Agreement by Lessee:

A.  Lessee's failure to make any payment of Monthly Base Rent, Additional Rent or any other payment to the City as required under this Agreement, as and when due, where the failure shall continue for a period of three (3) business days after notice from City to Lessee. In the event that City serves Lessee with a Notice to Pay Rent or Quit pursuant to applicable unlawful detainer statutes, the Notice to Pay Rent or Quit shall also constitute the notice required by this subsection.

B.  Lessee's engaging in any prohibited activity as defined in Section 3.3 or any other activity or service not approved in writing by the Airport Director or his or her designee.

C.  Lessee's failure to timely prepare and submit the Facility Improvement Plan pursuant Section 7.4 and to complete the Required Lessee Improvements in a manner reasonably satisfactory to City.

D.  Lessee's failure to perform any non-monetary obligation under this Agreement including, but not limited to, the failure to provide any of the "Required Services and Activities" identified in Section 3.1, above, if the failure continues for fourteen (14) business days after written notice of the failure from the City to Lessee.

- 33 -

**EXHIBIT C**

**PAGE 054**

Exhibit 9

Notwithstanding the above, if the nature of Lessee's default requires more than fourteen (14) business days for its cure, then the Lessee will not be deemed to be in default if Lessee commences to cure the default within ten (10) days and thereafter diligently prosecutes the cure to completion to the satisfaction of the City.

E.   Lessee's abandonment of the Premises, including the absence of Lessee's employees from the Premises for three (3) consecutive days.

F.   Lessee's making any general arrangement or assignment of its interests to the Premises or Improvements under this Agreement for the benefit of creditors without the written approval of the City.

G.   The filing by or against the Lessee of any proceeding under federal bankruptcy law, unless the proceeding is dismissed within ninety (90) days.

H.   The appointment of a trustee or receiver to take possession of all or substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Agreement, unless possession is unconditionally restored to Lessee and the trusteeship or receivership is dissolved.

I.   The attachment, execution or the judicial seizure of substantially all of Lessee's assets located on the Premises or of Lessee's interest in this Agreement, unless that seizure is not discharged within thirty (30) days.

J.   The discovery by City that any financial statement given to City by Lessee was materially false.

K.   Lessee's failure to discharge and remove any lien or encumbrance filed against the Premises or to provide adequate surety to secure payment thereof.

L.   Any assignment of this Agreement or any portion thereof in violation of Section 12 hereof.

20.2.   **Remedies for Default.**   In the event of any occurrence of material default or breach of this Agreement by the Lessee, the City will notify the Lessee of the existence of the breach and, if applicable, the time for cure as specified above.  In the

- 34 -

**EXHIBIT C**

Exhibit 9

event the Lessee fails or refuses to cure, or if the material default is not subject to cure, the City may:

A.   Terminate Lessee's right to possession of the Premises by any lawful means pursuant to Section 21, below. In the event of termination, Lessee shall immediately surrender possession of the Premises to City. In such event, City shall be entitled to recover from Lessee all damages incurred by City by reason of Lessee's default including, but not limited to, the cost of recovering possession of the Premises, expenses of reletting, including necessary renovation and alteration of the Premises, and reasonable attorneys' fees.

B.   Maintain Lessee's right to possession, in which case this Agreement shall continue in effect. In that event, City shall be entitled to enforce all of City's rights and remedies under this Agreement.

C.   Pursue any other remedy now or hereafter available to City under the laws and judicial decisions of the State of California. Unpaid installments of Monthly Base Rent, Additional Rent and other unpaid monetary obligations of Lessee under the terms of this Agreement shall bear interest from the date due at the maximum rate then allowable by law.

## SECTION 21.  TERMINATION.

21.1.   **Termination By City for Lessee's Breach.** In the event the Lessee fails or refuses to perform any of the covenants or requirements of this Agreement in the time and manner required, the City may terminate this Agreement by giving to the Lessee written notice of termination. Upon termination, all rights, powers, privileges and authority granted to the Lessee under this Agreement shall cease, and Lessee shall immediately thereupon vacate the fixed based operations. The City's right to terminate this Agreement under this Section is not its exclusive remedy, but is in addition to all other remedies provided to it by law or the provisions of this Agreement.

21.2.   **Duties Upon Termination .** Upon termination of this Agreement, the Lessee shall pay all Monthly Base Rent, Additional Rent, and any other payments due to the City under the terms of this Agreement. Lessee further agrees to do all other things reasonably necessary to cause an orderly transition and to surrender the Premises and operations thereon.

- 35 -

**EXHIBIT C**

**PAGE 056**

Exhibit 9

# SECTION 22.  GENERAL PROVISIONS.

**22.1.**     **Authority.**  Both parties have full power and authority to enter into this Agreement.

**22.2.**     **Integrated Agreement.**  This Agreement represents the full and complete understanding of every kind or nature whatsoever between the parties hereto with respect to the Premises and this Agreement.  All preliminary negotiations and agreements of whatsoever kind or nature are merged herein.  No verbal agreement or implied covenant shall be held to vary the provisions hereof.

**22.3.**     **Governing Law** .  Lessee and City agree that the laws governing this Agreement shall be that of the State of California.

