UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF SANTA MONICA,<br><br>                                    Petitioner,<br><br>              v.<br><br>UNITED STATES OF AMERICA, et al.<br><br>                                    Respondent. | Civil Action No. 13-CV-8046-JFW (VBKx) |

**STIPULATION AND ORDER/CONSENT DECREE**

It is stipulated by and between the undersigned parties by their respective attorneys that:

1.      The Court has jurisdiction over each of the parties, and venue of this action is proper in the United States District Court for the Central District of California.

2.      The City of Santa Monica (the City) filed this case seeking to quiet title to certain properties and the United States disputes these claims. Live controversies exist between the parties including these and other issues.

3.      The parties consent to the Court's entry of the Settlement Agreement in the form attached to this Stipulation and Order/Consent Decree.

4.      The parties' execution of this Stipulation and Order/Consent Decree and the Settlement Agreement shall settle and resolve any and all claims of the City arising from the events giving rise to the allegations described in the Complaint in this action and in certain other proceedings between the parties, as provided in the Settlement Agreement.

1

5. Neither this Stipulation and Order/Consent Decree nor the attached Settlement Agreement shall be construed to preclude the United States or the Federal Aviation Administration from bringing an action against the City for any violation(s) of any laws, regulations or orders other than those addressed in the Settlement Agreement.

6. In the event that the proposed Settlement Agreement is not entered pursuant to this Stipulation and Order/Consent Decree, this Stipulation shall become null and void and shall be of no effect whatever, and the making of this Stipulation shall be without prejudice to any party in this or any other proceeding.

**For the Federal Aviation Administration**:

_____

Reginald C. Govan
Chief Counsel
Federal Aviation Administration

**For the Department of Justice**
JOYCE BRANDA
Acting Assistant Attorney General

EILEEN M. DECKER
United States Attorney

JUDRY SUBAR
Assistant Branch Director

RAPHAEL O. GOMEZ (D.C. Bar #305540)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-1318
Facsimile: (202) 616-8460
Raphael.gomez@usdoj.gov


_____
GARY D. FELDON (D.C. Bar #987142)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-4686
Fax: (202) 616-8460
Email: Gary.D.Feldon@usdoj.gov

Dated: _____


**For the City of Santa Monica:**

JOSEPH LAWRENCE
Interim City Attorney
LANCE S. GAMS
Chief Deputy City Attorney

IVAN O. CAMPBELL
Deputy City Attorney
1685 Main Street, Third Floor
Santa Monica, CA 90401-3295
Telephone: 310-458-8336
Facsimile: 310-393-6727

ARTURO J. GONZALEZ
agonzalez@mofo.com
Morrison & Forester LLP
425 Market Street
San Francisco, CA 94105
Telephone: 415-268-7000
Facsimile: 415-268-7522

WILLIAM V. O'CONNOR, JR.
WOConnor@mofo.com
JOANNA L. SIMON
JoannaSimon@mofo.com
Morrison & Foerster LLP
12531 High Bluff Drive, Suite 100
San Diego, CA 92130
Telephone: 858-720-5100
Facsimile: 858-720-5125

_____
WILLIAM V. O'CONNOR, JR.

Dated: January _____, 2017

**ORDER**

IT IS SO ORDERED by this Court, this 1st day of February, 2017, at Los Angeles, California.

_____
Honorable John F. Walter
United States District Court
For the Central District of California

# SETTLEMENT AGREEMENT/CONSENT DECREE BETWEEN THE FEDERAL AVIATION ADMINISTRATION AND THE CITY OF SANTA MONICA

The United States of America, acting through the Federal Aviation Administration (FAA) and the City of Santa Monica, CA (City) (collectively, the Parties) enter into this Settlement Agreement (Agreement), by and through their undersigned representatives, to resolve the disputes outlined below and pertaining to the operation of the Santa Monica Municipal Airport (Airport or SMO).  This Agreement, once signed by the FAA and the City, shall be presented to the U.S. District Court for the Central District Court of California (U.S. District Court) for entry as a Consent Decree.

## Background

**Airport Property & Runway**

SMO is generally composed of two parcels of property.