**22.4.**     **Time is of the Essence.**  Time is of the essence as to each provision of this Agreement.

**22.5.**     **City's Proprietary Capacity.**  Lessee understands that the City is entering into this Agreement in its proprietary capacity.  Nothing contained in this Agreement shall be deemed directly or indirectly to restrict or to impair the City's governmental powers or rights with the respect to the leasehold, or with respect to the Lessee's use, occupancy and operation of the Premises pursuant to this Agreement.  It is intended that Lessee shall be obligated to fulfill and comply with all requirements which may be imposed by any governmental agency or authority of the City having jurisdiction over the Premises in the City's governmental capacity.

**22.6.**     **Nonwaiver.**  No waiver of any provision of this Agreement shall be implied by the failure of any party to enforce any remedy pursuant to this Agreement.  Any waiver by the parties of any provision of this Agreement must be in writing.  The waiver shall affect only the provision specified and only for the time and in the manner stated in the writing.

**22.7.**     **Attorneys' Fees and Costs.**  If either party hereto brings an action or proceeding against any other party by reason of a default under this Agreement, or otherwise arising out of this Agreement, the prevailing party in the action or proceeding shall be entitled to receive from the losing party all costs and expenses and such an amount as the court may adjudge to be reasonable attorneys' fees and costs.  Attorneys' fees shall be paid whether or not the action is prosecuted to judgment.  The prevailing party shall be entitled to attorneys' fees equal to the fair market value of legal services provided by attorneys (authorized to provide such services) employed by it as well as any attorneys' fees actually paid by it to third parties in connection with the action.

- 36 -

**EXHIBIT C**

**PAGE 057**

Exhibit 9

**22.8.** **Counterparts.** This Agreement may be signed in counterparts, and each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

ATTEST:

MARIA STEWART
City Clerk

APPROVED AS TO FORM:

MARSHA JONES MOUTRIE
City Attorney

CITY OF SANTA MONICA,
a municipal corporation

By:

P. LAMONT EWELL
City Manager

LESSEE:
A T E OF CALIFORNIA, a California
corporation dba AMERICAN FLYERS

By:

R. CLARK McCORMICK
Title:   Director, American Flyers

- 37 -

**EXHIBIT C**

**PAGE 058**

# Exhibit D

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| |
|---|
| CITY OF SANTA MONICA,<br><br>               Petitioner,<br><br>        v.<br><br>UNITED STATES OF AMERICA, et al.<br><br>              Respondent. |

Civil Action No. 13-CV-8046-JFW (VBKx)

**STIPULATION AND ORDER/CONSENT DECREE**

It is stipulated by and between the undersigned parties by their respective attorneys that:

1.      The Court has jurisdiction over each of the parties, and venue of this action is proper in the United States District Court for the Central District of California.

2.      The City of Santa Monica (the City) filed this case seeking to quiet title to certain properties and the United States disputes these claims. Live controversies exist between the parties including these and other issues.

3.      The parties consent to the Court's entry of the Settlement Agreement in the form attached to this Stipulation and Order/Consent Decree.

4.      The parties' execution of this Stipulation and Order/Consent Decree and the Settlement Agreement shall settle and resolve any and all claims of the City arising from the events giving rise to the allegations described in the Complaint in this action and in certain other proceedings between the parties, as provided in the Settlement Agreement.

1

**EXHIBIT D**

**PAGE 059**

5.      Neither this Stipulation and Order/Consent Decree nor the attached Settlement

Agreement shall be construed to preclude the United States or the Federal Aviation

Administration from bringing an action against the City for any violation(s) of any laws,

regulations or orders other than those addressed in the Settlement Agreement.

6.      In the event that the proposed Settlement Agreement is not entered pursuant to this

Stipulation and Order/Consent Decree, this Stipulation shall become null and void and shall be

of no effect whatever, and the making of this Stipulation shall be without prejudice to any party

in this or any other proceeding.

2

**EXHIBIT D**

**PAGE 060**

**For the Federal Aviation Administration:**

Reginald C. Govan
Chief Counsel
Federal Aviation Administration

**For the Department of Justice**
JOYCE BRANDA
Acting Assistant Attorney General

EILEEN M. DECKER
United States Attorney

JUDRY SUBAR
Assistant Branch Director

RAPHAEL O. GOMEZ (D.C. Bar #305540)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-1318
Facsimile: (202) 616-8460
Raphael.gomez@usdoj.gov

GARY D. FELDON (D.C. Bar #987142)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-4686
Fax: (202) 616-8460
Email: Gary.D.Feldon@usdoj.gov

Dated: 1/30/17

**EXHIBIT D**

**PAGE 061**

**For the City of Santa Monica:**

JOSEPH LAWRENCE
Interim City Attorney
LANCE S. GAMS
Chief Deputy City Attorney
IVAN O. CAMPBELL
Deputy City Attorney
1685 Main Street, Third Floor
Santa Monica, CA 90401-3295
Telephone: 310-458-8336
Facsimile: 310-393-6727

ARTURO J. GONZALEZ
agonzalez@mofo.com
Morrison & Forester LLP
425 Market Street
San Francisco, CA 94105
Telephone: 415-268-7000
Facsimile: 415-268-7522

WILLIAM V. O'CONNOR, JR.
WOConnor@mofo.com
JOANNA L. SIMON
JoannaSimon@mofo.com
Morrison & Foerster LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
Telephone: 858-720-5100
Facsimile: 858-720-5125

_____

WILLIAM V. O'CONNOR, JR.

Dated: January 30 , 2017

4

**EXHIBIT D**

## ORDER

IT IS SO ORDERED by this Court, this _____ day of January, 2017, at Los Angeles, California.

_____

Honorable John F. Walter
United States District Court
For the Central District of California

5

**EXHIBIT D**

**PAGE 063**