1. *First Parcel*.  The first parcel consists of approximately one hundred and seventy acres that the City of Santa Monica (City) leased to the U.S. government during World War II. (This parcel is referred to herein as the First Parcel and is more fully described as the premises referred to as "Clover Field, Santa Monica Municipal Airport" in the leases, as modified, that are referred to in that certain Instrument of Transfer, dated as of August 10, 1948, between the United States of America and the City that was recorded at Book 28055, Pages 211 through 222, inclusive, in the Official Records of Los Angeles County, California (the IOT).)

2. *Second Parcel*.  The second parcel consists of approximately eighteen acres with respect to which the United States of America duly executed a Quitclaim Deed dated April 8, 1949, and recorded at Book 30037, Pages 364 though 370, inclusive, in the Official Records of Los Angeles County, California (the Quitclaim Deed), conveying its interests in said parcel to the City.  (This parcel is referred to herein as the Second Parcel.) (The First Parcel and the Second Parcel, together with any other right, title and interest in any premises, structures, improvements or other property conveyed by the United States of America to the City in the IOT or the Quitclaim Deed, are collectively, referred to herein as Airport Property).

    *Airport Runway*. The Airport's current runway of 4,973 feet occupies land in both the First Parcel and Second Parcel , and also includes adjoining land that the Douglas Aircraft Company conveyed to the City by grant deed in 1945.

1

**District Court Litigation**

On August 10, 1948, pursuant to the Surplus Property Act of 1944 (SPA), the U.S. Government and the City executed an "Instrument of Transfer" (IOT) by which the U.S. Government surrendered its leaseholds and which the U.S. Government contends imposed certain restrictions on the future use of the Airport property including that:

> the land, buildings, structures, improvement and equipment in which this instrument transfers any interest shall be used for public airport purposes for the use and benefit of the public, on reasonable terms and with unjust discrimination and without grant or exercise of any exclusive right . . . .

The IOT further provides that "the restrictions . . . shall run with the land . . . ." and requires that:

> the entire landing area . . . be maintained for the use and benefit of the public at all times in good and serviceable conditions, provided, however, that such maintenance shall be required as to structures, improvement, facilities and equipment only during the remainder of their estimated life . . . .

On April 8, 1949, the U.S. government effected a Quit Claim Deed, transferring its interests in all or substantially all of the Second Parcel to the City.

On October 31, 2013, the City sued the FAA under the Quiet Title Act regarding the meaning and effect of the IOT. *City of Santa Monica v. United States of America, et al.*, Case No. CV 13-08046 JFW (VBKx). The City's claim seeks, in part, a declaratory judgment providing that the City has unencumbered title to the Airport Property.

On February 13, 2014, the U.S. District Court dismissed the City's claim based on the statute of limitations. However, on March 11, 2016, the U.S. Court of Appeals for the Ninth Circuit reversed the District Court's dismissal and remanded the case to the District Court. Trial is currently set for August 29, 2017.

**Circuit Court Litigation**

On June 27, 1994, the City accepted a $1,604,700.00 federal grant for certain improvements at the Airport pursuant to the terms of a grant agreement that the Parties agree remained in effect for twenty years. On August 27, 2003, the City and the FAA executed a grant amendment that provided $240,600.00 in federal funds to the City. The Parties dispute whether the terms of the grant remain in effect for twenty years from the date of the acceptance of the amendment or for twenty years from the date of the acceptance of the initial agreement in which case they have expired.

2

In response to a complaint filed pursuant to 14 C.F.R. part 16, on August 15, 2016, the FAA issued a Final Agency Decision (FAD) holding that by accepting the additional funds, the grant expiration date was extended until August 27, 2023.  *Nat'l Bus. Aviation Assoc., v. City of Santa Monica*, FAA Docket No. 16-14-04.  The City sought review of the FAD in the U.S. Court of Appeals for the Ninth Circuit.  *City of Santa Monica v. FAA*, Case No. 16-72827 (9th Cir.).

**Federal Administrative Proceedings**

The FAA issued a Notice of Investigation (NOI) to determine, in part, whether the City is violating its federal obligations to provide access to the fixed based operators (FBOs).  *In re Compliance with Fed. Obligations by the City of Santa Monica,* FAA Docket No. 16-16-13.  The NOI is based on the City's handling of the tenancy of the Airport's FBOs, the possible ban on the sale of unleaded fuels, and the City's declared intent to provide certain aeronautical services at SMO on an exclusive basis (proprietary exclusive).  The City filed a response to the NOI asserting that it has fully complied with its obligations in regard to these matters.

On December 12, 2016, the FAA issued an Interim Cease and Desist order ordering the City to cease and desist from removing the FBO's until the FAA issues a final agency decision under the NOI.  No final decision has been reached regarding the NOI.

**NOW, THEREFORE**, in consideration of the mutual covenants and other consideration described herein, the the Parties agree it is in the interest of the public and civil aviation to AGREE as follows:

**I.     COMPLETE SETTLEMENT OF ALL CLAIMS**

Within 30 days of this Agreement's execution, the Parties shall jointly move in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.), for entry of this Agreement as a Consent Decree and for a stay of the the litigation pending the decision on the Consent Decree.  Also within 30 days of this Agreement, the Parties shall jointly move to stay *City of Santa Monica v. Federal Aviation Administration*, No. 16-72827, (9th Cir.), pending the entry of the Consent Decree.  Within 14 days of the entry of the Consent Decree, the City shall dismiss with prejudice *City of Santa Monica v. Federal Aviation Administration*, No. 16-72827, (9th Cir.).  Furthermore, the Parties agree that entry of the Consent Decree shall resolve all pending disputes at issue in *In re Compliance with Federal Obligations by the City of Santa Monica,* FAA NO. 16-16-13 (U.S. Dep't of Transp., Fed. Aviation Admin.), and that the FAA shall therefore dismiss the NOI.

In addition, the FAA shall send a letter in substantially the form of Exhibit A to this Agreement to private parties that have filed Part 16 complaints raising issues within the scope of this Agreement requesting that the parties withdraw those complaints.  The Parties acknowledge that the FAA does not have authority to require private parties to withdraw their Part 16 complaints

3

and that the FAA must consider any complaints not withdrawn. Thus, the Parties further acknowledge that no action of a private party in a Part 16 proceeding can constitute a breach of this Agreement.

Unless modified by the court having jurisdiction over the Consent Decree, the Decree shall expire on December 31, 2028. The Parties agree that the expiration of the Decree shall have no effect on the terms or condition of this Agreement, which terms or conditions shall survive the expiration of the Decree.

Further, the Parties agree that this Agreement upon entry of the Consent Decree shall resolve all claims by the Parties that have been brought, or could have been brought, in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.), *City of Santa Monica v. Federal Aviation Administration*, No. 16-72827, (9th Cir.), or *In re Compliance with Federal Obligations by the City of Santa Monica,* FAA NO. 16-16-13 (U.S. Dep't of Transp., Fed. Aviation Admin.), including all the Parties' actual or potential claims pertaining to the past operation of the Airport by the City pertaining to tenants, non-tenant aircraft and FBOs.

If one of the Parties alleges a breach of the terms or conditions of this Agreement, the exclusive venue for remedying such a breach shall be the court having jurisdiction over the Consent Decree.

In the event the court in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.) does not enter the Consent Drecree as-written, the Parties shall confer and, as soon as feasible, decide whether to move the court to enter a modified Consent Decree. If the Parties have not reached an agreement on the form of the revised Consent Decree within 30 days, the Parties shall jointly move to lift the stays of litigation in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.) and *City of Santa Monica v. Federal Aviation Administration*, No. 16-72827, (9th Cir.). The FAA shall also at that time resume proceedings in *In re Compliance with Federal Obligations by the City of Santa Monica,* FAA NO. 16-16-13 (U.S. Dep't of Transp., Fed. Aviation Admin.). In such event each Party agrees that this Agreement shall be of no force and effect and may not be used by either Party for any purpose whatsoever.

## II.   RUNWAY

      **A.**     **Runway Length.**  The Parties agree that the Airport's runway shall have an operational runway length of 3,500 feet. The 3,500 foot distance shall not include the runway safety areas that shall be constructed and maintained at both runway ends. The runway safety area may include an engineered materials arrestor system (EMAS) at the City's option. The Parties further agree that the Airport shall accomodate aircraft operations that can safely take off

and land on a runway of the agreed-on length. Prior to the initiation of shortening the runway, the City shall comply with the 30 day notice provisions of 14 C.F.R. Part 157.5(b)(2).

      **B.**      **Costs to Shorten the Runway.**  The costs to shorten the runway, including but not limited to the installation of EMAS, shall be borne by the City.  If sought by the City, the FAA will provide technical support to the City through the FAA's Office of Airports to assist in obtaining federal funds to support the shortening of the runway, as consistent with federal laws, regulations and the availability of funds.

      **C.**      **Environmental Studies.**  The City shall be responsible for complying with its state and federal environmental requirements related to its planning and implementation of modifications at SMO.  The City's responsibility shall include the cost of conducting any necessary environmental studies or other requirements under the National Environmental Policy Act (NEPA). 42 U.S.C.  §4321 *et seq.*

### III.  USE AND RELEASE OF PROPERTY

Consistent with the ultimate configuration of the runway pursuant to Section II, the FAA agrees that prior to closure of the Airport, the City may use the property no longer needed for the the Airport with a shortened or reconfigured runway, taking into consideration standard safety areas, including the use of EMAS, for non-aeronautical uses that are safe and compatible with the operation of the Airport.  Such land shall be subject to an avigation easement for the period the airport is operated which shall be recorded contemporaneously with any instrument releasing such property. A copy of the form of avigation easement is attached hereto as Exhibit B.  This agreement does not constitute FAA approval of any particular future use.

### IV. CITY'S PROPRIETARY EXCLUSIVE RIGHT

#### A.  FAA's Acknowledgement of the City's Right

The City may exercise its proprietary exclusive right to provide aeronautical services at SMO, including but not limited to the sale and into-plane delivery of all types of aviation fuels, in accordance with generally-applicable rules governing the exercise of proprietary exclusive rights.

#### B.  City's Obligations

The City shall provide any proprietary exclusive aeronautical services at SMO (i) in conformance with the standard of grant assurance 22 (ii) on reasonable terms at reasonable rates, and (iii) during all hours that such services would normally be provided at comparable general aviation airports, taking into account permissible curfews provided for in section V.  The City further agrees that, if the City does not fully provide a type of service at any point in time and a private FBO desires to provide such a service, that operator shall have reasonable access to the airport on commercially reasonable terms and in conformance with the standards of grant assurance 22. See 79 Fed. Reg.  18755 (April 3, 2014).

C. **Timing of the City's Exercise of Its Right**

Subject to the City's right pursuant to subsection D, below, the City will not implement any proprietary exclusive operations, as defined above, until the work to shorten the runway, as provided in Section II above, is complete.

D. **Leases for Private Aeronautical Service Providers Prior to the City's Exercise of Its Right**

Leases offered to all tenants providing aeronautical services shall be on reasonable terms and in substantially the same form as that attached as Exhibit C. For purposes of this Agreement, the phrase "reasonable terms" shall mean terms that are customary and usual at similarly situated and sized general aviation airports.

The City shall offer all current tenants providing aeronautical services leases of no less than three (3) years with reasonable terms appropriate to the aeronautical service usually and customarily provided such service at similar facilities, including but not limited to tenant investment and financing requirements.

The City shall also offer leases to all prospective tenants providing aeronautical services for which there is space at SMO subject to reasonable terms and consistent with the standards of grant assurance 22, provided the City is not itself providing such services on a proprietary exclusive basis.

Any and all leases providing aeronautical services may, at the City's election, be subject to termination upon six months written notice of the City's exercise of its proprietary exclusive right to provide the category of services otherwise being provided by private FBOs, provided the City is ready, willing, and able to fully provide such aeronautical service in accordance with applicable law.

V. **AIRPORT CURFEW**

The City may submit an application for enhanced curfews consistent with 14 C.F.R. part 161 (Part 161). Review of such an application shall be conducted under the procedural rules and subject to the substantive standards applicable to all Part 161 applications submitted to the FAA, which shall not be affected by this Agreement. Review of any decision made in connection with such an application shall be conducted exclusively in the same manner as, and in the same forum as, review of any decision made in connection with a Part 161 application submitted to the FAA. That is, this Agreement shall not affect the form or substance of such a review. Notwithstanding any other provision of this Agreement, judicial review of FAA's decision and record thereof with regard to any Part 161 application submitted by the City shall be within the exclusive jurisidiction of the applicable U.S. Court of Appeals.

## VI. DURATION

The City agrees to operate the Airport consistent with its obligations set forth in this Agreement until December 31, 2028, unless an earlier date is agreed to by the Parties. Any subsequent decison by the FAA to release the Airport at an earlier date shall be made consistent with the standard of 49 U.S.C. § 47153. The obligation to operate the Airport until December 31, 2028 shall be binding on any subsequent purchaser of Airport Property. Within 90 days of a Consent Decree embodying this Agreement taking effect, the City shall cause this Agreement to be recorded in the property records for the County of Los Angeles, California.

Without limiting the express terms of this Agreement, the FAA agrees that the Airport Property shall be released from all covenants, reservations, restrictions, conditions, exceptions and reservations of rights imposed under the IOT and the Quitclaim Deed and the grant assurances imposed in 1994 upon the effectiveness of this Agreement and to provide such notice as required under 49 U.S.C. §47153(c). Upon the City's request, the FAA shall execute, acknowledge and deliver from time to time any instruments reasonably necessary requested by the City appropriate to evidence the release of the Airport Property from all such covenants, reservations, restrictions, conditions, exceptions and reservations of rights. The Parties shall record any instruments necessary to effectuate this provision.

The City's operation of the Airport until December 31, 2028 shall conform with (i) the standards set forth in grant assurances 19, 22, 23, 24, 25, and 30; and (ii) all applicable state and federal operational, maintenance, and safety standards. For purposes of this paragraph, the substantive standards of grant assurances 19, 22, 23, 24, 25, and 30 shall apply until December 31, 2028.

If the City enters into future grant agreements with the FAA, then it shall also be bound by those terms as provided for in any such grant agreement in addition to any applicable the standards expressly set forth in this Agreement.

If the City does not enter into future agreements with the FAA that continue to require the City to operate the Airport after December 31, 2028, the Parties agree that the City may, in its sole discretion at any time on or after January 1, 2029, cease to operate the Airport as an airport and may close the Airport to all aeronautical use forever, subject only to the applicable 30 day notice requirements set forth in 49 U.S.C. § 46319(a) and 14 C.F.R. Part 157.5(b)(2).

## VII. UNLEADED FUEL

The FAA is committed as a matter of national aviation policy to support the development and use of unleaded aviation gas appropriate to the operation of piston aircraft where commercially and technically feasible. The FAA agrees to consider any demonstration project the City may seek to implement pertaining to the use of unleaded fuel. Nothing in this Agreement shall allow the City to restrict the sale of leaded aviation fuel for as long as the FAA authorizes use of such fuels within the United States.

## VIII. MISCELLANEOUS PROVISIONS

**A. Enforcement.** The Parties reserve the right to judicially enforce any terms or provisions of this Agreement.

**B. Consent Decree.** The terms of this Agreement shall be memorialized and embodied in a consent decree to be filed in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.) in the form attached as Exhibit D. The court shall have jurisdiction to issue injunctive relief only as to the provisions of sections II, III, and IV. Further, the court shall have jurisdiction to enforce the provisions of sections II, III and IV as to any successors, transferees, licensees, agents, heirs, and assigns of the City's interests in, operation of, or sponsorship of SMO. The court shall not have jurisdiction to subject the Parties to penalties or sanctions for any alleged violations of its obligations in this Agreement.

**C. Own Costs.** Each Party shall bear its own costs, including attorney fees.

**D. Authority.** The representatives of each Party hereby certify that he or she is duly authorized to enter into the Agreement. The City represents that it has the full authority to perform all of the acts and obligations it has agreed to perform under the terms of this Agreement. The United States, acting though the Department of Justice and the FAA represents that the FAA has the full authority to perform all of the acts and obligations it and the United States of America has agreed to perform under the terms of this Agreement.

**E. Copies and Counterparts.** It is contemplated that this Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which together constitute one and the same document. Facsimiles, hard copies, and scanned electronic copies of signatures, including scanned electronic copies sent by email, shall constitute acceptable, binding signatures for purposes of this Agreement.

**F. Defense of This Agreement**. The Parties agree to vigorously and actively defend this Agreement, any resulting Consent Decree, and all terms embodied therein as fair and reasonable, to vigorously and actively defend the same against any challenge by any individual or entity. The Parties further agree not to undermine directly or indirectly this Agreement, any resulting Consent Decree or any terms set forth therein for so long as this Agreement or any resulting Consent Decree remains in effect.

**G. Modification.** This Agreement may be supplemented, amended, or modified only by the mutual agreement of the Parties, and, once the Consent Decree is entered, only with the approval of the court  No supplement, amendment, or modification of this Agreement shall be binding unless it is in writing and signed by all duly authorized representatives of each Party.

8

**H. Successors or Assigns.** This Agreement and any resulting consent decree shall be binding upon and inure to the benefit of the Parties and their respective successors, transferees, licensees, agents, heirs, and assigns. Prior to any change of the sponsor of SMO or to the identity of the holder of any operating certificate related to the operation or sponsorship of SMO the City shall obtain the written agreement of such new entity to be bound by the terms of this Agreement and any resulting consent decree.

**I. Precedent.** Nothing in this Agreement shall constitute an admission concerning any allegation, claim, or defense at issue in in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.), *City of Santa Monica v. Federal Aviation Administration*, No. 16-72827, (9th Cir.), or *In re Compliance with Federal Obligations by the City of Santa Monica,* FAA NO. 16-16-13 (U.S. Dep't of Transp., Fed. Aviation Admin.), and this Agreement has no precedential effect as to any other dispute between the Parties or between either the City or the FAA and any third party. This Agreement is made in light of the unique circumstances of this case and the uncertainty of the specific matters resolved hereby. Nothing herein shall be construed to be an admission of liability or as an interpretation of the validity or terms or provisions of any other instruments or contracts.

**J. Release.** Upon the entry of the Consent Decree, the Parties and all their heirs, administrators, representatives, attorneys, successors, and assigns, hereby release, waive, acquit, and forever discharge each other and all their respective officers, employees, and agents from, and are hereby forever barred and precluded from prosecuting, any and all claims, causes of action, and/or requests for relief asserted in *City of Santa Monica v. United States of America, et al.,* Case No. 13-CV-8046-JFW (VBKx) (C.D. Cal.), *City of Santa Monica v. Federal Aviation Administration*, No. 16-72827, (9th Cir.), and *In re Compliance with Federal Obligations by the City of Santa Monica,* FAA NO. 16-16-13 (U.S. Dep't of Transp., Fed. Aviation Admin.), as well as any and all claims, causes of action, and/or requests for relief, whether or not made, against any Party that could have been raised in those matters, with the exception of proceedings to enforce this Agreement or the Consent Decree.

**K. No Third Party Rights.** This Agreement is not intended to create, and does not create, any third-party beneficiary rights, confer upon any non-party a right to enforce or sue for an alleged breach of the Agreement, or generate any other kind of right or privilege for any person, group, or entity other than the Parties.

**L. Effective Date.** This Agreement shall be effective upon the date the Court enters an order approving this Agreement.

**For the Federal Aviation Administration**:

_____

Reginald C. Govan
Chief Counsel
Federal Aviation Administration

**For the Department of Justice**

JOYCE BRANDA
Acting Assistant Attorney General

EILEEN M. DECKER
United States Attorney

JUDRY SUBAR
Assistant Branch Director

RAPHAEL O. GOMEZ (D.C. Bar #305540)
Senior Trial Counsel
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 514-1318
Facsimile:  (202) 616-8460
Raphael.gomez@usdoj.gov

_____
GARY D. FELDON (D.C. Bar #987142)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Fax: (202)  616-8460
Email:  Gary.D.Feldon@usdoj.gov

Dated: _____

10

**For the City of Santa Monica:**

**Attest:**

_____  _____

Rick Cole  Denise Anderson-Warren
City Manager  City Clerk

_____

Joseph Lawrence
Interim City Attorney

Dated: _____

Approved as to form:

_____

William V. O'Connor
Morrison & Foerster LLP
12531 High Bluff Drive | San Diego, CA 92130-2040
P: +1 (858) 720.7932
WOConnor@mofo.com
Dated: _____
Attorneys for the City of Santa Monica

**IT IS SO ORDERED**.

Signed February 1, 2017, at Los Angeles, California

_____

Honorable John F. Walter
United States District Court
For the Central District of California